## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| PATRICK WILLIAMS, On Behalf of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br><br>CBL & ASSOCIATES PROPERTIES, INC., STEPHEN D. LEBOVITZ, CHARLES B. LEBOVITZ, A. LARRY CHAPMAN, and FARZANA KHALEEL,<br><br>Defendants. | Civil Action No. 1:19-cv-181<br><br><br>CLASS ACTION<br><br><br>JURY DEMAND |

## INTRODUCTION

Plaintiff Patrick Williams ("Plaintiff"), by his attorneys, alleges for his Class Action Complaint against Defendants (defined below) upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys (including review of United States Securities and Exchange Commission ("SEC") filings, press releases and court proceedings), as follows:

## SUMMARY OF THE ACTION

1.     This is securities fraud class action brought on behalf of all persons who purchased or otherwise acquired the securities of defendant CBL & Associates Properties, Inc. ("CBL" or the "Company") between April 29, 2016 and March 26, 2019, both dates inclusive (the "Class Period").  In addition to the Company, Defendants named herein are CBL's founder and Board Chairman Charles B. Lebovitz, Chief Executive Officer Stephen D. Lebovitz, Chief Financial

Officer Farzana Khaleel, and Audit Committee Chairman A. Larry Chapman (collectively, the "Individual Defendants").

2.     CBL, through its two operating subsidiaries, is organized as a real estate investment trust ("REIT").  In its Annual Report for the year ended December 31, 2018, filed with the SEC on Form 10-K on March 1, 2019 (the "2018 10-K"), CBL describes its business as follows: "We own, develop, acquire, lease, manage, and operate regional shopping malls, open-air and mixed-use centers, outlet centers, associated centers, community centers, office and other properties.  Our Properties are located in 26 states but are primarily in the southeastern and midwestern United States."

3.     CBL's 173.5 million common shares trade on the New York Stock Exchange ("NYSE"), as do the shares of its two series of Preferred Stock, Series D and Series E.

4.     Because it is an REIT, CBL must pay out 90% of its earnings as dividend distributions per the requirements of the Internal Revenue Service ("IRS").  This leaves CBL with relatively little in cash on its balance sheet at the end of each quarter.  As of December 31, 2018, CBL's balance sheet showed $25.1 million in cash.  *See* 2018 10-K, p. 87.  The Company is subject to the federal securities laws and is obligated to follow generally accepted accounting principles ("GAAP") as promulgated by the Financial Standards Accounting Board ("FASB").  Both the federal securities laws and GAAP require a public company to report threats to its business which could result in a material change in the Company's cash position in its quarterly and annual SEC filings.

5.     Among other things, potential legal liabilities and lawsuit filed against the company may pose a material threat. Accordingly, if such a lawsuit is filed, the Company's litigation must be discussed under a section entitled "Legal Proceedings" which must disclose: (a) the existence

of the lawsuit; (b) the nature of the claims; (c) the potential materiality of a loss; and (d) the size of the claim, if such can be estimated. In addition, the financial statement must reflect a "reserve" against the contingency that the Company could pay out a substantial settlement or verdict, again to the extent an estimate can be made. Without such disclosures, investors were unable to assess the risks that CBL faced during the Class Period and, as a result, its share price was fraudulently inflated during the Class Period.

6. On March 16, 2016, a class action suit that could result in tens of millions or even hundreds of millions of dollars in liability was filed in Florida federal court under styled of *Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Props.*, No. 2:16-cv-206 (M.D. Fla. Mar. 16, 2016) (the "Overbill Litigation").

7. In the Overbill Litigation, the plaintiff alleged on behalf of a class of CBL retail tenants that CBL entered into leases providing that CBL would charge its tenants for electricity at cost, but instead engaged in theft by marking up the electricity bills by large amounts and pocketing the difference. The plaintiff asserted numerous causes of action, including RICO claims, which were upheld in April 2017 against a motion to dismiss. The plaintiff's class claims, if trebled, amounted to $180 million, not counting attorneys' fees. Although CBL defended the Overbill Ligation for years, it turned out to have no true defense — it had been caught with its hands in the cookie jar.

8. In 2019, CBL was forced to settle all claims by paying the class 100% of damages ($60 million) ***and paying an additional $28 million to cover its adversary's attorneys' fees***. No insurance covered these sums, as CBL's insurer had disclaimed coverage.

9. Because allegations of theft would have been viewed very unfavorably by both investors and potential mall tenants, Defendants herein embarked on a fraudulent scheme whereby

they issued SEC reports that (until the tail end of the Class Period) simply pretended that CBL *faced no material litigation at all*. Indeed, Defendants made no mention of the Overbill Litigation at all. Thus, investors had no idea that there was a putative class action pending against CBL.

10.     Because CBL's insurance policy did not provide coverage for intentional wrongful acts, Defendants could not have reasonably believed that the Overbill Litigation was not material due to the availability of coverage. Any hopes they may have had for coverage were dashed when the insurance carrier, Catlin Specialty Insurance Company, won a September 20, 2017 declaratory ruling that it had no coverage obligation. *See Catlin Specialty Ins. Co. v. CBL & Assocs. Props.*, No. N16C-07-166 PRW CCLD, 2017 Del. Super. LEXIS 471 (Super. Ct. Sep. 20, 2017).

11.     On March 1, 2019, CBL disclosed in the 2018 10-K that on January 7, 2019, class certification was granted in "a putative class action in the United States District Court for the Middle District of Florida . . . based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity" and that the action had been set "for the trial term starting on April 1, 2019." CBL further advised investors that "[w]e have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time."

12.     On this news, CBL's stock price fell $0.16 per share, or roughly 7.5%, to close at $1.98 per share on March 1, 2019.

13.     Then, on March 26, 2019, CBL disclosed that it had settled the foregoing litigation and that the Company would be required "to set aside a common fund with a monetary and non-monetary value of $90 million".

14. On this news, CBL's stock price fell $0.47 per share, or 24.61%, to close at $1.44 per share on March 27, 2019.

15. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

16. The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. § 78aa). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

18. Venue is properly laid in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). The acts and conduct complained of herein occurred in substantial part in this Judicial District.

19. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

20. Plaintiff purchased CBL securities during the Class Period, and was injured, as reflected in the attached Certification.

21.     Defendant CBL is a Delaware-incorporated REIT, with its principal headquarters located at 2030 Hamilton Place Blvd., Suite 500, CBL Center, Chattanooga, TN 37421.

22.     Defendant Stephen D. Lebovitz ("S. Lebovitz") serves as Chief Executive Officer ("CEO") of the Company, and also served as President of the Company prior to June 2018.  He previously served as President and Secretary of the Company from February 1999 to January 1, 2010, when he became President and CEO, and has served as a director of the Company since the completion of its initial public offering in November 1993.  He also serves as a member of the Executive Committee of the Board of Directors.

23.     Defendant Charles B. Lebovitz ("C. Lebovitz") serves as Chairman of the Board of the Company and as Chairman of the Executive Committee of the Board of Directors.  He previously served as CEO of the Company from the completion of its initial public offering in November 1993 until 2010, and also served as President of the Company until February 1999.

24.     Defendant Farzana Khaleel ("Khaleel") serves as Executive Vice President – Chief Financial Officer and Treasurer of the Company.  Khaleel served as Executive Vice President – Finance of the Company from January 2010 through September 10, 2012, when she was promoted to her current positions.  Previously, Khaleel served as Senior Vice President – Finance of the Company from September 2000 through January 1, 2010.

25.     Defendant A. Larry Chapman ("Chapman") joined the Company as a director on August 16, 2013.  Chapman is Chairman of the Audit Committee and a member of the Compensation Committee of the Company's Board of Directors.  The Audit Committee monitors the Company's SEC disclosure compliance and any related reporting risks, and receives regular reports from the Company's Compliance Committee, which assist the Audit Committee in exercising certain oversight responsibilities.

26.     During the Class Period, CBL's SEC reports were signed and certified as true by Defendants S. Lebovitz, C. Lebovitz, and Khaleel, and reviewed and approved by Defendant Chapman.

27.     Defendants S. Lebovitz, C. Lebovitz, Khaleel, and Chapman are sometimes collectively referred to herein as the "Individual Defendants".

## SUBSTANTIVE ALLEGATIONS

### A.     The Overbill Litigation Commences

28.     The Overbill Litigation was commenced in 2016.  The Amended Complaint in that action ("Overbill Cplt."), filed July 1, 2016, summarized the claims as follows:

> When a landlord rents mall space to small businesses, it must follow state laws and regulations that forbid turning providing utilities into a profit center for secret excess rent. Likewise, when a mall landlord promises a tenant in written contract that it will not mark-up electricity, it must honor that contractual obligation. But CBL & Associates Properties, Inc. ("CBL"), broke these basic rules. Through a pernicious shell game of corporate entities, CBL for years executed a fraudulent scheme through a criminal enterprise to overcharge small business tenants for electricity at all of its shopping malls throughout the United States. (Overbill Cplt. ¶ 1).

29.     The Overbill Complaint further alleged that CBL had engaged in racketeering activity:

> CBL directed and required CBL Management to use standard lease agreements that falsely represented that the tenants at the shopping malls it ultimately owned would be charged the amount that the shopping malls were charged by the local utility providers to supply those tenants with electricity. That is, CBL Partnership, at the direction and behest of CBL, caused CBL Management to represent to the tenants that the tenants would pay the same amount for electricity that the tenants would pay if they were purchasing the electricity directly from the local utility. Despite the contractual obligations and representations, CBL, CBL Partnership, CBL Management, and other unnamed co-conspirators engaged in a racketeering enterprise and conspiracy, breached the lease agreements with tenants, and violated applicable state laws and regulations by inflating the tenants' electric bills. ***Sometimes, the fraudulent and illegal markups exceeded 100% of the tenant's actual electricity usage charges.*** (Overbill Cplt. ¶ 3) (emphasis added).

30. Moreover, it was alleged that CBL sought to conceal the scheme by prohibiting tenants form auditing their bills and usage:

> In an effort to conceal its wrongful and illegal conduct, CBL caused CBL Management to insert into the lease agreements a clause requiring the tenants at the shopping malls, ultimately owned and controlled by CBL through its holding companies, to waive their right to audit the shopping malls' electric bills in exchange for agreeing that the electricity charges would not be marked-up. Whenever tenants raised issues about their electricity costs, CBL caused CBL Management to inform the tenants that they had waived their audit rights under the lease agreement and instructed CBL Management not to provide the tenants with the actual electricity bills from the utilities, which would have revealed the undisclosed mark-ups. (Overbill Cplt. ¶ 4).

31. In sum, "to justify the marked-up electrical charges[,]" CBL engaged in a "scheme [that] allowed it to take advantage of the tenants by: (a) fraudulently misrepresenting to them that their electricity charges were not being marked up; (b) actually having the electrical charges marked-up in contravention of the lease agreement; and (c) covering up that illegal conduct by using the audit waiver provision to shield it from scrutiny. CBL knew it was much bigger, and much better financed than the thousands of small business owners nationwide who rented mall spaces from it. In exploiting this inequality, CBL used its vast resources and superior negotiating and bargaining power to actively victimize and defraud tenants – simply to reap unfair, improper, and illegal profits." (Overbill Cplt. ¶ 5).

32. The Overbill Litigation sought nationwide class certification covering "hundreds of current and former tenants." (Overbill Cplt. ¶ 42). The causes of action asserted included: RICO; unjust enrichment; violations of Florida's Deceptive and Unfair Trade Practices Act; Florida's Civil Remedies for Criminal Practices Act; and breach of contract. Plaintiff requested treble damages for itself and the Class. (Overbill Cplt., pp. 19-35).

33.     Given the large scope of CBL's operations, CBL and the Individual Defendants knew immediately that the Company was facing potential massive liability to thousands of class members (the precise number was ultimately found to be 4,800 class members).

## B.      The Motion to Dismiss

34.     On September 6, 2016, CBL moved to dismiss the Overbill Litigation, and strike the nationwide class allegations.

35.     On April 11, 2017, the Florida federal court denied this motion almost in its entirety.  In her opinion, Judge Chappell: (a) upheld the treble damages federal RICO claim, finding the allegations sufficient to infer a criminal conspiracy; and (b) likewise upheld the federal RICO claim, the unjust enrichment claim for Florida class members, and the Florida deceptive trade practices claim.  The sole claim dismissed was for breach of the implied contractual covenant of good faith and fair dealing.

36.     The denial of the motion to dismiss did not lead the defendants to disclose the existence of the Overbill Litigation in its SEC filings.

## C.      The Insurance Litigation

37.     Upon the filing of the Overbill Litigation, CBL's insurance carrier, Caitlin Specialty Insurance Company, brought suit immediately to disclaim coverage.  Thus, a declaratory judgment action was filed in July 2016 in the Delaware Superior Court.

38.     That action was resolved on September 20, 2017.  Judge Wallace ruled that CBL had no insurance coverage for the massive claims because the allegations reflected intentional wrongdoing.

39.     With this ruling, there was no question that CBL was exposed, without insurance, to material claims.  Still, it concealed these claims and even filed SEC reports reassuring that it faced only routine claims, usually covered by insurance.

**D.** **The Overbill Litigation Proceeds Uncovered By Insurance**

40.     As noted, the Overbill Litigation was no minor matter.  During the course of discovery, CBL produced more than 1.8 million pages of documents.  In addition, more than seventy third-parties were served with subpoenas resulting in more than 200,000 pages of additional documents produced.

41.     During the litigation, class counsel deposed twelve party and non-party witnesses, and CBL deposed the class representative and the class' experts.

42.     On January 7, 2019, the court granted, in part, the Class' Motion to Certify the Class. Shortly thereafter, the court approved a class notice program.  Class counsel provided notice to more than 4,800 potential class members through postcard notice.  The court, on January 23, 2019, denied CBL's Motion for Summary Judgment.  The parties attended the court's January 9, 2019, pretrial conference and calendar call, and trial was scheduled to begin on April 2, 2019.

43.     Following the pre-trial conference, mediation efforts accelerated, leading on March 15, 2019, to CBL's complete and total capitulation.  The $90 million settlement fund CBL agreed to provide not only provided the class members with 100% of their damages, but also extraordinarily provided plaintiff's lawyers with a payment of $28 million in attorneys' fees, subject to court approval.

44.     A complete surrender of this nature is a rarity in major civil litigation, and supports an inference that CBL had little or no valid defense to the claims.

**E.** **Defendants' Obligations Under the Federal Securities Laws**

45.     CBL is required to follow the federal securities laws, including the rules and regulations promulgated by the SEC.

46.     Under SEC Item 303, 17 § 229.103 a public company must in the textual portion of its SEC reports:

Describe briefly any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the ***name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought.*** [Emphasis supplied].[1]

47.   Defendants failed to comply with this provision.

48.   In addition to the above, CBL's financial statements were required to be presented in accordance with GAAP.  Under 17 CFR 210.4-01 (a)(1):

Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles ***will be presumed to be misleading or inaccurate***, despite footnote or other disclosures, unless the Commission has otherwise provided. [Emphasis added].

49.   GAAP Rule ASC 450 provides guidance regarding the accrual ***and disclosure*** of loss contingencies, which are defined as conditions, situations, or circumstances "involving uncertainty as to possible loss . . . that will ultimately be resolved when one or more future events occur or fail to occur."  ASC ¶ 450-20-20 Glossary.  Under ASC 450, loss contingencies must be accrued when information available before financial statements are issued suggests that a loss contingency is probable and can be reasonably estimated.  ASC ¶ 450-20-25.  When accrual is not required, a loss contingency must be disclosed ***if it is reasonably possible***; that is, if the likelihood that it will occur is more than remote but less than likely.   ASC ¶¶ 450-20-50-3; 450-20-20 Glossary.  Disclosure of reasonably possible losses must include "the nature of the contingency"

---

[1] A "safe harbor" under this rule exists if the litigation does not involve claims for more than 10% of a Company's "current assets." Item 303, Instruction 2. Here, the class claims were easily in the tens of millions of dollars and, once trebled, the claims were in the range of $180 million. As CBL is a REIT, its "current assets" are measured by its cash plus its accounts receivable. According to financial research concern Zack's, CBL's current assets amounted during the relevant period to slightly more than $100 million. Thus, any claim potentially involving in excess of $10 million would be material CBL, and would require full disclosure. *See* https://www.zacks.com/stock/quote/CBL/balance-sheet.

and an estimate of the loss or range of loss. ASC ¶ 450-20-50-4. If a loss cannot be estimated, the entity may state that an "estimate cannot be made." ASC ¶ 450-20-50-4. Under ASC 450, even threatened (but not yet filed) litigation may qualify as a loss contingency when the potential claimant has manifested awareness of the claim. *See* ASC ¶ 450-20-50-6.

50. Here, throughout the Class Period, Defendants violated ASC 450 and GAAP. For almost all of the period, they completely ignored their disclosure obligation, motivated by a desire to avoid bad publicity surrounding their dishonest nature and their dishonest conduct. Even on March 1, 2019, at the very tail end of the Class Period, and days before a complete capitulation in the Overbill Litigation, did Defendants even partly comply with their disclosure duties. This partial compliance pretended that Defendants were unable to evaluable the claims' merits, or estimate potential exposure. When the truth was revealed shortly thereafter, CBL shares materially declined in price, injuring Plaintiff and the Class he seeks to represent.

**F.** **Materially False and Misleading Statements Issued During the Class Period**

51. The Class Period begins on April 29, 2016. On April 28, 2016, after-market hours, CBL filed its first current report following the commencement of the Overbill Litigation on Form 8-K with the SEC (the "April 2016 8-K"). CBL appended an earnings release as an exhibit to the April 2016 8-K, announcing CBL's financial and operating results for the quarterly period ended March 31, 2016 (the "1Q 2016 Earnings Release"). The 1Q 2016 Earnings Release touted CBL's first quarter results while conveniently failing to mention the Overbill Litigation. Rather, the 1Q 2016 Earnings Release merely noted, in relevant part:

> [D]uring the first quarter of 2016, the Company recognized $1.7 million of litigation expense as well as a $26.4 million increase in equity in earnings related to the sale of our 50% interest in Triangle Town Center. Additionally, during the first quarter of 2016, the Company recognized a $16.6 million gain on investment related to the sale of marketable securities and received income of $4.7 million, net of related expenses, as a partial settlement of ongoing litigation. Considering the significance and nature of these items, the Company believes it is important to

identify their impact on its FFO measures for readers to have a complete understanding of the Company's results of operations. Therefore, the Company has also presented adjusted FFO measures excluding these items from the applicable periods.

Despite CBL's assertion that it "believe[d] it [wa]s important to identify [the] impact" of the items quoted above "on [the Company's] FFO measures for readers to have a complete understanding of the Company's results of operations[,]" the Company failed to mention that it was engaged in ongoing litigation with potentially hundreds of millions of dollars at stake, or that a class of plaintiffs had brought action against the Company for fraudulently inflating their electricity bills.

52. On March 1, 2017, CBL filed its annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K failed to disclose material facts concerning the Overbill Litigation in its "Legal Proceedings" section in violation of the federal securities laws and GAAP, which require a public company to report threats to its business which could result in a material change in the Company's cash position in its quarterly and annual SEC filings (see ¶¶ 45-50 above). Specifically, the 2016 10-K's "Legal Proceedings" section stated, in whole:

**ITEM 3. LEGAL PROCEEDINGS**

We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition.

On May 27, 2016, Tommy French filed a putative class action in the United States District Court for the Eastern District of Tennessee on behalf of himself and all persons who purchased our common stock between August 8, 2013 and May 24, 2016. Two additional suits were filed shortly thereafter with similar allegations. On June 9, 2016, The Allan J. and Sherry R. Potts Living Trust filed a putative class action in the same Court on behalf of the trust and all persons who purchased our common stock between August 8, 2013 and May 24, 2016, and on June 24, 2016, International Union of Painters & Allied Trades District Council No. 35 Pension Plan filed another putative class action in the same Court on behalf of itself and all

persons who purchased our common stock between August 9, 2011 and May 24, 2016, containing similar allegations. On July 26, 2016, motions were submitted to the Court for the consolidation of these three cases, as well as for the appointment of a lead plaintiff. On September 26, 2016, the Court granted the motion, consolidated the cases into one action, and appointed the New Mexico Educational Retirement Board as lead plaintiff and its counsel, Bernstein Liebhard, as lead counsel. The Court granted the lead plaintiff 60 days to file a consolidated amended complaint, and once filed, we will file a response. The previously filed complaints are all based on substantially similar allegations that certain of our financing arrangements were obtained through fraud and/or misrepresentation, and that we and certain of our officers and directors made materially misleading statements to the market by failing to disclose material information concerning these alleged misrepresentations, and concerning the supposed involvement by insiders in alleged trading of our stock by a United States senator on the basis of material nonpublic information. Based on these allegations, these complaints assert claims for violation of the securities laws and seek a variety of relief, including unspecified monetary damages as well as costs and attorneys' fees. The above-referenced plaintiffs voluntarily dismissed their claims on December 20 and 21, 2016, respectively, and on January 4, 2017, the Court administratively closed the case. We made no payment or entered into any agreement as part of this matter, and as such, we now consider this matter closed.

On July 29, 2016, Henry Shebitz filed a shareholder derivative suit in the Chancery Court for Hamilton County, Tennessee alleging that our directors, three former directors and certain current and former officers breached their fiduciary duties by causing us to make materially misleading statements to the market by failing to disclose material information concerning these alleged misrepresentations, and concerning the supposed involvement by insiders in alleged trading of our stock by a United States senator on the basis of material nonpublic information. The complaint further alleged that certain of our current and former officers and directors improperly engaged in transactions in the Company's stock while in possession of material nonpublic information concerning the Company's alleged misleading statements. The complaint purported to seek relief on behalf of us for unspecified damages as well as costs and attorneys' fees. On or about January 31, 2017, the plaintiff filed a Notice of Voluntary Dismissal, and on February 2, 2017, the Court entered an order dismissing the suit without prejudice. We made no payment or entered into any agreement as part of this matter, and as such, we now consider this matter closed.

53.     Appended as exhibits to the 2016 10-K were signed certifications pursuant to the

Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants S. Lebovitz and Khaleel certified that

"[t]he [2016 10-K] fully complies with the requirements of section 13(a) or 15(d) of the Securities

Exchange Act of 1934[,]" and that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

54.     On November 8, 2017, CBL issued its quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarterly period ended September 30, 2017 (the "3Q 2017 10-Q"). The 3Q 2017 10-Q was the first SEC quarterly report subsequent to CBL's loss of insurance coverage, and was required to provide a full explanation of the Overbill Litigation and its risks. Instead, CBL simply stated:

> We are currently involved in certain litigation *that arises in the ordinary course of business, most of which is expected to be covered by liability insurance*. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition. [Emphasis added].

55.     On March 1, 2018, CBL filed its annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K failed to disclose material facts concerning the Overbill Litigation in its "Legal Proceedings" section in violation of the federal securities laws and GAAP, which require a public company to report threats to its business which could result in a material change in the Company's cash position in its quarterly and annual SEC filings (see ¶¶ 45-50 above). Specifically, the 2017 10-K's "Legal Proceedings" section stated, in whole:

**ITEM 3. LEGAL PROCEEDINGS**

> We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition.

56.     Appended as exhibits to the 2017 10-K were signed SOX certifications wherein Defendants S. Lebovitz and Khaleel certified that "[t]he [2017 10-K] fully complies with the

requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

57.     The statements referenced in ¶¶ 51-56 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) CBL was defending a class action lawsuit on behalf of a class of plaintiffs alleging that CBL had inflated their electric bills, *i.e.*, the Overbill Litigation; (ii) the Overbill Litigation could cost the Company up to hundreds of millions of dollars; (iii) CBL's insurance was not likely to cover the costs associated with the Overbill Litigation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

58.     As the Overbill Litigation proceeded closer and closer to trial, no mention of this litigation was made.  It certainly did not arise "in the ordinary course of business," nor was it expected to be covered by liability insurance.  No reserve was taken in the financial statements to account for any estimated payment that might be made.  This concealment and misrepresentation was material and knowing and violated the federal securities law.

59.     In January 2019, the federal court scheduled the Overbill Litigation for trial to commence on April 2, 2019.  A settlement mediation was subsequently scheduled for March 14, 2019.

60.     Having no viable defense, CBL and the Individual Defendants knew that it would have to settle the case for a very large sum, reflecting all or substantially all of the damages sought.

## G. **The Truth Begins to Emerge**

61.     On March 1, 2019 — thirteen days prior to the mediation at which CBL entirely capitulated — CBL filed the 2018 10-K with the SEC, wherein it belatedly revealed the Overbill Litigation, but left out key facts, such as the damages sought (which could amount to $180 million trebled), and claimed falsely an inability even to estimate CBL's potential exposure.  The 2018 10-K stated, in relevant part:

> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States District Court for the Middle District of Florida (the "Court") for unspecified monetary damages as well as costs and attorneys' fees, based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. ***We believe this lawsuit is without merit and are defending ourselves vigorously.*** On January 22, 2019, we filed a petition seeking interlocutory review of the Court's class certification order; that petition is still pending as of the date of this report. On January 23, 2019, the Court set this matter for the trial term starting on April 1, 2019. ***We have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time.*** However, litigation is uncertain and an adverse judgment in this case could have a material adverse effect on our financial condition and results of operations. This matter is not covered by insurance. [Emphasis added].

62.     Appended as exhibits to the 2018 10-K were signed SOX certifications wherein Defendants S. Lebovitz and Khaleel certified that "[t]he [2018 10-K] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

63.     The statements in ¶¶ 61-62 were blatantly misleading:  a loss was probable; an accrual was required to be taken under applicable accounting rules; and CBL had more than sufficient information "to reasonably estimate the amount or range of reasonably possible loss at

this time." In reaction to this partial revelation, CBL stock dropped 16 cents, or roughly 8% per share, on volume of approximately 4.5 million shares.

64. Only fourteen days after filing this misleading report, CBL reached an agreement to settle the claims for $90 million, reflecting the payment of full damages, costs and counsel fees.

65. On March 26, 2019, CBL issued a press release regarding the settlement, which omitted mention of the size of that's settlement:

**CBL PROPERTIES ANNOUNCES PROPOSED SETTLEMENT**
**OF CLASS ACTION LAWSUIT**

CHATTANOOGA, Tenn. (March 26, 2019) -- CBL Properties (NYSE: CBL) today announced that it has approved the structure of a settlement of a class action lawsuit as outlined below.

Background

On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States Court for the Middle District of Florida seeking unspecified monetary damages, as well as costs and attorneys' fees, based on allegations that CBL and certain affiliated entities overcharged tenants at bulk metered malls for electricity.

In recent months, the pace of the case accelerated to a considerable degree. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. On January 22, 2019, CBL filed a petition with the United States Court of Appeals for the Eleventh Circuit seeking permission to appeal the Court's class certification order, and on March 4, 2019, that petition was denied. On March 11, 2019, the Court set the trial date for April 2, 2019. On March 15, 2019, following mediation proceedings, a proposed structure of a settlement was approved by representatives of the parties.

CBL denies all allegations of wrongdoing and asserts that its actions have at all times been lawful and proper. However, given the class certification, the accelerated trial schedule, the inherent risk of any trial, and the potential cost of an adverse resolution of the litigation, the Company believes that mediation was the prudent path. Furthermore, it maintains that the proposed settlement is in CBL's best interest and in the best interests of its shareholders.

Proposed Settlement Structure

*Details of the proposed settlement structure and anticipated accounting impact are available on CBL's Form 8-K filed with the SEC today.*

As part of the proposed settlement, CBL will suspend payment of its common dividend for two quarters: the quarter ended June 30, 2019 (payable in third quarter 2019), and the quarter ended September 30, 2019 (payable in fourth quarter 2019). The suspension of the dividend for two quarters will preserve approximately $26.0 million in cash at the current quarterly dividend rate. Based on the current projection of taxable income for 2019, which includes the impact of the settlement, CBL believes it will satisfy all required REIT distributions for the 2019 taxable year. The proposed settlement does not restrict CBL's payment of common dividends thereafter. CBL anticipates resuming a quarterly distribution with its dividend payable in January 2020 (subject to Board approval) in an amount to be determined at that time based on updated taxable income projections for 2020. CBL's common dividend previously declared on February 25, 2019, and payable on April 16, 2019, will be paid as declared.

66.    To learn of the shocking size of the settlement, investors had to seek out SEC Form 8-K filed that same day which revealed in pertinent part:

**Under the terms of the proposed settlement, we are to set aside a common fund with a monetary and non-monetary value of $90 million (the "Common Fund") to be disbursed to class members in accordance with a formula to be agreed upon by the parties that is based upon aggregate damages of $60 million . . . .**

Under the terms of the proposed settlement, we will not pay any dividends to holders of our common shares payable in the third and fourth quarters of 2019. The settlement does not restrict our ability to declare dividends payable in 2020 or in subsequent years. [Emphasis added].

67.    On this news, CBL shares dropped $0.47, or roughly 25%, on trading volume of approximately 11.7 million shares.  CBL Series D preferred shares dropped 7%, or $0.74, on volume of 576,300 shares, and CBL Series E preferred shares dropped $0.69 in two days, on volume of 214,200 shares.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

68.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased, or otherwise acquired, CBL securities during the Class Period (the "Class") and were damaged

upon the revelation of the alleged corrective disclosure. Excluded from the Class are the Defendants herein; CBL's officers and directors, at all relevant times; members of their immediate families, and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have, or had, a controlling interest.

69.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CBL securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by CBL, or its transfer agent, and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

70.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

71.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel that are competent and experienced in class action and securities litigation. Plaintiff has no interest, antagonism, or conflict with the members of the Class.

72.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of CBL;

(c)     whether the Individual Defendants caused CBL to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of CBL securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages, and if so, what is the proper measure of damages.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

74.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     CBL securities are traded in an efficient market;

(d)     CBL's shares were liquid and traded with moderate-to heavy volume during the Class Period, and reacted swiftly to news and SEC filings;

(e)     CBL traded on the NYSE and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of CBL securities; and

(g)     Plaintiff and members of the Class purchased, acquired, and/or sold CBL securities between the time Defendants failed to disclose, or misrepresented material facts, and when the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

75.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

76.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against All Defendants)

77.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.     This count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

79.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly, or recklessly, engaged in acts, transactions, practices, and courses of business, which operated as fraud and deceit upon Plaintiff and the other

members of the Class; made various untrue statements of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of CBL securities; and (iii) cause Plaintiff and other members of the Class to purchase, or otherwise acquire, CBL common and/or preferred stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, including the Individual Defendants, took the actions set forth herein.

80.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly, or indirectly, in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media, that were designed to influence the market for CBL securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CBL's finances and business prospects.

81.    By virtue of their positions at CBL, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed, or refused to ascertain and disclose, such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of

Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew, or recklessly disregarded, that material facts were being misrepresented or omitted as described above.

82.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is particularly within Defendants' knowledge and control. As the senior managers and/or directors of CBL, the Individual Defendants had knowledge of the details of CBL's internal affairs.

83.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, control the content of the statements ofCBL. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to CBL's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of CBL securities were artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning CBL's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased, or otherwise acquired, CBL common and/or preferred stock at artificially inflated prices and relied upon the price of the securities, the integrity of the market, and/or upon statements disseminated by Defendants and were damaged thereby.

84.    During the Class Period, CBL securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or

relying upon the integrity of the market, purchased or otherwise acquired shares of CBL common and/or preferred stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common and/or preferred stock or would not have purchased or otherwise acquired common and/or preferred stock at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CBL securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of CBL securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

85. By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

86. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of CBL securities during the Class Period and were harmed upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20 of the Exchange Act
### (Against the Individual Defendants)

87. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88. During the Class Period, the Individual Defendants participated in the operation and management of CBL and conducted and participated, directly and indirectly, in the conduct of

CBL's business affairs. Because of their senior positions, they knew the adverse non-public information alleged herein.

89.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to CBL's financial condition and operations, and to promptly correct any public statements issued by CBL that became materially false or misleading.

90.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that CBL disseminated in the marketplace during the Class Period concerning CBL's financial results and business relationships.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause CBL to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of CBL within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged herein that artificially inflated the market price of CBL securities.

91.     Each of the Individual Defendants, therefore, acted as a controlling person of CBL. By reason of their senior management positions and/or being directors of CBL, each of the Individual Defendants had the power to direct the actions of the Company and exercised the same power to cause CBL to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of CBL and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

92.     By reason of the above conduct, the Individual Defendants are liable, pursuant to Section 20(a) of the Exchange Act, for the violations committed by CBL.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A.      Declaring that the instant action may be maintained as a class action, under Fed. R. Civ. P. 23, and certifying Plaintiff as Class Representative;

B.      Awarding Plaintiff and the other members of the Class compensatory damages;

C.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D.      Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: June 24, 2019


Respectfully Submitted

**HOLIFIELD JANICH & FERRERA, PLLC**

/s/ *Sarah R. Johnson*
Al Holifield (BPR# 015494)
Sarah R. Johnson (BPR# 030781)
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Telephone: (865) 566-0115
Fax: (865) 566-0119
Email: aholifield@holifieldlaw.com
Email: sjohnson@holifieldlaw.com

*Liaison Counsel for Plaintiff*

-and-

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*