## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESEE
## CHATTANOOGA DIVISION

|  |  |
|---|---|
| IN RE CBL & ASSOCIATES PROPERTIES, INC. SECURITIES LITIGATION | ) ) ) ) |

Consolidated Case No.
No. 1:19-cv-00181-JRG-CHS

## REPLY BRIEF IN FURTHER SUPPORT
## OF THE HOFFMANS' MOTION FOR LIMITED DISCOVERY

Lead Plaintiff movants Charles D. Hoffman, HoffInvestCo and Lydia Hoffman (collectively referred to herein as the "Hoffmans") respectfully submit this reply brief in further support of their motion made pursuant to Section 21D(a)(3)(B)(iv) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B)(iv) (2019), to obtain discovery from Jay Scolnick and Mark Shaner (the "Scolnick Group") in connection with the pending motions for appointing a lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

### ARGUMENT

The Hoffmans' motion to take discovery is made in the alternative. The Hoffmans' primary position is that the Scolnick Group's application to be appointed lead plaintiff is inherently defective because it fails to comply with the requirements of the PSLRA. The most recent submission by the Scolnick Group cannot salvage its motion and, if anything, adds to the concern that its initial submission failed to comply with the PSLRA.

A key defect lies in the Scolnick Group's sworn certification's failing to conform to the statutory requirement of the PSLRA to "set[] forth **all** of the transactions of the plaintiff in the security that is the subject of the complaint **during the class period specified in the complaint**." 15 U.S.C. §78u-4(a)(2)(A)(iv) (2019) (emphasis added).  However, as the Hoffmans have previously explained, Mr. Scolnick's certification instead limits disclosure of his transactions in CBL securities to his "current knowledge." *See* ECF No. 40 at 2-3. That is simply not enough especially where, as here, Mr. Scolnick operates through many different entities. *Id.* at 3.

Strikingly, even though Mr. Scolnick submitted a new declaration to the Court, he still fails to address what he meant by inserting the term "current knowledge" into his sworn PSLRA certification. Specifically, Mr. Scolnick does not address what concerns led him or Mr. Shaner to use the "current knowledge" qualification including whether all their trading during the class

period has been properly disclosed and the extent other entities Mr. Scolnick owns, or in which he has a material financial interest, traded in CBL securities.

Mr. Scolnick attempts to address Sheryl Scolnick's trading record, submitted to the Court reflecting a multi-week negative balance in CBL stock, by referring to pre-class period holdings in CBL stock. *See* ECF No. 40 at 3. However, handwritten notes in the exhibit attached to Mr. Scolnick's new declaration refer to 2016, 2017, and 2018 (ECF No. 52-1), suggesting that Sheryl Scolnick's "pre-class period" transactions took place in 2016, which is, in fact, within the class period which in this consolidated action begins on July 29, 2014. *See* Case 1:19-cv-00181, ECF No. 1, ¶1. This further suggests that her submission as well as the Scolnick Group's other submissions listing transactions starting in July 2016 and some of which contain initial balances (ECF No. 25-4 in 1:19-cv-00149-JRG-CHS) may be incomplete and reflect the Scolnick Group not investigating or reporting their transactions for the two-year portion of the class period between July 2014 and July 2016.

These concerns are heightened because the Scolnick Group's PSLRA certifications fail to identify a specific date range for CBL stock transactions or identify which complaint was reviewed. *See* ECF No. 40 at 3 n.1. Instead, the certifications refer to a complaint which is neither attached to the certification nor identified by name and by extension the class period contained in that unidentified complaint. *See* ECF No. 40 at 3. If it is to the complaint which the Scolnick Group's counsel filed in this Court, the class period begins on April 29, 2016. *See* Case 1:19-cv-00181, ECF No. 1, ¶1.[1] However, the Scolnick Group's motion papers adopted the longer class

---

[1]     Also lacking in merit is the Scolnick Group's contention "that a recitation of Scolnick's authority to assign the claims of these entities is not required to make the requisite *prima facie* showing of adequacy to be appointed as Lead Plaintiff pursuant to the PSLRA." ECF No. 52 at 5. In fact, the PSLRA does not reference assignments at all but once the door is opened to damages based upon assignments, it is reasonable to require a purported assignee to make a facial showing

2

period pled in the *Merelles* Action beginning in July 2014. *See* ECF No. 24 in 1:19-cv-00149-JRG-CHS at 2.

In addition, the Scolnick Group, by submitting a retainer agreement *in camera*, improperly seeks to cloak portion of its submission in secrecy from other parties. Instead, it is well settled that retainer agreements are not privileged unless they reveal a confidential communication of legal advice – the identity of the client, the fee arrangement, and the fact of retention are not privileged because they only involve the incidents of representation. *See, e.g., In re Grand Jury Subpoena*, 204 F.3d 516 (4th Cir. 2000) (retainer agreement not protected by the privilege); *Lawfinders Associates, Inc. v. Legal Research Ctr., Inc.* 193 F.3d 517, 1999 WL 706182, at \*2 (5th Cir. 1999) (per curiam) ("the attorney-client privilege does not protect the type of information contained in the retainer letters."); *Bowman v. Green Tree Servicing, Inc.*, 2012 WL 4849616, at \*3 (N.D. W. Va. Oct. 11, 2012) ("The authority is unanimous for the proposition that 'in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.'"). In addition, even assuming *arguendo* that the retention agreement is privileged, liberally referring to its contents effectively waives any claimed privilege. *See, e.g., In re Lott,* 424 F.3d 446, 454 (6th Cir. 2005) ("litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case" or, more simply, cannot use the privilege as "a shield and a sword").

---

of appropriateness because an improper assignment might affect a movant's adequacy. Accordingly, this Court need not blindly accept purported authorizations. *Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at \*7 (N.D. Ill. June 26, 2018) (finding that "[b]ased on the materials before the Court, the Court has no reason to conclude that the assignments were . . . signed by unauthorized persons."). This is particularly true where, as here, no additional information is provided about Doreen Development Corporation, its owners or other senior executive officers.

The Hoffmans believe that these facts preclude the Scolnick Group from serving as lead plaintiff in this action because its incomplete and confusing submission fails to demonstrate that the Scolnick Group is an adequate class representative. *See, e.g., Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) ("carelessness about detail" "undermines the adequacy" of a lead plaintiff movant); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (errors in pleadings disqualified the movant from serving as a lead plaintiff); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (rejecting a movant's application because "errors in his submissions . . . militate against appointment and render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement"). However, in the alternative, the Hoffmans have clearly raised a reasonable basis to take discovery regarding Mr. Scolnick's adequacy, which is the relevant standard for allowing discovery. *See, e.g., Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016). Such discovery would primarily focus on identifying all of the Scolnick Group's (including entities controlled by members of the Scolnick Group) transactions in CBL securities during the class period beginning in July 2014, unqualified by current knowledge at the time of signing its PSLRA certifications.

*Ferrari v. Impath, Inc.*, 2004 WL 1637053 (S.D.N.Y. July 20, 2004), upon which the Scolnick Group relies, is inapposite to the case at Bar. There, the court refused to allow discovery because the movant seeking discovery did "not make a single citation to the record to support its allegations" and the Court's examination of the record found "no evidence that would corroborate" the theory, "which appear[ed] to rely solely on innuendo and inferences rather than established fact." *Id.* at *6. Here, in contrast, there is ample evidence corroborating that Mr. Scolnick operates through several entities and this suggests that the transactions disclosed are incomplete because of, *inter alia*, a misconception of the class period. Thus, it is irrelevant that discovery was refused in *Ferrari* because, although allegations were "potentially troubling," the movant seeking

4

discovery had "produced not one iota of evidence to give the Court even a reasonable basis to authorize discovery." *Id.* at *7.

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015), upon which the Scolnick Group also seeks to rely, denied requests for discovery into three issues, two of which were already of record and the other of which had no legal basis. The first issue related to a shareholder and company he controlled retaining separate counsel. *Id.* at 539. The court, earlier in its opinion, concluded this issue was "a tempest in a teacup" and had been rectified on the record. *Id.* at 537. Discovery was also sought as to the movant's authority to sign a PSLRA certification for a company, but evidence on the record established that authority. *Id.* at 538. Lastly, discovery was sought as to standing, which argument the court found was legally flawed. *Id.* at 539. Here, in contrast, as previously explained, the Scolnick Group has *not* answered several of the issues raised by the Hoffmans and does not appear to have submitted all relevant holdings, even when considering those made in its reply submission.

## CONCLUSION

Therefore, for the reasons stated herein, the Hoffmans respectfully submit that if their motion to be appointed lead plaintiff is not granted, the Court should allow them to take limited discovery and following that discovery file a supplemental brief.[2]

---

[2] The written discovery the Hoffmans are seeking is set forth in Exhibit A hereto and should be answered on an expedited basis of no more than two weeks. In addition, the Hoffmans believe that it will be necessary to take a short deposition of Mr. Scolnick after receiving responses to the written discovery requests. After that limited discovery, the Hoffmans believe that they need approximately one week within which to file a supplemental brief.

5

Dated: August 13, 2019

Respectfully submitted,

**THE HAMILTON FIRM**

/s/  John W. Chandler, Jr.
John W. Chandler, Jr.
2401 Broad Street, Suite 102
Chattanooga, TN 37408
Tel: (423) 634-0871
Fax: (423) 634-0874
jwc@thehamiltonfirm.com

Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
**ABRAHAM, FRUCHTER &**
   **TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftlaw.com
mklein@aftlaw.com

**Attorneys for the Hoffmans**

6

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of August, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated in the electronic filing receipt. I hereby certify that I am unaware of any other parties in this cause not using the CM/ECF system.

/s/ John W. Chandler, Jr.
John W. Chandler, Jr.

**THE HAMILTON FIRM**
2401 Broad Street, Suite 102
Chattanooga, TN 37408
Tel: (423) 634-0871
Fax: (423) 634-0874
jwc@thehamiltonfirm.com

7