## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

IN RE CBL & ASSOCIATES PROPERTIES
INC. SECURITIES LITIGATION

)
)
)
)
)

Consolidated Case No.:
No. 1:19-CV-00181-JRG-CHS

### DECLARATION OF GREGORY M. EGLESTON, ESQ. IN RESPONSE TO BRENT COWIN'S SUBMISSION REGARDING COMPETING LEAD PLAINTIFF MOTIONS AND NOTICE OF FRAUD ON THE COURT (DKT NOS. 41, 42 AND 51)

I, Gregory M. Egleston, declare as follows:

1. I am an attorney duly licensed to practice law before all the courts of the State of New York. I am admitted in this action *pro hac vice*. I am a member of the law firm Gainey McKenna & Egleston.

2. I make this declaration in response to filings made on behalf of Mr. Brent Cowin, *see* Dkt. Nos. 41, 42 and 51 in the above-referenced case.

3. When the various filed lead plaintiff motions were reviewed on July 17, 2019, the day after they had been filed, my firm realized that the firm of Faruqi & Faruqi, LLP ("the Faruqi firm") had filed a lead plaintiff motion on behalf of Mr. Cowin. In one previous instance a shareholder who had instructed us to file a lead plaintiff motion also apparently authorized another law firm to do the same thing. That shareholder later confirmed that he meant only to authorize my firm to proceed on his behalf and the other firm withdrew. *See Bodri v. GoPro, Inc.*, et al, Case No. 3:16-cv-232 (N.D. Cal.), Dkt. Nos. 15, 31 and 52. The *Bodri* action, like this one, was an action where the class period was expanded during the waiting period for the lead plaintiff motions to be made by the filing of additional complaints with different class periods. That dynamic had seemed to confuse some of the shareholders in the *Bodri* and related matters. I

believed that the same situation might have been occurring again.

4.      Mr. McKenna who had been primarily dealing with Mr. Cowin was unavailable the morning of July 17, 2019, so I called Mr. Cowin to confirm our firm was authorized to represent him. Mr. Cowin mentioned that he had already spoken to the Faruqi firm that morning. We discussed the various lead plaintiff motions and the size of the reported losses. We also discussed the fact that my firm filed the first action, he had contacted us immediately thereafter and that he had sent us his trades in CBL.  Mr. Cowin acknowledged all that but stated that a lawyer acquaintance had told him about the Faruqi firm.  Because I had believed he authorized my firm to pursue a lead plaintiff appointment for him, I mentioned that if he had authorized both firms to represent him, he could choose which firm he wanted.  Mr. Cowin instructed me that he wished to proceed with the Faruqi firm and that my firm should cease its efforts on his behalf.  I told him we would comply and ceased all communications with him.

5.      Mr. Cowin's accusation that my firm committed a criminal act is unfounded. *See* Dkt. No. 41 at p. 4.  Under Tennessee Code Annotated § 39-14-114(a), a person commits forgery when he or she "forges a writing with intent to defraud or harm another."  Tenn. Code Ann. § 39-14-114(a); *Bd. of Prof. Responsibility v. Curry*, 266 S.W.3d 379, 393 (Tenn. 2008) (observing that "forgery" is not defined in the UCC, but that "courts look to the definition of the offense in the criminal code" in determining whether it exists).  "[A] necessary element of the act of forgery is an intent to defraud.  The fact that a signature or endorsement is unauthorized does not necessarily establish it as a forgery unless there is also evidence of an intent to defraud." *Curry*, 266 S.W.3d at 393 (citations omitted).   Here, I contacted Mr. Cowin immediately after the submission of the lead plaintiff papers to determine why there were two submissions on his part by two different law firms.  It was my belief that the electronically signed certification had been authorized by Mr.

2

Cowin as he had sent us a list of his trades in CBL and had been in communication with my partner – Mr. McKenna. In short, although I incorrectly believed that we represented Mr. Cowin, a misunderstanding does not rise to the level of fraud, let alone a criminal act. Moreover, Mr. Cowin's claim (*see* Dkt. No. 41 at p. 6) that I attempted "to gaslight [him] into believing that he had signed documents with [my firm]" is not accurate. The reason that I called Mr. Cowin was to understand who he wanted to represent him as it was my understanding that my firm did. After I was told that he wanted the Faruqi firm, I complied with his wishes and ended the conversation. Although Mr. Cowin requested several times at the end of the conversation to send him the certification, I did not believe it was appropriate to continue to interact with him as he instructed me that the Faruqi firm represented him.

6. I reported this call to Mr. McKenna later on July 17, 2019. I am informed that Mr. McKenna promptly called Nadeem Faruqi of the Faruqi firm and told him we had received Mr. Cowin's instructions that the Faruqi firm was authorized to represent him and that we intended to promptly withdraw the motion for lead plaintiff that we had filed on Mr. Cowin's behalf.

7. We promptly filed the Notice of Withdrawal of the lead plaintiff motion later that same day. We attempted to make clear that Mr. Cowin's motion to be lead plaintiff continued under the stewardship of the Faruqi firm by expressly noting: "Movant Brent Cowin will be represented by the law firm of Faruqi & Faruqi, LLP in connection with all matters related to the above-captioned actions." *See* Dkt. No. 38 in Case No. 1-19-cv-149. Nothing more was intended except to expressly note that Mr. Cowin desired to be appointed as lead plaintiff if warranted.

8. On July 25, 2019, my firm filed a Notice of Voluntary Dismissal of the action we had filed on behalf of our client Mr. Larry Paskowitz, *see* Dkt. No. 44 in Case No. 1-19-cv-149. Our involvement in these actions ceased at that time.

3

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on August 22, 2019, at New York, New York.

GREGORY M. EGLESTON

4