EXHIBIT B

Case 1:19-cv-00181-JRG-CHS    Document 84-2    Filed 11/15/19    Page 1 of 25
PageID #: 1159

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WAVE LENGTHS HAIR SALON OF      )
FLORIDA, INC., d/b/a SALON ADRIAN, on   )
behalf of itself and all others similarly situated,   )
                                )
            Plaintiffs,          )
                                )
v.                              )
                                )   Case No. 2:16-cv-00206-SPC-MRM
CBL & ASSOCIATES PROPERTIES, INC.,   )
CBL & ASSOCIATES MANAGEMENT, INC.,   )
CBL & ASSOCIATES LIMITED        )
PARTNERSHIP and JG GULF COAST TOWN
CENTER LLC,

            Defendants.

## DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS

The Prospective Intervenors[1] to this matter are now attempting an end-around of the discovery process in a pending securities litigation,[2] apparently because they cannot without discovery meet the heightened pleading standards of the Private Securities Litigation Reform Act (the "PSLRA"). They are asking this Court to abandon its still operative and deliberately-considered sealing orders that cover *tens of thousands* of pages of documents containing the proprietary information of Defendants[3] without even considering the contents of a single sealed document. And in the process, they misstate the record in this matter, the Local Rules of this

---

[1] Jay B. Scolnick, Mark Shaner, Charles D. Hoffman, HoffInvestCo, and Lydia Hoffman (collectively, the "Prospective Intervenors").

[2] *In Re CBL & Assocs. Props., Inc. Sec. Litig.*, No. 1:19-cv-00181-JRG-CHS (E.D. Tenn.).

[3] CBL & Associates Properties, Inc.; CBL & Associates Management, Inc.; and CBL & Associates Limited Partnership ("Defendants").

7422933.5

Court, the process for examining a still-applicable order sealing documents, and the burden of proof necessary to lift a Court's seal in this Circuit. This Court should deny the Prospective Intervenors' requested relief in this matter entirely. At a minimum, the Court should require the Prospective Intervenors to properly meet their burden to unseal the documents, on a document-by-document basis, by way of a renewed motion after conferring with Defendants.

## I.      This Court's Orders Sealing Documents Are Still Applicable.

As an initial matter, the Prospective Intervenors flatly misstate the record in this case. Throughout the course of this litigation, both parties (but particularly Defendants) produced tens of thousands of pages of documents, many of which constitute or contain confidential and proprietary information of the parties. Recognizing this, the parties jointly sought, and the Court entered, a Stipulated Confidentiality Agreement and Protective Order (the "Confidentiality Order") (Docs 103, 103-1, 105, 106.) In their Motion for Protective Order, the parties explained that much of the information sought in the litigation would include "non-public information that if disclosed, would significantly harm the competitive position of some or all of the Defendants," including "communications regarding lease negotiations, proposed and final lease terms, lease rates, and non-public sales, expense, financial and development information." (Doc 103, at ¶ 5.) The Court, in granting the parties' motion, recognized that an "umbrella" Protective Order would be necessary for this matter because "a document-by-document review of discovery materials in such a case is not feasible if the case is to proceed in an orderly, timely manner." (Doc 105, at ¶ 3.) The Court made clear in its Order that the protections afforded therein will survive the pendency of the litigation:

> Each document, material, or other thing, or portion thereof designated as 'Confidential' *shall retain that designation and shall remain subject to the terms of this Confidentiality Order until such time as the Parties agree to the contrary or the Court renders a decision that a particular document, material, or other*

7422933.5

***thing, or portion thereof is not subject to this Confidentiality Order***, and any and all proceedings or interlocutory appeals challenging such decision have been concluded.

(Doc 106, at ¶ 16 (emphasis added).)   None of the parties to this litigation have agreed the Confidentiality Order no longer applies, and the Court has not issued an Order to that effect.[4]

Recognizing the importance of maintaining the confidentiality of these records, the parties jointly moved on multiple occasions for this Court to seal certain Confidential materials covered by the Confidentiality Order that were submitted to this Court in support of several filings. (*See* Docs 120, 134, 138, 144, 156, 166, 177, 178, 183, 205, 206, 213, 228, 258, and 304.)   The Court granted these motions and sealed the documents. (Docs 122, 135, 139, 149, 159, 168, 180, 186, 207, 214, 229, 260.) The Prospective Intervenors seize on the fact that the parties' motions to seal represented that sealing the documents at issue would be "appropriate until the end of the litigation," but the Prospective Intervenors fail to recognize the elementary principle that the Court's orders, and not the parties' motions, determine the scope and duration of the seals.

In the Orders sealing the first four filings, the Court ordered that "[t]hese documents shall remain under seal for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents." (Docs 122, 135, 139, 149.)   The Court's orders clearly state that the documents remain sealed "for the duration of th[e] action and any appeal thereto"; what the orders *do not* say is that the documents *do not* remain sealed at the conclusion of the action and any appeal *or* that the seal somehow expires automatically when the time to appeal has run.

---

[4] *See FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) ("Once a confidentiality order has been entered and relied upon, it can only be modified if an *'extraordinary circumstance' or 'compelling need'* warrants the requested modification.") (internal citations omitted).

In its final eight Orders sealing the filings, however, the Court unconditionally ordered that "[t]hese documents *shall remain under seal until further Order of the Court*"—full stop. (Docs 159, 168, 180, 186, 207, 214, 229, 260 (emphasis added).) Many of these sealed filings are several thousands of pages long. Further, many of the documents sealed "for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents" were also later sealed, unconditionally, "until further Order of the Court." To the extent there is a conflict in such language (and there should not be), the Court's later orders necessarily control. Any ambiguity in the earlier orders about the duration of the seal is clarified by the later orders that plainly require further action by the Court for the seals to be lifted.

As just a single example, Doc 140 and exhibits (which total almost 3,000 pages) were filed under seal subject to the original language, while Doc 210 and exhibits (which total almost 1,900 pages) and Doc 215 and exhibits (which total almost 3,300 pages) were filed under seal subject to the "until further Order of the Court" language. (*Compare* Doc 135, Doc 139 *with* Doc 186, Doc 207) At least *ten* of the exhibits to Doc 140 were also exhibits to Docs 210 or 215.[5] (See below chart in Part IV for many additional examples.)

Despite the fact that the Confidentiality Order clearly states that it remains in force until agreement of the parties or further Order of the Court, and despite the fact that the vast majority of the sealed documents submitted in this litigation remain sealed "until further Order of the Court," the Prospective Intervenors insist that *all* of the tens of thousands of pages of sealed documents in this matter should be unsealed immediately pursuant to Local Rule 1.09(c),

---

[5] These were exhibits to separate filings, and the Court ultimately determined that the later filings should be sealed *until further Order of the Court*. The Prospective Intervenors can offer no justification for why the same exact document subject to a later, more restrictive Order, should be subject to an Order that was later superseded (for purposes of that particular document).

7422933.5

without any opportunity for the interested parties in this matter to weigh in and without even attempting to show that the reasons for originally sealing the documents no longer apply. The Prospective Intervenors are wrong on this point for at least two reasons. First, Local Rule 1.09(c) does not even apply, because the Orders sealing documents in this matter have not expired. Second, Local Rule 1.09(c) (which the Prospective Intervenors cite but, tellingly, do not quote) expressly states that a seal can be extended if "ordered by the Court for good cause shown," the necessary implication of which is that the Court retains its plenary authority to maintain documents under seal, *even if* a seal is initially limited in duration. Thus, even if Local Rule 1.09(c) applied in this matter (and it does not) the plain language of the Rule itself demonstrates that the Court is still empowered to keep the documents under seal and that its authority to do so has not been "forfeited" as the Prospective Intervenors dubiously insist.

**II.   The Prospective Intervenors, Not Defendants, Bear The Burden Of Proving The Documents Should Be Unsealed.**

The Prospective Intervenors cite multiple cases in their motion that stand for the unremarkable point that a party seeking relief from a Court (i.e., to seal documents) bears the burden of proving the party's entitlement to such relief.[6] But the Prospective Intervenors miss a crucial point: *Defendants have already met that burden.* This Court already found, in the exercise of its plenary discretion over the management of its docket, that the materials should be retained in the Court's file under seal.

---

[6] *E.g., Sullivan v. Gov't Employees Ins. Co.*, No. 6:17-cv-891-Orl-40KRS, 2018 WL 5717430, at *1-*2 (M.D. Fla. Nov. 1, 2018) (holding that party seeking protection bears burden when seeking to seal documents, *not* when a party seeks to lift an existing seal); *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, No. 3:10-cv-978-J-37JBT, 2011 WL 5357843, at *3-*4 (M.D. Fla. Nov. 1, 2011) (party *seeking to seal* must show good cause to seal documents and finding such good cause did exist; case did not involve unsealing already sealed documents).

7422933.5

As such, it is the *unsealing* of the documents at issue that would alter the status quo and, consequently, *it is the Prospective Intervenors' burden* to demonstrate their entitlement to that relief. *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) ("While this court has recognized that the common law right of access creates a "strong presumption" in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal."). Further, "When a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This Court has already determined that the sealed documents should be sealed pursuant to the Confidentiality Order. The Prospective Intervenors therefore have the burden of showing that they should *not* remain under seal.

A case cited by the Prospective Intervenors is instructive on this point. There, the Eleventh Circuit opined that it would be an abuse of discretion and reversible error if the trial court required a party whose documents were already sealed to demonstrate the propriety of the seal every time the seal was challenged:

> The proper standard for district courts to apply in these circumstances *is whether there was good cause to unseal the document*. A party who has already shown good cause for sealing a document in the first instance should not bear the burden of showing good cause once again if the same opposing party seeks modification of the original protective order. Although Fed. R. Civ. P. 26(c) does not address which party bears the burden in these circumstances, *courts regularly impose the burden on the party seeking modification*. *See Factory Mut. Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, 303 (M.D.N.C.2002) ("If good cause were not required to be shown when the order was initially entered, the party who later seeks to prevent disclosure ... bears the burden of showing good cause. If good cause were shown initially, however, the party seeking to modify the order must show good cause." (citation omitted)); *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 463–64 (S.D.N.Y.1995); *Jochims v. Isuzu Motors, Ltd.*, 145

7422933.5

> F.R.D. 499, 501 (S.D. Iowa 1992). Plainly, the FTC bore the burden of demonstrating good cause for unsealing the document.

*FTC v. AbbVie Prods, LLC*, 713 F.3d 54, 66 (11th Cir. 2013) (emphasis added).

In each of the sealing Orders entered by this Court, the Court cited Local Rule 1.09(a) and stated:

> Here, the parties provided a description of the documents, the reason that the documents are necessary, the reason that sealing the documents is necessary, a statement of the proposed duration of the seal, and citation to authority. Thus, the Court will allow the documents to be filed under seal.

(*E.g.*, Doc 168, at 2.) The Court has *already* found good cause for each of the documents to be filed under seal. It is therefore the Prospective Intervenors' burden to show that the documents should be unsealed.

Defendants understand this puts the Prospective Intervenors in the curious position of proving documents should be unsealed without, due to the seal, being able to determine the content of the documents. Nevertheless, the Prospective Intervenors have pending litigation against Defendants and will be entitled, subject to the limitations of Federal Rule of Civil Procedure 26, to seek production of the documents if and when discovery begins. Moreover, litigants often have to challenge privilege determinations without the opportunity to review the privileged information *ex ante*. The remedy for that practical problem is for the party claiming privilege to produce a log that "describe[s] the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, . . . enable[s] other parties to assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). Defendants would be willing to discuss with the Prospective Intervenors a similarly equitable solution in this instance, which would both protect Defendants' interest in the confidentiality of the sealed documents and provide Prospective Intervenors with a fair chance to meet their burden. But the Prospective Intervenors have never even attempted to discuss ways to resolve this issue in a manner consistent with

7422933.5

respecting the Court's prior sealing orders; instead they have insisted: (1) that Defendants either produce all the sealed documents despite the fact that discovery has not begun in the PSLRA litigation, or (2) that this Court disregard its prior orders and lift the seal on every single document in this case without even considering the content of the documents or the potential harm to Defendants. As such, they have plainly failed to meet their burden. For these reasons alone their motion is due to be denied.

### III. Even If Re-Examining The Sealing Orders Were Appropriate, A Document-By-Document Inquiry Would Be Necessary, Not A Blanket Lift Of The Seal.

Even if a reexamination of the sealed documents was appropriate at this time—and it is not since the Prospective Intervenors have failed to even attempt to meet their burden—the Court and the parties would need to assess the propriety of the seal on a document-by-document basis. A blanket lifting of the seal without due consideration of the contents of the documents, and the attendant harm to Defendants by their disclosure, is inappropriate. The Prospective Intervenors cite cases confirming as much.

For example, in *Marshall v. Planz, Inc.*, 347 F. Supp. 2d 1198, 1206-1208 (M.D. Ala. 2004), the parties conducted four years of litigation in open court, with some files being sealed but others not. At the close of the litigation in July 2001, the court, upon request of the parties, sealed the *entire record*—which had, again, been open to the public for four years. *Id.* at 1207. An intervenor sought to unseal the entire record in light of new litigation against the defendant in the original lawsuit. *Id.* at 1206. The court ultimately vacated its order sealing the entire record, but then held:

> [T]he July 2001 sealing order should be vacated. However, any document sealed prior to July 30, 2001, shall retain its privileged status, subject to the authority of the magistrate judge assigned to this case to unseal that document. Whether a document sealed pursuant to a protective order should be unsealed *should be determined on a document-by-document basis*.

7422933.5

*Id.* at 1208 (emphasis added).   The Eleventh Circuit has confirmed that when unsealing documents, an examination of the documents themselves is necessary. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1314-15 (11th Cir. 2001) (*reversing* the trial court's order unsealing alleged trade secret documents, stating, "Because findings of fact made by a district court need to be sufficiently detailed to permit meaningful appellate review, the district court should revisit the trade secret issue in the context of the good cause determination, *examining the sealed documents* in conjunction with its review of Firestone's response, the affidavit, and the privilege log." (emphasis added)).

Notwithstanding this clear and binding authority, Prospective Intervenors invite this Court to unseal the record in this case *in toto* and, in the process, to commit reversible error. As such, the Prospective Intervenors' motion is due to be denied.

## IV.   Good Cause Exists To Seal Confidential Information That Could Be Harmful To Defendants.

Even if Defendants were required to prove (again) to this Court that confidential information in this litigation should remain sealed—and they are not—good cause exists to continue sealing a large portion of the previously sealed documents in this case. Although it may be true that the law presumes public access to documents maintain in the Court's file, "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Comms., Inc.*, 98 S. Ct. 1306, 1312 (1978) (refusing to unseal tapes for which publicly available transcripts existed and acknowledging it would be appropriate to seal "sources of business information that might harm a litigant's competitive standing").

This Court has confirmed files that, if made public, could be harmful to a litigant's competitive standing, should be placed under seal. *E.g., Narcoossee Acquisitions, LLC v. Kohl's Dept. Stores, Inc.*, No. 6:14-cv-203-Orl-41TBS, 2014 WL 4279073, at *3 (M.D. Fla. Aug. 28,

7422933.5

2014) (in motion for relief under Fed. R. Civ. P. 45, court found that rent prices, construction and operational details, insurance requirements, and lease information is confidential); *ATLC, Ltd. V. Eastman Kodak Co.*, No. 6:06-cv-416-Orl-28GRJ, 2007 WL 9677272, at *4 (M.D. Fla. June 6, 2007) (sealing amounts of royalties due under agreements, business terms of agreements, and non-public information regarding defendant's business plans and strategies); *DYC Fishing, Ltd. v. Beaver Street Fisheries, Inc.*, No. 3:05-cv-481-J-25TEM, 2007 WL 1655389, at *2-*3 (M.D. Fla. June 6, 2007) (refusing to make available to the public "company business records" that are "clearly non-public and proprietary in nature" and that "would normally not be available for public inspection").

Defendants have produced, and the parties have filed under seal, at minimum *hundreds* of such documents in this litigation, constituting *thousands* of pages. For example, the parties have filed many non-public leases with tenants at particular malls that contain confidential information regarding both the lease terms and pricing for tenants. Although some of the terms are similar, many terms vary (for instance, terms dealing with co-tenancy, occupancy, options for early termination, sales revenue figures and many others). Moreover, the pricing is not consistent across tenants, even in similar square footage and similar malls. Commercial brokers, tenants and prospective tenants could use this information to extract more favorable terms and pricing from Defendants, which would be harmful to Defendants' business. Some of these tenants are large, sophisticated chains with hundreds of stores and entire leasing and legal departments. Likewise, there are a number of very sophisticated commercial real estate brokers who have specialties in retail property who would be eager to gain this information. Moreover, competitors could use this information to undercut Defendants' pricing. There are a number of competitors in retail leasing who are far larger than CBL and who have large leasing, research

7422933.5

and legal departments.  Although some of these leases are from several years ago, Defendants' leases are often for ten years or more, and are renewable.  That a lease was executed years ago does not mean that the terms of the lease are no longer in force or are no longer pertinent to Defendants' ability to compete in the market today.  Historical leasing information is still useful to competitors and tenants or potential tenants, as they can use such information to determine what terms Defendants have agreed to before.  These leases are littered throughout the filings, and although this is almost certainly not an exhaustive list,[7] below are just some examples of these documents found in the sealed filings:

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers[8] |
|---|---|---|---|---|
| 164 | | Plaintiff's Motion for Class Certification | "For the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents." (Doc. 149) | |
| | 7 | Hanes Mall / Lee Nails of Florida, Inc. - Lease | | Doc. 181*, Ex. 42 |
| | 8 | Retail Lease between JG Gulf Coast Center LLC and Bass Pro Outdoor World | | Doc. 181*, Ex 13 |
| | 9 | Gulf Coast Town Center - Fort Myers / Fire Pit Pizza and BBQ Inc. -Shopping Center Lease | | Doc. 181*, Ex. 26 |
| | 10 | Hanes Mall / BusinessFirst, Inc. - Shopping Center Lease | | Doc. 181*, Ex. 17 |
| | 11 | Hanes Mall / Global Cellular Inc.- Kiosk Shopping Center Lease | | Doc. 181*, Ex. 19 |
| | 12 | Jefferson Mall The Finish Line, Inc.-Shopping Center Lease | | Doc. 181*, Ex. 32 |
| | 13 | Cross Creek Mall Wachovia Bank-Shopping Center Lease | | Doc. 181*, Ex. 21 |
| | 14 | Gulf Coast Town Center / Purdy-Fresh Plate Café-Shopping Center Lease | | Doc. 181*, Ex. 25 |
| | 15 | Imperial Valley  Mall / Victoria's Secret Stores LLC Lease | | Doc. 181*, Ex 28 |
| | 16 | Georgia Square Partnership / Too, Inc. Lease | | Doc. 181*, Ex. 30 |
| | 17 | Cary Towne Center / The Gap, Inc.-Shopping Center Lease | | Doc. 181*, Ex. 36 |

---

[7] Again, these filings constitute tens of thousands of pages that were filed as hard copies, and many of the exhibits have exhibits.  Even creating a useable index is a difficult undertaking.

[8] An asterisk by the docket number in the "Repeat Filing" column indicates that the later document was sealed "until further order of the Court."

11

7422933.5

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
|  | 18 | Cary Towne Center / Jo-Ann Stores, Inc. Lease Agreement |  | Doc. 181*, Ex. 40 |
|  | 19 | Gulf Coast Town Center Shopping Center Lease - PF Chang's |  |  |
|  | 20 | Cherry vale Mall / Barnes & Noble Lease Agreement |  | Doc. 181*, Ex. 38 Doc. 212*, Ex. 8 |
|  | 21 | The Mall of Acadiana / Foot Locker Retails, Inc. - Shopping Center Lease |  | Doc. 181*, Ex. 34 |
|  | 22 | Coastal Grand / Charlotte Russe, Inc. - Shopping Center Lease |  |  |
|  | 23 | Lakeshore Mall / Hibbett Sporting Goods, Inc. - Shopping Center Lease |  |  |
|  | 24 | Fayette Mall / Deb Shops, Inc. - Shopping Center Lease |  |  |
|  | 28 | Lakeshore Mall / VGEM, Inc Kiosk Shopping Center Lease |  |  |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 181 |  | Plaintiff's Reply in Support of Class Certification | "until further order of the Court." (Doc. 159) |  |
|  | 23 | Gulf Coast Town Center / PF Change's China Bistro, Inc. - Shopping Center Lease |  |  |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 201 |  | Defendants' Motion to Exclude Opinion of Barry Mukamal | "until further order of the Court." (Doc. 186) |  |
|  | 14 | The Mall of Acadiana / Rec21, Inc. - Shopping Center Lease |  | Doc. 215, Ex. 40 |
|  | 15 | Acadiana Mall Lease Agreement with The Talbots, Inc. |  | Doc. 215, Ex. 41 |
|  | 23 | Gulf Coast Town Center Lease / Justice Stores, LLC - Lease |  |  |

Moreover, Defendants have produced, and the parties have filed under seal, emails, letters, draft agreements, and certain other communications relating to Defendants' negotiations of leases at its malls. For the same reasons articulated above, this non-public information could be harmful to Defendants' competitive situation. Although this is not an exhaustive list, below are examples of these documents found in the sealed filings:

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
| 140 |  | Plaintiff's Motion for Class Certification | "for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents" (Doc 122) |  |

7422933.5

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
|  | 16 | Email attaching Typical Utilities Lease |  |  |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 164 |  | Defendants' Consolidated Response in Opposition to Plaintiff's Motion for Class Certification | "for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents. (Doc. 149) |  |
|  | 31 | Email regarding Torrid, Post Oak Mall Store No. 5628 - Proposed lease and proposed terms regarding the same |  |  |
|  | 35 | 2017.02.01 Email regarding Grand Tavern at Laurel Park Place - floor lease and proposed terms regarding the same |  |  |
|  | 36 | 2015.05.28 Email regarding Wausau Center 100-469 / Aeropostale including lease terms and rate |  |  |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 181 |  | Plaintiff's Reply in Support of its Motion for Class Certification and Incorporated Memorandum of Law | "until further order of the Court." (Doc. 159) |  |
|  | 12 | Spreadsheet Analyzing Tenant Leases with Individualized Lease Language—contains summarized individualized leasing language for multiple tenants at multiple malls |  |  |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 209 |  | Defendants' Sur-Reply in Further Opposition to Plaintiff's Motion for Class Certification | "until further order of the Court." (Doc. 207) |  |
|  | C1 | College Square - Allocation Summary—contains costs and revenues as well as rent revenues across College Square Mall |  | Doc. 220, Ex. 6 |
|  | D3 | Email regarding Gap/CBL - Gap #2109 / Monroeville Mall 100-651 / Account Reconciliation—contains detailed information regarding rent rates and revenues at a particular Gap store in Monroeville Mall |  |  |

Further, Defendants have produced, and the parties have filed under seal, many documents showing categories of revenues Defendants collected across malls and across tenants at malls over various periods. Several of these documents actually show the rent rate for the tenants as well. For those that do not, total revenue across all malls is publicly available information through Defendants' 10-K filings. Competitors and tenants/prospective tenants could attempt to use this publicly available information, as well as the non-public categorical revenue information, to "reverse engineer" tenants' rates and therefore gain a competitive advantage over Defendants. Although this is not an exhaustive list, below are examples of these documents found in the sealed filings:

13

7422933.5

| Doc # | Doc. Exhibit | Ex. Description | Sealing Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
| 140 | | Plaintiff's Motion for Class Certification | "for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents (Doc. 122) | |
| | 27 | Declaration of Barry Mukamal 2018.06.28—contains detailed information regarding Defendants' costs and revenues | | |
| | 30 | Hamilton Place Allocation Summary—contains detailed information regarding costs and revenues | | Doc. 181*, Ex. 54 Doc. 194*, Ex. 23 Doc. 195*, Ex. 24 Doc. 215*, Ex. 5 Doc. 230*, Ex. 7 |
| | 31 | Parkway Place Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | Doc. 181*, Ex. 55 Doc. 194*, Ex. 24 Doc. 195*, Ex. 25 Doc. 215*, Ex. 6 |
| | 32 | Westgate Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | Doc. 181*, Ex. 56 Doc. 194*, Ex. 25 Doc. 195*, Ex. 26 Doc 215*, Ex. 7 |
| | 47 | Salon Adrian Estimated Environmental Charge Calculations—contains detailed information regarding costs and revenues at particular tenant | | Doc 194*, Ex. 16 |

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
| 164 | | Defendants' Consolidated Response in Opposition to Plaintiff's Motion for Class Certification | "for the duration of this action and any appeal thereto, or until an Order is entered unsealing these documents." (Doc. 149) | |
| | 33 | Declaration of Christopher Knittel, Ph.D.—contains detailed information regarding Defendants' business practices, costs, and revenues | | |
| | 37 | Turtle Creek Mall Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | 38 | Turtle Creek Mall Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
| 181 | | Plaintiff's Reply in Support of its Motion for Class Certification | "until further order of the Court." (Doc. 159) | |
| | 5 | Coastal Grand Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | Doc. 194, Ex. 21 Doc. 195, Ex. 23 Doc. 211, Ex. 3 Doc. 215, Ex. 4 Doc. 281, Ex. 3 Doc. 230, Ex. 6 |
| | 6 | Email from Phil Catagnus to Don Sewell regarding costs and revenues at particular mall in the Jacobs Portfolio of malls purchased from another entity | | |
| | 7 | Spreadsheet regarding costs and revenues at particular mall in the Jacobs Portfolio of malls purchased from another entity | | Doc. 195, Ex. 28 Doc. 215, Ex. 9 Doc. 230, Ex. 13 |
| | 14 | Gulf Coast Town Center Tenant Database Summary—contains | | |

7422933.5

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
| | | detailed information regarding costs and revenues at particular mall | | |
| | 15 | Gulf Coast Town Center - Tenant Database Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | 16 | Gulf Coast Town Center - Tenant Database Summary Report—contains detailed information regarding costs and revenues at particular mall | | |
| | 20 | Tenant Database Summary Report for Hanes Mall—contains detailed information regarding costs and revenues at particular mall | | |
| | 22 | Cross Creek Mall - Tenant Database Summary Report—contains detailed information regarding costs and revenues at particular mall | | |
| | 27 | Gulf Coast Initial Environmental Charge Calculation for Firepit Oven & Grill—contains detailed information regarding costs and revenues at particular tenant | | |
| | 29 | Imperial Valley Mall Initial Environmental Charge Calculation for Victoria's Secret—contains detailed information regarding costs and revenues at particular tenant | | |
| | 31 | Georgia Square Initial Environmental Charge Calculation - Limited Too—contains detailed information regarding costs and revenues at particular tenant | | |
| | 33 | Jefferson Mall Initial Environmental Charge Calculation for Finish Line—contains detailed information regarding costs and revenues at particular tenant | | |
| | 35 | Mall of Acadiana Field Verified Environmental Charge Calculation for Foot Locker—contains detailed information regarding costs and revenues at particular tenant | | |
| | 37 | Cary Towne Center Initial Environmental Charge Calculation for Gap—contains detailed information regarding costs and revenues at particular tenant | | |
| | 39 | Mall at Cherryvale Initial Environmental Charge Calculation for Barnes & Noble—contains detailed information regarding costs and revenues at particular tenant | | |
| | 41 | Frontier Mall Initial Environmental Charge Calculation for Jo-Ann—contains detailed information regarding costs and revenues at particular tenant | | |
| | 44 | Hanes Mall Initial Environmental Charge Calculation for Lee Nails—contains detailed information regarding costs and revenues at particular tenant | | |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 194 | | Plaintiff's Motion for Summary Judgment | "until further order of the Court." (Doc. 180) | |
| | 26 | Gulf Coast Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | Doc. 195, Ex. 22 Doc. 218, Ex. 8, Doc 230, Ex. 1 |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 197 | | Plaintiff's Motion to Exclude Expert Opinions of Paul Habibi | "until further order of the Court." (Doc. 180) | |
| | 3 | Expert Report of Barry Mukamal—contains detailed information relating to Defendants' confidential costs and revenues | | Doc 201, Ex. 10, Doc 211 Ex. 10, Doc 215 Ex. 19 |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 209 | | Defendants' Sur-Reply in Further Opposition to Plaintiff's Motion for Class Certification | "until further order of the Court." (Doc. 207) | |
| | B | Gulf Coast Tenant Database Utility Update—contains detailed information regarding costs and revenues at particular mall | | |
| | C2 | Asheville Exp. Mall Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C3 | Asheville Exp. Mall Allocation Summary—contains detailed | | |

15

7422933.5

| | | information regarding costs and revenues at particular mall | | |
|---|---|---|---|---|
| | C4 | Asheville Exp. Mall Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C5 | Ashville Expansion Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C6 | Ashville Expansion Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C7 | Arbor Place Allocation Summary——contains detailed information regarding costs and revenues at particular mall | | |
| | C8 | Alamance Crossing Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C9 | Mall of Acadiana Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C10 | Mall of Acadiana Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C11 | Mall of Acadiana Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C12 | Alamance Crossing Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C13 | Burnsville Center Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C14 | Burnsville Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C15 | Burnsville Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C16 | Cross Creek Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C17 | Cross Creek Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C18 | Cross Creek Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C19 | Georgia Square Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C20 | Georgia Square Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C21 | Gulf Coast Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C22 | Imperial Valley Allocations—contains detailed information regarding costs and revenues at particular mall | | |
| | C23 | Lakes Mall Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C24 | Madison Square Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C25 | Madison Square Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C26 | Madison Square Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C27 | ParkPlaza Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C28 | ParkPlaza Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C29 | ParkPlaza Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| | C30 | ParkPlaza Allocation Summary—contains detailed information regarding costs and revenues at particular mall | | |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 211 | | Plaintiff's Objection to the Order Granting Defendant's Sur-Reply | "until further order of the Court." (Doc. 207) | |
| | 2 | Utility Distribution Summary—Contains detailed information regarding costs and expenses at the CBL portfolio of malls | | Doc. 218, Ex. 10 Doc. 230, Ex. 15 |
| | 4 | 2016.01.04 Email to Don Sewell dated 1/4/16 regarding Monthly Allocation Summary—contains detailed information regarding costs and revenues at Gulf Coast Town Center | | Doc. 230, Ex. 13 |

16

7422933.5

| Doc # | Doc. Exhibit | Ex. Description | Seal Order | Repeat Filing Docket Numbers |
|---|---|---|---|---|
|  | 5 | Hamilton Place Allocation Summary Summary—contains detailed information regarding costs and revenues at particular mall |  | Doc. 218, Ex. 5 |
|  | 6 | Parkway Place Allocation Summary Summary—contains detailed information regarding costs and revenues at particular mall |  | Doc. 218, Ex. 6 Doc. 230, Ex. 8 |
|  | 7 | Westgate Allocation Summary Summary—contains detailed information regarding costs and revenues at particular mall |  | Doc. 218, Ex. 7 Doc. 230, Ex. 9 |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 215 |  | Plaintiff's Response in Opposition to Defendants' Motion to Exclude the Opinion of Barry Mukamal | "until further order of the Court." (Doc. 207) |  |
|  | 26 | Burnsville Tenant Database Summary Report—contains detailed information regarding costs and revenues at particular mall |  |  |
|  | 28 | Post Oak Mall Initial Environmental Charge Calculation - Aerie—contains detailed information regarding costs and revenues at particular tenant |  |  |
|  | 30 | Parkway Place Mall - Estimated Environmental Charge Calculation - Henig Furs—contains detailed information regarding costs and revenues at particular tenant |  |  |
|  | 42 | Gulf Coast Tenant Database Utility Update - Moe's Southwest Grill—contains detailed information regarding costs and revenues at particular tenant |  | Doc. 230, Ex. 18 |
| **Doc #** | **Doc. Exhibit** | **Ex. Description** | **Seal Order** | **Repeat Filing Docket Numbers** |
| 230 |  | Plaintiff's Sur-Sur-Reply in Support of its Motion for Class Certification | "until further order of the Court." (Doc. 229) |  |
|  | 17 | Tenant Database Utility Update—GameStop—contains detailed information regarding costs and revenues at particular tenant |  |  |
|  | 19 | Tenant Database Utility Update-Pita Pit—contains detailed information regarding costs and revenues at particular tenant |  |  |
|  | 20 | Tenant Database Utility Update-Sports Clips—contains detailed information regarding costs and revenues at particular tenant |  |  |
|  | 22 | Gulf Coast Estimated Environmental Charge Calculations -Salon Adrian—contains detailed information regarding costs and revenues at particular tenant |  |  |

All of these documents (and other confidential information) are littered throughout the sealed filings, deposition exhibits, and expert reports. Moreover, they are referenced in depositions and expert reports and incorporated by reference in figures to the expert reports. Further, in providing these charts Defendants are not conceding that there are not many other documents or categories of documents that should remain under seal. The charts are merely provided to demonstrate that there are clearly, at minimum, hundreds of documents that should remain under seal because they contain confidential business information belonging to

7422933.5

Defendants.  A document-by-document review of the filings is necessary to determine what (if anything) should be unsealed.  A blanket lifting of the seal is inappropriate.

Finally, the vast majority, if not *all* of the documents filed under seal in this matter constitute nonpublic, business information regarding Defendants' generation of revenue through charges to its tenants.  For instance, some of the documents show costs, charges, and expenses for particular malls broken down into detail (some showing years of such data).  Used out of context by its competitors, this information could be harmful to Defendants in terms of attracting and keeping tenants.  This would serve to harm not only Defendants, but the very shareholders who are plaintiffs in the pending PSLRA action.  As such, the entire file should remain sealed. *DYC Fishing, Ltd.*, 2007 WL 1655389, at *2-*3 (refusing to make available to the public "company business records" that are "clearly non-public and proprietary in nature" and that "would normally not be available for public inspection" where party sought such records in connection with litigation against defendant).

**V.      The Prospective Intervenors' Attempt To Use This Court's File To Escape the PSLRA's Mandatory Discovery Stay Is Improper.**

Finally, it is clear the Prospective Intervenors are attempting to unseal the entire file (rather than follow the appropriate document-by-document inquiry wherein they bear the burden of unsealing) because they believe they need this information to satisfy the heightened pleading standards under the PSLRA in the *CBL Securities Litigation*.  They say as much in their motion.  But that is not a valid reason to defeat the mandatory stay of discovery under the PSLRA, which prevents a plaintiff from obtaining any discovery unless and until that plaintiff overcomes a motion to dismiss. *See* Section 21D(b)(3)(B) of the PSLRA, 15 U.S.C. 78u-4(b)(3)(B).  Indeed, the very purpose of the PSLRA's mandatory discovery stay is to operate in tandem with its heightened pleading requirements to weed out non-meritorious suits at the earliest possible stage,

18

7422933.5

thereby preventing plaintiffs with otherwise meritless claims from conducting discovery fishing expeditions in an attempt to leverage those expeditions into settlements. *See Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 549, 601 (7th Cir. 2019) ("The purpose of the [PSLRA's automatic stay on discovery] is to . . . prevent[] a plaintiff from bringing an action *without first* possessing the information necessary to satisfy the heightened pleading requirements of the PSLRA and using discovery to obtain that information and resuscitate a complaint that would otherwise be dismissed." (emphasis added)).

Indeed, heightened pleading standards are intended precisely to avoid a situation wherein a plaintiff, without adequate knowledge of an alleged wrong, uses the discovery process to otherwise bolster a baseless claim or extract an unreasonable settlement. *E.g., U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n. 24 (11th Cir. 2002) ("[Plaintiff's] failure to plead all the elements of his claim with specificity violates an equally strong purpose of Rule 9(b)—protecting defendants from frivolous suits, or spurious charges of immoral and fraudulent behavior. When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." (internal citations and quotations omitted)); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) ("The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." (internal citations and quotations omitted)). Avoiding the PSLRA discovery stay in an attempt to meet the heightened pleading requirements of the PSLRA is not a proper purpose for unsealing

7422933.5

documents, and the Prospective Intervenors have not—and cannot—cite any binding authority to the contrary.

## CONCLUSION

For the reasons stated above, the Court should deny the Prospective Intervenors' request outright. Moreover, because the Prospective Intervenors fail to show they have any right to these documents, their request to Intervene should be denied. At a minimum, Defendants respectfully request that the Court institute a process wherein either: (1) the Court itself institutes a document-by-document review of the sealed documents; or (2) the Court directs the parties to work together on a reasonable timeframe to identify what the Prospective Intervenors seek to be unsealed, and if the parties disagree, the Prospective Intervenors will be entitled to file a new motion attempting to meet their burden on a document-by-document basis.

DATED:          October 11, 2019

Respectfully submitted, by:

By: */s/ Gregory Carl Cook*

Gregory Carl Cook (admitted *pro hac vice*)
Ed R. Haden (admitted *pro hac vice*)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel.: (205) 251-8100
Facsimile: (205) 488-5648

Michael K. Alston (admitted *pro hac vice*)
Samantha A. Lunn (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Phone: 423.266.5500
Fax: 423.266.5499

20

7422933.5

Glennon P. Fogarty (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Phone: 314.480.1500
Fax: 314.480.1505

P. Brandon Perkins
Florida Bar: 568635
CAMPBELL CONROY & O'NEIL
150 S Pine Island Rd #300
Plantation, FL 33324
Phone: 954. 998. 1855
Fax: 617.241.5115
*Counsel for Defendants*

21

7422933.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of October, 2019, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF filing system, which will

send a notice of electronic filing to all counsel of record on the service list.

*/s/ Gregory Carl Cook*
Gregory Cook

7422933.5

## SERVICE LIST

Benjamin H. Yormak, Esq.
YORMAK EMPLOYMENT & DISABILITY LAW
99900 Coconut Road
Bonita Springs, FL 34135
Telephone: 239.985.9691
E-mail: byormak@yormaklaw.com

David M. Buckner, Esq.
Seth E. Miles, Esq.
Brett E. von Borke, Esq.
BUCKNER + MILES
3350 Mary Street
Coconut Grove, FL 33133
Telephone: 305.964.8003
E-mail: david@bucknermiles.com
E-mail: seth@bucknermiles.com
E-mail: vonborke@bucknermiles.com

Steve W. Berman, Esq.
Thomas E. Loeser, Esq.
Ivy Arai Tabbara, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206.623.7292
Facsimile: 206.623.0594
E-mail: steve@hbsslaw.com
E-mail: toml@hbsslaw.com
E-mail: ivy@hbsslaw.com

Jane A. Goldstein
**SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP**
jgoldstein@sfmslaw.com
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367

23

7422933.5

Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER &
TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119 Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftaw.com
mklein@aftlaw.com

Jeremy A. Lieberman
Michael J. Wernke
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

Peretz Bronstein
**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

24

7422933.5