EXHIBIT D

Case 1:19-cv-00181-JRG-CHS    Document 84-4    Filed 11/15/19    Page 1 of 10
PageID #: 1188

Case 1:19-cv-00181-JRG-CHS   Document 84-4   Filed 11/15/19   Page 2 of 10 PageID #: 1189

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

| | |
|---|---|
| WAVE LENGTHS HAIR SALONS OF FLORIDA, INC., d/b/a SALON ADRIAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CBL & ASSOCIATES PROPERTIES, INC., CBL & ASSOCIATES MANAGEMENT, INC., CBL & ASSOCIATES LIMITED PARTNERSHIP and JG GULF COAST TOWN CENTER LLC,<br><br>Defendants. | Case No. 2:16-cv-206-FtM-PAM-MRM |

**INTERVENORS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS**

## I. THE DOCUMENTS MUST BE UNSEALED PURSUANT TO COMMON LAW, THE TERMS OF THE SEALING ORDERS AND LOCAL RULE 1.09(c)

Defendants misstate the applicable standard for sealing the documents at issue. While a finding of "good cause" under Fed. R. Civ. P. 26(c) is sufficient for a court to enter a protective order prohibiting disclosure of documents exchanged during discovery, the public has a "common law right of access" to documents filed with the courts and courts have a duty to balance the public's right against a party's interest in confidentiality. *See Romero v. Drummond, Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). "[A]bsent some exceptional circumstances, trials are public proceedings," *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1015 (11th Cir. 1992) (emphasis supplied), and "in class actions...the standards for denying public access to the record 'should be applied ... with particular strictness.'" *Reed v. CRST Van Expedited, Inc.*, 2018 WL 5077179, at *1 (M.D. Fla. Apr. 17, 2018) (emphasis supplied) (citation omitted). Specifically, documents submitted to a court in connection with a summary-judgment motion are "entitled to a strong presumption of access ... [and] only the most compelling reasons can justify sealing." *In re Blue Cross Blue Shield Antitrust Litig.*, 2016 WL 7026339, at *3 (N.D. Ala. Oct. 18, 2016) (emphasis supplied) (citation omitted). Any assessment on whether a document should be filed under seal must be made on a document-by-document basis, *Chicago Tribune*, 263 F.3d at 1307, and must be supported by an affidavit from a witness with "personal knowledge of the specific harm that would result from disclosure or loss of confidentiality." *Superior Consulting Servs. v. Shaklee Corp.*, 2017 WL 2895919, at *3 (M.D. Fla. June 12, 2017).

Despite this action concerning allegations of widespread fraud against its small retail tenants for which Defendants agreed to pay 100% of the alleged damages, its adjudication has remained largely shrouded in secrecy as a result of generic statements to the Court that the

1

documents had been designated "Confidential" during discovery. The parties did not conduct a document-by-document analysis, did not submit an affidavit of a witness with personal knowledge, and never addressed the common law right of access. Indeed, the term "good cause" or its equivalent do not appear in Defendants' sealing motions or the Court's related orders. Rather, the Court merely found that the motions met the standard under L.R. 1.09(a), which does not require "good cause," much less "compelling reasons" to overcome the "strong presumption of access" that are applied with "particular strictness." *See Bingham v. Baycare Health Sys.*, 2016 U.S. Dist. LEXIS 145406, at *2 (M.D. Fla. Oct. 20, 2016) (distinguishing between L.R. 1.09 and the common law right of access).[1] Tellingly, the parties did not request that the documents be sealed permanently, but only "until the end of the litigation." Rule 1.09(c) is unequivocal that any request to extend the seal must be made "before the expiration of the seal." The end has passed without a timely motion to extend the seal. The seals must be lifted.

Defendants assert that because later sealing orders state that certain duplicates of documents should be sealed "until further order of the Court" those orders somehow implicitly amended prior orders. They cite no authority for this facially meritless argument. Moreover, the parties' motions identify Defendants' intent, which was that the documents would be unsealed at the end of the litigation. Defendants are estopped from now arguing differently. Moreover, Rule 1.09(c) prohibits the sealing of any documents for more than one year absent an order by the Court "for good cause shown." Defendants never attempted to demonstrate, and the Court never found, "good cause" for ignoring the one-year limit imposed by the Rule.[2]

---

[1] All citations to LEXIS herein are a result of the unavailability of parallel Westlaw citations.

[2] The fact that the Confidentiality Order states that the "Confidential" designations of documents produced in discovery shall remain until further order of the Court is irrelevant to the analysis at bar. *See Chicago Tribune*, 263 F.3d at 1307 (explaining that "umbrella" protective orders replace the need to litigate the claim to protection

2

## II. DEFENDANTS HAVE FAILED TO CARRY THEIR HEAVY BURDEN OF DEMONSTRATING THAT EACH DOCUMENT MUST REMAIN SEALED

Defendants assert that their burden to prove that sealing is necessary has shifted to Intervenors to prove that unsealing is necessary because, they claim, "Defendants have already met that burden." Defendants are wrong in law and fact.

The Eleventh Circuit has unambiguously stated that the burden of proof shifts only where (i) the party has "already shown good cause for sealing a document in the first instance"; and (ii) "if the same opposing party seeks modification of the original protective order." *FTC v. Abbvie Prods.* LLC, 713 F.3d 54, 66 (11th Cir. 2013) (emphasis supplied). As discussed above, Defendants never attempted to meet the heightened good cause standard on a document-by-document basis. Even if such an analysis had been done, Intervenors are not "the same opposing party seek[ing] modification of the original protective order." Indeed, no party ever opposed the original sealing motions. It remains Defendants' burden to make "particularized showing of the need for continued secrecy." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) (vacating order where "the district court permitted all of the documents filed to remain under seal without conducting a document-by-document review of their contents").[3]

Now faced with a challenge to the sealing, Defendants claim that documents containing any "lease terms and pricing" or related negotiations should be sealed because "[c]ommercial brokers, tenants and prospective tenants could use this information to extract more favorable terms and pricing from Defendants" (Def. Br. at 10 and 12), and that documents showing

---

document by document, and postpones the necessary showing of "good cause" required for entry of a protective order until the confidential designation is challenged).

[3] *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984) (burden on party seeking continued secrecy because the intervenors could not have ratified the blanket protective order); *cf. Suell v. United States*, 32 F. Supp. 3d 1190, 1192 (S.D. Ala. 2014) (the burden of proof is with the party seeking to maintain secrecy: "This is especially so when the protective order was agreed, since in such a case there has been no prior judicial determination of good cause.").

3

"revenues Defendants collected across malls" should be sealed because competitors might "'reverse engineer' tenants' rates and therefore gain a competitive advantage." Def. Br. at 13.

Procedurally, Defendants' have failed to meet their burden because even now they only generally address "examples" of documents (without submitting them) and fail to apply "[t]he governing standard ... to each document, and to each portion of each document, separately." *Suell*, 32 F. Supp. 3d at 1192 (citation omitted) (stating that defendants' "one-size-fits-all approach to every word on 547 pages of documents will not do."); *see also Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305-06 (6th Cir. 2016). Nor have Defendants made "a particularized showing of 'good cause' and specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality." *Superior Consulting*, 2017 WL 2895919, at *3. Defendants' "generalities, conclusory statements and unsupported contentions do not suffice." *Id.* Nor have Defendants explained why the purportedly confidential information cannot be redacted. *See Midamerica C2L Inc. v. Siemens Energy*, 2019 WL 2479638, at *2 (M.D. Fla. May 23, 2019) (denying request to seal where "Defendant has not explained why the transcript cannot be submitted in redacted form" per Local Rule 1.09(a)); *Theriot v. Northwestern Mut. Life Ins. Co.*, 382 F. Supp. 3d 1255, 1259 (M.D. Ala. 2019) (denying request to seal agreements containing pricing and expense information where the party did not explain "why redaction of particular information would not suffice").

Substantively, Defendants' assertions that disclosure may result in competitive harm are woefully insufficient. "[O]nly trade secrets, information covered by a recognized privilege..., and information required by statute to be maintained in confidence ... is typically enough to overcome the presumption of access." *Midamerica*, 2019 WL 2479638, at *1 (emphasis

4

supplied) (citations omitted); *Shane Grp*, 825 F.3d at 307 (same). "[C]ompetitively-sensitive financial and negotiating information" is not an adequate basis for sealing documents. *Shane Grp., Inc.*, 825 F.3d at 307. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) (assertion that disclosure of confidential licensing agreements could harm the party's "competitive position" insufficient).

Even if the information was potentially protectable, Defendants' assertions are far too vague to grant the extraordinary relief of concealing the information from the public. *Mattress Safe v. J.T. Eaton & Co.*, 2019 WL 2714498, at *14-15 (N.D. Ga. Jan. 15, 2019) (denying request to seal documents containing "confidential ... business contacts ... and percentages of revenue" the disclosure of which could result in "competitive harm."). Defendants have not demonstrated that they undertook any efforts to keep the terms of the leases confidential. Nor can they because the leases are with third parties, who typically are under no obligation to keep any terms confidential. Thus, a broker or potential tenant could determine the terms of the leases by asking the tenants or doing the normal legwork that professional brokers do in any market, especially since CBL identifies its tenants in its public filings. *See, e.g.*, 2018 Form 10-K at 27-34; *Lovett v. SJAC Fulton Ind I, LLC*, 2016 WL 11440078, at *24 (N.D. Ga. May 2, 2016) (denying request to seal documents because "none of them appear to bear any markings or legends in their natural state signifying to employees the need to keep these documents confidential in the ordinary course of business."); *Clark v. Macy's Credit & Customer Servs.*, 2017 WL 3877605, at *3 (M.D. Fla. Sept. 5, 2017) (motion to seal denied where the party failed to detail the steps taken to ensure the confidentiality of the information); *Faro Techs., Inc. v. Cimcore Corp., Inc.*, 2006 U.S. Dist. LEXIS 15774, at *10 (M.D. Fla. Apr. 4, 2006) (denying request to seal information that would "give [] competitors an unfair competitive advantage"

because "[i]t is doubtful that such concerns, even if certain to occur, could ever constitute the 'extraordinary circumstances and particularized need' required to justify an order to seal" and "[e]ven if such a crippling result were theoretically possible, there has been no showing that the information that the Defendants seek to seal is particularly difficult for their competitors to ferret out"); *Sullivan v. Gov't Emples. Ins. Co.*, 2018 WL 5717430, at \*2 (M.D. Fla. Nov. 1, 2018) (denying request to seal where declarations stated that the information was "highly proprietary," there were "procedures in place to protect the confidentiality" and that disclosure would "undermine [the defendant's] competitive advantage" but did not describe the specific procedures in place or the basis of the declarants' knowledge).

While there is a "natural desire of parties to shield prejudicial information contained in judicial records from competitors … a court should not seal records unless public access would reveal legitimate trade secrets." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983) (vacating district court's order sealing documents provided to third parties under a confidentiality agreement). This is especially true where, as here, the terms of the leases were part of the alleged fraud. *See Shane Grp.*, 825 F.3d at 308 ("financial and negotiating information" about an allegedly illegal practice "is not entitled to protection as a legitimate trade secret"); *United States v. Lee Mem'l Health Sys.*, 2018 U.S. Dist. LEXIS 177525, at \*31 (M.D. Fla. Oct. 16, 2018) (competitive disadvantage from disclosure of physician compensation did not outweigh the common law right of access where it was the focus of alleged fraud).[4]

As discussed during the summary judgment hearing, the transcript of which is publicly available, the electricity overpricing scheme dates back to 2005 when Valquest presented at a

---

[4] Defendants' bald assertion of competitive harm from disclosure is especially suspect given that CBL's SEC filings state that their malls are unique spaces in the markets they operate and "have strong competitive positions because they are the only, or the dominant, regional mall in their respective trade areas." 2018 Form 10-K at 26.

6

CBL Leadership Conference. Any competitively sensitive information concerning the rents CBL charged its tenants and the revenues collected going back to 2005 is certainly stale and has been known to professional brokers for a long time. *See Shane*, 825 F.3d at 309 ("[T]he particulars of years-ago negotiations are unlikely to amount to a trade secret.").[5] Suspiciously absent from Defendants' chart of sealed documents is the critical PowerPoint presentation outlining the fraud or the emails in which CBL employees stated "I don't like these exaggerated utility bills" and "it's not fair to the customer. Sounds like it's a profit center big time." These documents and any related testimony must be unsealed.

## III. THE PSLRA DISCOVERY STAY DOES NOT PROHIBIT SEEKING TO UNSEAL THE DOCUMENTS

It is well-settled that seeking to unseal documents pursuant to the common law right of access does not violate the PSLRA discovery stay. *See Gubricky on behalf of Chipotle Mexican Grill, Inc. v. Ells*, 2018 WL 1558264, at *4 (D. Colo. Mar. 26, 2018) (rejecting argument that seeking to unseal documents in collateral litigation was prohibited by the PSLRA's discovery stay); *Leucadia*, 998 F.2d at 167 (3d Cir. 1993) (same). Moreover, the PSLRA discovery stay applies only "during the pendency of any motion to dismiss." *See* 15 U.S.C. §78u-4(b)(3)(B). As the Court in Intervenor's securities class action recently held in response to CBL raising the same argument, "[s]imply, the record contains no pending motion to dismiss, and the PSLRA's plain language does not state that the Court must stay discovery in anticipation of a motion to dismiss. A stay of discovery, at this time, is therefore inappropriate." *In Re CBL & Assocs. Props., Inc. Sec. Litig.*, No. 1:19-cv-00181-JRG-CHS (E.D. Tenn.) (ECF. No. 74 at 3).

---

[5] According to CBL's SEC filings, 100% of its mall leases active at the end of 2005 expired by the end of 2015, 2015 Form 10-K at 28, and mall leases constituting 91.6% of CBL's total annualized gross rent in 2010 will expire by the end of 2019. 2010 Form 10-K at 33.

7

Dated: November ___, 2019

Respectfully Submitted,

/s/

Jayne A. Goldstein (Fl. Bar No. 144088)
**SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP**
jgoldstein@sfmslaw.com
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367


Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER &
    TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftlaw.com
mklein@aftlaw.com

Jeremy A. Lieberman
Michael J. Wernke
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

**BRONSTEIN, GEWIRTZ &
    GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

**Counsel for Movants**

8