**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | |
|---|---|
| IN RE CBL & ASSOCIATES PROPERTIES, INC. SECURITIES LITIGATION | ) ) ) ) |

Consolidated Case No.
1:19-CV-181-JRG-CHS

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT...........................................................................................................................2

    A. There Was No Duty to Disclose The *Wave* Litigation Before 2019....................................2

    B. The Revenue Statements Were Historically Accurate And Thus Cannot Serve As A Basis for Plaintiffs' Claims. ...............................................................................................8

        1. Plaintiffs Have Not Pled The Falsity Of The Revenue Statements. .............................8

        2. Plaintiffs' Other Arguments Regarding The Revenue Statements Are Meritless...................................................................................................................12

    C. Plaintiffs' Scienter Allegations Fail To Raise The Required Strong Inference.................12

        1. Plaintiffs' Recycling Of Conclusory Allegations Does Not Satisfy *Helwig*. ..............13

        2. Plaintiffs Have Not Shown That Defendants Did Not Subjectively Believe Their Opinion Statements. ......................................................................................16

        3. Plaintiffs' Other Scienter Allegations Are Lacking......................................................20

        4. Plaintiffs' Theory Of Corporate Scienter Has No Basis in Sixth Circuit Law. ...........21

    D. Plaintiffs Have Not Pled Loss Causation With Respect To Any Alleged Misrepresentations. .........................................................................................................23

    E. Plaintiffs' Claims Must Be Dismissed As To Certain Individual Defendants....................24

III. CONCLUSION.....................................................................................................................25

**Page(s)**

**Cases**

*Albert Fadem Trust v. Am. Elec. Power Co.*,
334 F. Supp. 2d 985 (S.D. Ohio 2004) ....................................................................19

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) .........................................................25

*Ash v. PowerSecure Int'l, Inc.*,
2015 WL 5444741 (E.D.N.C. Sept. 15, 2015)...........................................................4

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169, 1185-86 (S.D. Cal. 2009). ..................................................15

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2015)................................................................24, 25

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................17, 18

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) .................................................................................5

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ...................................................................................22

*City of Philadelphia v. Fleming Cos., Inc.*,
264 F.3d 1245 (10th Cir. 2001) ...........................................................3, 18, 19, 20

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................25

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
865 F. Supp. 2d 811 (W.D. Mich. 2012) ...................................................................9

*Doshi v. General Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) ...........................................................................21, 22

*Dougherty v. Esperion Therapeutics, Inc.*,
905 F.3d 971 (6th Cir. 2018) ...................................................................................21

*FindWhat Investor Group v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ...............................................................................11

Case 1:19-cv-00181-JRG-CHS   Document 104   Filed 03/12/20   Page 3 of 33
PageID #: 1468

*In re Ford Motor Co. Sec. Litig.*,
  381 F.3d 563 (6th Cir. 2004) ...................................................................................................9

*Frank v. Dana Corp.*,
  547 F.3d 564 (6th Cir. 2008) ...............................................................................................6, 18

*In re Grupo Televisa Sec. Litig.*,
  368 F. Supp. 3d 711 (S.D.N.Y. 2019)...................................................................................10

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ......................................................................................... *passim*

*Indiana Public Retirement System v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016)......................................................................................................7

*Iron Worker Local Union No. 405 Annuity Fund v. Dollar Gen. Corp.*,
  2018 WL 10152459 (M.D. Tenn. Mar. 8, 2018) .....................................................................5

*J & R Marketing, SEP v. Gen. Motors Corp.*,
  549 F.3d 384 (6th Cir. 2008) ...................................................................................................4

*In re Kindred Healthcare, Inc. Sec. Litig.*,
  299 F. Supp. 2d 724 (W.D. Ky. 2004)...................................................................................21

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) .................................................................................................20

*Ley v. Visteon Corp.*,
  543 F.3d 801 (6th Cir. 2008) .................................................................................................15

*In re Lions Gate Ent. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) .........................................................................................3

*Local 295/Local 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bank Bancorp.*, 731 F. Supp. 2d 689 (S.D. Ohio 2010) ...........................................................21

*Lubbers v. Flagstar Bancorp. Inc.*,
  162 F. Supp. 3d 571 (E.D. Mich. 2016)..................................................................................10

*Luczack v. Nat'l Beverage Corp.*,
  400 F. Supp. 3d 1318 (S.D. Fla. 2019) ..................................................................................23

*Luna v. Marvell Tech. Grp., Ltd.*,
  2016 WL 5930655 (N.D. Cal. Oct. 12, 2016).......................................................................20

*In re Miller Energy Res. Sec. Litig.*,
  2014 WL 415730 (E.D. Tenn. Feb. 4, 2014) .........................................................................13

*Miller Inv. Trust v. Morgan Stanley & Co., LLC*,
308 F. Supp. 3d 411 (D. Mass. 2018) ......................................................................8

*In re Nat'l Century Fin. Enters., Inc.*,
504 F. Supp. 2d 287 (S.D. Ohio 2007) ...................................................................25

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)...................................................................................21

*In re NVIDIA Corp. Secs. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .................................................................................5

*In re Oak Tech. Sec. Litig.*,
1997 WL 448168 (N.D. Cal. Aug. 1, 1997) ...........................................................18

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
830 F.3d 376 (6th Cir. 2016) .................................................................................24

*In re Omnicare, Inc., Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ...............................................................12, 16, 21, 22

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)...............................................................................4, 5

*In re PMA Capital Corp. Sec. Litig.*,
2005 WL 1806503 (E.D. Pa. July 27, 2005)..........................................................10

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ...........................................................................14, 21

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229 (D.N.J. July 27, 2018)..........................................................8, 10

*In re Sanofi Securities Litigation*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................................................................11

*Schuh v. HCA Holdings, Inc.*,
947 F. Supp. 2d 882 (M.D. Tenn. 2013)..................................................................4

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)......................................................18

*SEC v. RPM Int'l, Inc.*,
282 F. Supp. 3d 1 (D.D.C. 2017)............................................................................7

*In re Secure Computing Corporation Securities Litigation*,
184 F. Supp. 2d 980, 988 (N.D. Cal. 2001) .....................................................14, 15

Case 1:19-cv-00181-JRG-CHS   Document 104   Filed 03/12/20   Page 5 of 33
PageID #: 1470

*Singer v. Reali*,
883 F.3d 425 (4th Cir. 2018) .................................................................................................15

*In re Sofamor Danek Grp.*,
123 F.3d (6th Cir. 1997) ...............................................................................................2, 4, 5, 9

*Teamsters Local 445 Freight Div. v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008)..................................................................................................23

*Todd v. STAAR Surgical Company*,
2016 WL 6699284, at \*12 (C.D. Cal. Apr. 12, 2016) ...........................................................25

*Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*,
618 F. App'x 246 (6th Cir. 2015) ..........................................................................................13

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016)....................................................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ...................................................................................7

*Winget v. JP Morgan Chase Bank, N.A.*,
537 F.3d 565 (6th Cir. 2008) ...................................................................................................6

*Zaluski v. United Am. Healthcare Corp.*,
527 F.3d 564 (6th Cir. 2008) ...............................................................................................5, 9

**Statutes**

15 U.S.C. § 77g(a)(1).................................................................................................................4

15 U.S.C. § 77j(c) .......................................................................................................................4

# I.      INTRODUCTION

Publicly-traded companies sometimes must make tough business judgments. The securities laws do not impose liability on such judgments – even if they later turn out to be incorrect. Despite this long-established principle, Plaintiffs' Opposition engages in exactly this type of hindsight criticism, asserting that Defendants must have known that the *Wave* litigation would result in a material loss merely because it ultimately ended with an unfavorable outcome. Plaintiffs' theory of liability ignores the fact that *Wave* accelerated rapidly – and adversely to CBL – in a matter of weeks when a new visiting judge was assigned to the case. Instead of pleading contemporaneous facts showing that *Wave* represented a material contingent liability prior to this point, as they are required to do, Plaintiffs work backwards, emphasizing the ultimate size of the settlement to argue that Defendants must have known from the beginning the material risk posed by the litigation. These fraud by hindsight allegations are not actionable.

Moreover, the Complaint further fails to state a claim because it challenges financial statements that reported *historically accurate* financial figures. The Sixth Circuit has held time and time again that accurately reported financial numbers are not actionable under the securities laws. Because Plaintiffs fail to allege that the Company did not in fact receive these revenues, and because these revenue numbers did not materially inflate CBL's financial results in any event, Plaintiffs' challenge to these Revenue Statements must necessarily fail.

Additionally, Plaintiffs fail to meet the PSLRA's requirement that they allege particularized facts raising a "strong inference" of scienter as to each Defendant. Far from alleging specific facts, Plaintiffs continue to rely on conclusory assertions of "knowledge," misapplication of the controlling *Helwig* factors, and generalized allegations that have been rejected by courts in the Sixth Circuit. They also fail to show that Defendants subjectively knew their opinions concerning the merits of *Wave* were false. Finally, the Complaint is further flawed

because it fails to adequately plead loss causation or show that a number of the Individual Defendants were "makers" of any of the challenged statements. Accordingly, the Court should grant Defendants' Motion to Dismiss (Dkt. 93).

## II.   ARGUMENT

### A.   There Was No Duty to Disclose The *Wave* Litigation Before 2019.

Plaintiffs fail to allege particularized facts showing Defendants knew *prior to 2019* that a material loss in *Wave* was reasonably possible (much less probable). *See* Defs.' Opening Mem. of Law 8-13, Dkt. 93-1 [hereinafter "Mem."]. As Defendants explained, it was not until the first quarter of 2019, when a reassigned visiting judge certified a nationwide class, that Defendants believed a material loss was reasonably possible, at which point they disclosed the *Wave* litigation in their next SEC filing (the March 1, 2019 10-K). Tellingly, Plaintiffs plead no well-pled, particular facts showing otherwise. Under governing Sixth Circuit law, a company has no duty to disclose a prediction about the outcome of a lawsuit unless the prediction is "substantially certain" to hold true. *See id.*; *see also In re Sofamor Danek Grp.*, 123 F.3d at 394, 402-03 (6th Cir. 1997). That a lawsuit eventually proves material to a company's financial condition does not mean it should have been disclosed from the outset, even if, in hindsight, a securities plaintiff later asserts that the company was demonstrably wrong in its prior assessment of the underlying suit. This conclusion follows from two key principles found in securities law precedent: (1) there is no "fraud by hindsight" and (2) a business judgment or opinion, if later proven incorrect or even negligent, is not securities fraud. Plaintiffs struggle mightily against these two commonsense principles in their Opposition, but ultimately cannot overcome them.

Plaintiffs begin their Argument on the wrong foot, incorrectly stating that "Defendants do not contest that Item 103 . . . required disclosure" but rather only "that a Section 10(b) claim cannot be premised on a failure to comply." Opp. at 5. While Defendants did argue that there is

2

no private right of action for an alleged Item 103 violation, they also plainly argued that no disclosure was required (under Item 103 or otherwise) because (1) Plaintiffs have not pled particular facts showing that a material loss was probable or even reasonably possible prior to 2019; and (2) more fundamentally, Plaintiffs failed to show the *Wave* litigation was indeed material prior to the class certification ruling. Mem. at 9-13. Consistent with PSLRA pleading standards, it is Plaintiffs' burden to assert a viable legal duty to disclose – and Defendants' violation of same – and Plaintiffs' Complaint and Opposition do neither.

Having misstated Defendants' argument, Plaintiffs next turn to misstating Item 103 and the Instructions thereto. Specifically, Plaintiffs argue that if the amount claimed in a pending lawsuit exceeds 10% of a company's current assets, the lawsuit must be disclosed. Opp. at 6. But Item 103 does not create any duty of disclosure under such circumstances. In fact, Plaintiffs have it exactly backwards: the 10% threshold under Item 103 is a safe harbor, such that even if a lawsuit is otherwise material and not ordinary litigation incidental to the company's business, the company still does not have to disclose it, so long as the claim does not exceed 10% of the company's current assets. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 18 (S.D.N.Y. 2016) (Item 103 provides an "exclusion" for claims that do not exceed 10% of current assets). Reversing this presumption, Plaintiffs incorrectly argue that the *Wave* case had to be disclosed under Item 103 because the damages claim exceeded $10 million and the Company's assets were only $100 million.[1] Accordingly, Plaintiffs' reliance on Item 103 is misplaced.

---

[1] Plaintiffs' $100 million calculation of CBL's "current assets" is incorrect and need not be accepted by the Court. CBL does not even report "current assets" in its SEC filings, and the Complaint provides no citation to explanatory guides, interpretive guidance, or any other authority to support their bald assertion that Plaintiffs' calculation constitutes "current assets" for purposes of Item 103. To the contrary, Plaintiffs must "include[] in their complaint any financial data from which we could calculate the percentage of [CBL's] current assets" when applying Item 103. *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1266 (10th Cir. 2001).

After misstating Defendants' argument, as well as the various disclosure provisions, Plaintiffs turn to citing inapplicable case law in a failed attempt to create a duty to disclose. For example, Plaintiffs rely on *J & R Marketing, SEP v. Gen. Motors Corp.*, 549 F.3d 384 (6th Cir. 2008) and *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882 (M.D. Tenn. 2013), but those cases involved Section 11 and 12 claims for misstatements in registration statements and prospectuses, neither of which are present here. *See Gen. Motors Corp.*, 549 F.3d at 390; *Schuh*, 947 F. Supp. 2d at 886. Unlike Section 10 and Rule 10b-5, both Section 11 and 12 provide that registration statements and prospectuses must include information specified by Regulation S-K. *See* 15 U.S.C. § 77g(a)(1); 15 U.S.C. § 77j(c). By contrast, a plaintiff in a Rule 10b-5 case (like this one) must independently show a duty to disclose, and cannot simply rely on Regulation S-K. *See Oran v. Stafford*, 226 F.3d 275, 287-88 (3d Cir. 2000) (Alito, J.) (citing *Sofamor Danek*, 124 F.3d at 402). Because Plaintiffs fail to make such a showing here, their reliance on Section 11 and 12 cases is misplaced, and their allegations of violations of Items 103 and 303 are not relevant. *See Ash v. PowerSecure Int'l, Inc.*, 2015 WL 5444741, at \*11 (E.D.N.C. Sept. 15, 2015) ("Item 303 is not a magic black box in which inadequate allegations under Rule 10b–5 are transformed, by means of broader and different SEC regulations, into adequate allegations under Rule 10b–5.").

On the other hand, Defendants' authority, *Sofamor Danek*, is directly on point (and Plaintiffs' effort to distinguish it is unavailing). In *Sofamor Danek*, the Sixth Circuit addressed the plaintiffs' argument that Item 303 creates a duty of disclosure actionable under Rule 10b-5 and, for the same reasons it held that "soft information" need only be disclosed if "substantially

---

Plaintiffs fail to do so. Furthermore, CBL reported "total assets" of over $5.3 billion in its 2018 Form 10-K. *See* Ex. 1, 2018 Form 10-K, at 49. There is simply no support for Plaintiffs' conclusory assertion that CBL's "current assets" amounted to $100 million.

certain" to occur, it "[did] not find the argument persuasive." *Sofamor Danek*, 123 F.3d at 403; *see also Iron Worker Local Union No. 405 Annuity Fund v. Dollar Gen. Corp.*, 2018 WL 10152459, at *15 (M.D. Tenn. Mar. 8, 2018) ("A violation of the disclosure requirements under Item 303 is not automatically actionable under Rule 10b-5."). Numerous other courts are in accord. *See, e.g.*, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1331 (11th Cir. 2019) ("Item 303 imposes a more sweeping disclosure obligation than Rule 10b-5, such that a violation of the former does not *ipso facto* indicate a violation of the latter."); *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014) (holding Item 303 does not create a duty to disclose under Rule 10b-5); *Oran*, 226 F.3d at 288 (violation of Item 303 "does not automatically" establish claim under Rule 10b-5).[2]

Plaintiffs' claim that *Wave* was material prior to class certification, *see* Opp. at 6, 14-15, rests completely on hindsight and ignores the pertinent issue, which is whether a materially unfavorable outcome was "substantially certain" to occur before that time. For instance, Plaintiffs contend that *Wave* was material because Defendants "knew" the allegations had merit; the settlement amount of $90 million and suspension of dividends for two quarters were "clearly material;" and CBL's stock price "plummeted" after disclosure. Opp. at 9 n.5, 14–15. None of those allegations is probative of the likelihood of an unfavorable result or the size of such a result *when the omission was allegedly made*. Nor are any statements CBL made in its Rule 23(f) briefs to the Eleventh Circuit *after* certification of a nationwide class was granted. *See* Opp. at 15; *see also infra* at 18-19. Put simply, CBL's position in the *Wave* case took a rapid and drastic turn for the worse after it was reassigned to a visiting judge from Minnesota on November 8,

---

[2] Plaintiffs also misleadingly assert that under 17 C.F.R. § 210.4-01(a)(1), any noncompliance with GAAP can serve as the basis for Section 10(b) liability. *See* Opp. at 7. The Sixth Circuit considered and rejected a similar argument in *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 569 & 576 (6th Cir. 2008).

5

2018, who, over the ensuing ten weeks, granted certification of a nationwide tenant class, denied CBL's motion for summary judgment, calendared the case for trial, and denied the Company's motion to stay pending appeal. Mem. at 3–4. In sum, the risk calculus clearly and quickly changed in January 2019 starting with the January 7, 2019 class certification ruling, and CBL accordingly disclosed the litigation in its next SEC filing.[3]

Fearing that quick turn of events is fatal to their claims, Plaintiffs ask this Court to ignore the publicly-documented rulings from the *Wave* litigation, arguing that considering them is "blatantly improper on a motion to dismiss." Opp. at 6. Plaintiffs are wrong. First, such documents are incorporated into the complaint by reference and thus proper for consideration on a motion to dismiss. *Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir. 2008); *see also* CC at 1 ("[T]he following [allegations are] based upon . . . publicly available filings made in *Wave Length Hair Salons of Florida, Inc. v. CBL & Associates, Inc.*, Docket No. 2:16-cv-00206 (M.D. Fla.)"). Second, in evaluating securities fraud claims on a motion to dismiss, courts must consider not only the complaint but also "matters of which a court may take judicial notice." *Frank*, 547 F.3d at 570 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The existence of the orders entered against CBL in the *Wave* litigation, the relief those orders granted the plaintiffs (and denied CBL), and the dates on which they were entered (as well as the rapid succession of the same) are proper matters for judicial notice. *See, e.g.*, *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion not for the truth of the facts recited therein,

---

[3] Plaintiffs point to a Supreme Court decision regarding the tolling of the statute of limitations for individual members of a putative class to say the law presumes class certification to exist when class allegations are made. *See* Opp. at 6 (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). But the tolling rule itself suggests just the opposite—tolling is only necessary in order to preserve the putative class members' claims for later, independent litigation *if no class is certified*. That decision is inapposite here, in any event.

but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (citation omitted)).

Plaintiffs' reliance on ASC 450, Opp. at 7–8, likewise fails because Plaintiffs have not pointed to any particularized allegations showing that, at the time these disclosures allegedly should have been made, Defendants knew that it was "reasonably possible" that *Wave* would result in a materially unfavorable outcome.[4]  And the cases Plaintiffs cite are distinguishable. The plaintiffs there alleged that the defendants were the subject of serious criminal scrutiny or were alleged to have known that they had no defense to a regulatory action. *See Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85, 93-94 (2d Cir. 2016) (disclosure required where criminal complaint had been filed against company's officers, the company had received grand jury subpoena, and internal investigation revealed misconduct); *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 21-22 (D.D.C. 2017) (accrual for DOJ investigation necessary where company had already discussed material settlement figures with the DOJ); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037, 1045-46 (N.D. Cal. 2017) (disclosure necessary where company knew it was under investigation by regulators and company officials received internal reports showing they had no viable defense).

Plaintiffs only allege—in wholly conclusory fashion—that Defendants must or should have known that the *Wave* claims were meritorious and *ipso facto* that CBL was facing the reasonable possibility of a materially unfavorable outcome.  But a conclusory assertion that the

---

[4] Plaintiffs claim that Defendants should have known a liability was likely because the *Wave* court "confirmed" that CBL "orchestrated" a nationwide overcharge scheme. Opp. at 7. However, these legal conclusions misconstrue the record. *Wave* never went to trial, and no court in any jurisdiction ever made any findings of fact. Instead, the *Wave* court noted, for class certification purposes, that the plaintiff "cite[d] evidence" of *potential* wrongdoing. CC ¶ 186.  In any event, this statement was in the court's class certification order, and thus does not bear on Defendants' supposed knowledge of materiality prior to that point.

claims were meritorious must be rejected, and Plaintiffs allege no particularized facts from which the Court can infer that Defendants knew CBL lacked any compelling procedural, merits, or damages-related defenses to *Wave*. Given the inherently subjective nature of GAAP standards, *see Miller Inv. Trust v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 442 (D. Mass. 2018) (GAAP involves "broad, inherently subjective standards"), Plaintiffs' Complaint, which amounts to nothing more than a hindsight disagreement with CBL's contemporaneous assessment of *Wave*, fails to establish that CBL had a duty to disclose *Wave* before class certification.[5]

**B.** **The Revenue Statements Were Historically Accurate And Thus Cannot Serve As A Basis for Plaintiffs' Claims.**

**1.** **Plaintiffs Have Not Pled The Falsity Of The Revenue Statements.**

The Revenue Statements are not actionable because Plaintiffs have not adequately pled they were false when made. Indeed, Plaintiffs implicitly concede the historical accuracy of the Revenue Statements (i.e., the actual revenue numbers) and instead argue that (i) representations that CBL's financial statements complied with GAAP were misleading by omission because Defendants failed to disclose the "illegal conduct that generated the revenue" and (ii) Defendants' Explanatory Statements—i.e., statements that "[t]enant reimbursements are

---

[5] Plaintiffs concede, as they must, that loss contingency disclosures are matters of opinion. They therefore fall back on the argument that such opinions are actionable here because Defendants omitted facts about the basis for these opinions. Opp. at 9. However, conspicuously absent from Plaintiffs' argument and allegations are the omitted facts that purportedly make these opinions actionable, and, therefore, Plaintiffs fail to plead they are false for that reason with sufficient particularity. Plaintiffs also argue, without authority, that "[c]ourts are skeptical that disclosures of loss contingencies constitute opinions." Opp. at 10. In fact, "many courts have classified GAAP compliance statements as opinions" given GAAP's "broad, inherently subjective standards." *Miller Inv. Trust*, 308 F. Supp. 3d at 442 (collecting cases); *see also Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *10 (D.N.J. July 27, 2018) (cited by Plaintiffs) (noting that GAAP compliance is "subjective" and plaintiffs had failed to show that defendants "knew their financials were not GAAP compliant"). Finally, Plaintiffs fail to even respond to Defendants' argument that predictions regarding *Wave* are protected by the PSLRA's safe harbor for forward-looking statements. *See* Mem. at 25 n.23.

recognized when earned in accordance with tenant lease agreements"—were affirmatively false and misleading because CBL did not actually "earn" that revenue. Opp. at 10-11; CC ¶ 171. Plaintiffs' position misconstrues CBL's disclosures and ignores an abundance of controlling Sixth Circuit precedent holding that accurate financial reporting cannot be actionable as a matter of law. *See In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004); *Zaluski*, 527 F.3d at 575; *Sofamor Danek*, 123 F.3d at 401 n.3. Plaintiffs may not escape the effect of this authority by citing out-of-circuit decisions based on distinguishable facts.

As the Sixth Circuit has explained, "[t]he disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *Sofamor Danek*, 123 F.3d at 401 n.3; *see also Ford*, 381 F.3d at 570 (sales figures not misleading even though company knew such profits were due to the sale of defective products); *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 823-24 (W.D. Mich. 2012) (accurately reported numbers were not misleading merely because "the company's financial results were achieved by cutting corners on quality controls" and there was "no duty to inform investors that those matters could impact . . . future financial results"). Here, CBL's accurate financial statements likewise do not become misleading merely because its tenant billing and reimbursement practices were challenged in *Wave*.

Plaintiffs cannot dispute that CBL actually received the dollars it reported as tenant reimbursements, so they argue that Defendants were required to disclose the alleged Overcharge Scheme because "CBL's financial statements 'put its sources of revenue at issue.'" Opp. at 11. Plaintiffs are wrong on both the law and the facts. Plaintiffs' contention that CBL "put its sources of revenue at issue" derives from a line of decisions issued by the Southern District of New York in which defendants went beyond merely reporting financial figures and touted

factors contributing to their revenues that were not true. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 536-37 (S.D.N.Y. 2016) (statements attributing sales figures to proper sources actionable where sales were the result of improper back-tested performance history); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 717 (S.D.N.Y. 2019) (source of revenue at issue where defendants stated that they "in no way knew of, or condoned, any bribe" despite the existence of a bribery scheme).[6] No such statements are identified in the Complaint.

Nor have Plaintiffs established that CBL's Explanatory Statements that tenant "reimbursements are recognized when earned in accordance with the lease agreements" triggered a duty to disclose the alleged Overcharge Scheme. Opp. at 12; CC ¶ 171. The fact that CBL provided a basic explanation of this line item (which reported all tenant reimbursements, not just reimbursements for electricity) does not mean that it was under a duty of "unlimited disclosure" regarding the specific sources of its electricity reimbursements. *See Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 583 (E.D. Mich. 2016). The cases on which Plaintiffs rely are readily distinguishable. In Plaintiffs' cases, courts found omissions actionable in light of statements that put the omitted facts directly at issue. *See Roofer's*, 2018 WL 3601229, at \*12 (statement describing pricing for generic drugs as "flat to up slightly" misleading where defendant engaged in collusive price fixing); *In re PMA Capital Corp. Sec. Litig.*, 2005 WL 1806503, at \*3, 6 (E.D. Pa. July 27, 2005) (statements that defendant's underwriting was "sound" and "patient" were actionable because it substantially underpriced its policies).

---

[6] In *Virtus*, the court found a number of other alleged misstatements inactionable because they were "too tenuously connected to trigger a duty to disclose the alleged wrongdoing." 195 F. Supp. 3d at 537. It noted that an "allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability." *Id.*

Here, by contrast, the Explanatory Statements merely explain a generic line item on CBL's income statement. For their part, Plaintiffs pluck one line buried in the explanatory notes to CBL's consolidated financial statements to support their misrepresentation claim. *See* CC ¶ 171 (quoting from CBL's Q3 2018 10-Q). But read in full that language is benign:

> The Company receives reimbursements from tenants for real estate taxes, insurance, CAM and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized when earned in accordance with the tenant lease agreements. Tenant reimbursements related to certain capital expenditures are billed to tenants over periods of 5 to 15 years and are recognized as revenue in accordance with the underlying lease terms.

*See* Ex. 2, Q3 2018 10-Q, at 17. Such statements do not put CBL's specific electricity billing practices at issue. [7]

Plaintiffs' attempt to distinguish the cases cited in Defendants' opening brief is similarly ill-fated. Plaintiffs contend that these cases "are inapposite because none of the plaintiffs disputed that the company had actually 'earned' and recognized the revenue" but "merely alleged that a company had obtained business by an undisclosed or improper means." Opp. at 11 n.6. But that is precisely the situation presented here. Plaintiffs do not dispute that CBL received the reimbursement revenue it reported—they only contend that it was obtained through allegedly improper means. That is analogous to sales being increased by illegal kickbacks as in *In re Sanofi Securities Litigation*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016), or to revenue generated by internet clicks that were attributable to click-bots, as in *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011). Plaintiffs' distinction is thus meaningless.

---

[7] Plaintiffs also argue that the Explanatory Statements were false because they provided that tenant reimbursements complied with leases. Opp. at 12. However, Plaintiffs have failed to show that these statements were false. CBL stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements." *See, e.g.*, CC ¶ 71. These statements, far from affirmatively guaranteeing that CBL complied with every lease provision, merely explain the types of reimbursements that CBL receives under the terms of the leases.

### 2. Plaintiffs' Other Arguments Regarding The Revenue Statements Are Meritless.

Even assuming the Revenue Statements were false or misleading (they were not), they nonetheless were not *materially* misleading as a matter of law because they constituted only 0.75% of CBL's total revenue. Mem. at 19-20. Plaintiffs concede that deviations under 5% are presumptively immaterial but take issue with Defendants' calculations, arguing that the deviation here is higher. Opp. at 15. However, in doing so, Plaintiffs provide misleading numbers. Plaintiffs allege that the "Overcharge Scheme" resulted in $60 million in purportedly improper *revenue* over 8 years, but they go on to compare this revenue to CBL's *net income*, creating a higher percentage. *Id.* Plaintiffs thus compare apples to oranges. When properly comparing tenant reimbursement *revenue* to overall *revenue*, any alleged inflation is clearly immaterial. Mem. at 20.[8]

### C. Plaintiffs' Scienter Allegations Fail To Raise The Required Strong Inference.

Plaintiffs' scienter allegations are insufficient under the Sixth Circuit's *Helwig* standard and fail to show subjective falsity, as required by *Omnicare*. Mem. at 20-25. There is also a more compelling, non-culpable explanation for Defendants' conduct—that Defendants did not believe that the *Wave* case would result in a material loss to CBL at the time the challenged statements were made. *Id.* at 25-26. Plaintiffs' scienter argument (Opp. at 15-27) can largely be boiled down to this: the result in *Wave* was so bad, Defendants must have known beforehand. This conclusory, hindsight argument is contrary to clear Sixth Circuit law.

---

[8] Furthermore, this number is likely even smaller, given that "tenant reimbursements" include an array of other line items in addition to electricity reimbursements. Mem. at 20 n.17. Plaintiffs do not challenge Defendants on this point and thus effectively concede it.

**1. Plaintiffs' Recycling Of Conclusory Allegations Does Not Satisfy *Helwig*.**

Plaintiffs do not dispute that the *Helwig* factors are the controlling framework for assessing scienter in this Circuit. *See, e.g.*, *In re Miller Energy Res. Sec. Litig.*, 2014 WL 415730, at \*17 (E.D. Tenn. Feb. 4, 2014) ("[C]ourts within the Sixth Circuit continue to employ [the *Helwig* factors]," and "[t]his Court will as well."). But instead of faithfully addressing the *Helwig* factors, Plaintiffs merely repackage conclusory allegations taken directly from *Wave*, which is insufficient.

For instance, Plaintiffs contend that Sewell's and Stephas's alleged knowledge of the Overcharge Scheme "substantively falls under the umbrella [sic] *Helwig*'s fourth factor, which infers scienter where the underlying conduct is improper." Opp. at 20. But *Helwig* factor four is "evidence of bribery by a top company official." *Id.* No bribery is alleged here. Plaintiffs try to use the same allegation—i.e., Sewell's and Stephas's alleged knowledge of and participation in the scheme—to satisfy several of the *Helwig* factors. *See id.* (arguing that "Stephas' and Sewell's participation . . . also establish scienter under *Helwig*'s second factor" and that the "same facts also support an inference . . . under *Helwig*'s sixth and seventh factors"). However, factors two and six refer to discrepancies between factual information in Defendants' possession and their statements on the same subject. *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001). And neither Stephas nor Sewell is alleged to have made any of the challenged statements or to have had any involvement in the preparation of those statements. Plaintiffs are therefore precluded from arguing that "they knew that tenants were overcharged . . . *when filing and reviewing CBL's SEC filings*," Opp. at 19 (emphasis added), because Plaintiffs cannot oppose a motion to dismiss with facts that are not included in the Complaint. *See Trustees of Detroit*

Case 1:19-cv-00181-JRG-CHS   Document 104   Filed 03/12/20   Page 19 of 33
PageID #: 1484

*Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 255 (6th Cir. 2015) (Rule 12(b)(6) inquiry limited to the "four corners" of the complaint).[9]

In arguing that *Helwig* factor seven is satisfied—"disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication"—Plaintiffs contradict themselves, contending just two pages later that "revenue recognition is the most basic of all accounting provisions" and that "accounting violations that are so simple [and] basic" demonstrate scienter. Opp. at 20, 22. In any event, Plaintiffs have alleged only that Defendants included amounts attributable to the alleged Overcharge Scheme in the "tenant reimbursements" line of its consolidated income statement, *see, e.g.*, CC ¶¶ 71, 76, 81, 99, and they have not explained how this treatment was so complicated that only "someone with a high degree of sophistication" could understand its supposed "negative implications."

At bottom, Plaintiffs' argument that scienter can be demonstrated by CBL's alleged improper accounting of tenant reimbursements is circular and depends on the conclusory premise that CBL *designed* its accounting treatment in order to avoid detection of the Overcharge Scheme. *See* Opp. at 23 ("Defendants' reason for using the obviously improper accounting is clearly to avoid disclosing that the funds were illicit gains from the improper and illegal Overcharge Scheme.");[10] *see also id.* at 20 (Plaintiffs titled this section "Defendants' Failure to

---

[9] Additionally, to allege scienter based on *Helwig* factor two's "divergence between internal reports and external statements," 251 F.3d at 552, a plaintiff must specifically identify the reports, allege their content, and provide information connecting those reports to the Individual Defendants. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 692 (6th Cir. 2004) (finding "no specific allegations of a divergence" where "allegations regarding the outside consultant lack any detail about when or to whom the consultant reported the information he allegedly discovered."), *abrogated on other grounds by Mattrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011).

[10] The cases relied upon by Plaintiffs are distinguishable. In *In re Secure Computing Corporation Securities Litigation*, the defendants were alleged to have deliberately warehoused products,

Disclose Information That They Had a Clear Duty to Disclose Supports an Inference of Scienter"). As explained in Defendants' opening brief, however, Plaintiffs have not alleged any facts indicating that the propriety of CBL's accounting practices—or the legality of its billing practices—for tenant electricity reimbursements had been challenged before. *See* Mem. at 26. Moreover, after the *Wave* litigation was filed, Defendants did not move to quickly settle that suit (*Helwig* factor five) but instead engaged in intense litigation for over three years.

As for the supposed "magnitude" of CBL's alleged accounting violations, Plaintiffs once again provide misleading numbers. Plaintiffs compare *revenue* to *net income*, Opp. at 23 & n.11, in an effort to inflate the resulting proportion. But "revenues" and "net income" are two distinct concepts, and because Plaintiffs' allegations refer to "revenue" of $60 million, the proper point of comparison is *revenue*, not net income. Plaintiffs' $22.5 million figure would only constitute 0.8% of CBL's total reported revenues of $2.8 billion during the period 2016-2018. *See* Ex. 1 at 48. CBL's alleged accounting errors were thus not "so great in magnitude to be obvious to Defendants"; indeed, the Sixth Circuit has held that an overstatement of total revenues by 5.68% "does not strike us as the type of 'in your face facts' that 'cry out' scienter." *Ley v. Visteon Corp.*, 543 F.3d 801, 812 (6th Cir. 2008) (internal citation omitted). Unlike other cases where the magnitude of accounting violations supported a finding of scienter, this small percentage of overall revenue was not critical to the financial success of the Company. *See, e.g.*, *Singer v. Reali*, 883 F.3d 425, 429-31 (4th Cir. 2018) (motive sufficiently alleged where financial success

---

treating them as delivered for accounting purposes in violation of GAAP, so that they could report profits for the quarter instead of losses. 184 F. Supp. 2d 980, 988 (N.D. Cal. 2001). And, in *Backe v. Novatel Wireless, Inc.*, the defendants were alleged to have shipped products early to boost reported profits, moved $3.4 million originally recognized in 1Q08 to 2Q08, over saturated channels, and were eventually forced to restate their financials. 642 F. Supp. 2d 1169, 1185-86 (S.D. Cal. 2009). By contrast, Plaintiffs fail to allege that Defendants deliberately reported CBL's tenant reimbursements in a manner violating GAAP to conceal the Overcharge Scheme.

of company "largely hinge[d]" on fraudulent reimbursement scheme). Accordingly, these alleged accounting practices were unlikely to have the attention of the Individual Defendants, who were senior executives of the Company.

### 2. Plaintiffs Have Not Shown That Defendants Did Not Subjectively Believe Their Opinion Statements.

The Sixth Circuit's *Omnicare II* decision is clear that "[w]hen an alleged misrepresentation concerns . . . predictions and matters of opinion, a plaintiff must additionally plead facts showing that the statement was made with knowledge of its falsity." *In re Omnicare, Inc., Sec. Litig.*, 769 F.3d 455, 470 (6th Cir. 2014) (internal citations and quotation marks omitted). Plaintiffs rightly do not contest that CBL's litigation disclosures are opinions; the language CBL used undeniably cast its litigation disclosures as predictions based on subjective assessments about future events. *See, e.g.*, CC ¶ 133 ("*Based on current expectations*, such [pending litigation] matters . . . are not *expected* to have a material adverse effect on our liquidity, results of operations, business or financial condition." (emphasis added) (quoting CBL's 2016 Form 10-K)). Absent "particular [alleged] facts demonstrating that defendants had actual knowledge that their statements . . . were false or misleading at the time that they were made," these statements are not actionable. *Omnicare II,* 769 F.3d at 471. And, to the extent a defendant becomes aware of new information that renders a prior opinion inaccurate or incomplete, such information must be disclosed "only if it is virtually as certain as hard facts." *Id.* (quoting *Sofamor Danek*, 123 F.3d at 402).

CBL's disclosures regarding the *Wave* litigation track this analytical framework closely. Prior to the *Wave* court's class certification order in January 2019, the case was a dispute between CBL and one of its tenants in which CBL vigorously disputed the claims and the propriety of class-wide adjudication. Accordingly, before the class was certified, CBL stated its

"expectation" that no material liability would result from pending litigation matters. *See, e.g.,* CC ¶ 133, 157. After the Court's January 7, 2019 order that certified a nationwide class with respect to the federal RICO claims, CBL disclosed *Wave* and discussed significant developments in the case in its next SEC filing, the 2018 Form 10-K. *See* CC ¶ 180.

Plaintiffs argue that CBL's earlier litigation disclosures—which, again, are concededly opinions—were misleading because "Defendants failed to disclose an existing fact inconsistent" with th[ose] opinion[s]," namely, "the pendency of, and key proceedings in, the *Wave* litigation." Opp. at 16. But that argument begs the question here. Public companies are *not* required to disclose *all* pending litigation; they must only disclose *material* pending litigation. The pendency of the *Wave* litigation is thus an "existing fact" only if it was material at a time prior to class certification. But Plaintiffs tellingly do not identify any particular point in time at which *Wave* became material; they instead make the blanket assertion that the lawsuit was material without regard to any developments in the case. That is not how materiality works. As the Supreme Court explained in *Basic*, the "materiality" of "contingent or speculative information or events" will "depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). In other words, the materiality of a contingent loss is an evolving, inherently subjective determination that is not susceptible to the objective, "existing fact" analysis advanced by Plaintiffs.

Plaintiffs resort to hindsight allegations based on the size of the eventual settlement in *Wave* to allege the materiality of the litigation—and thus, Defendants' scienter regarding same. *See* Opp. at 17 ("The information in Defendants' possession at the time – which caused the *Wave*

17

Litigation to settle for 100% of damages – was *presumably* damning. . . .") (emphasis added).[11] But Plaintiffs are required to allege "particular facts [demonstrating] that Defendants 'must' have known the [*Wave*] litigation was meritorious, or that the damage award would be substantial, *at the time Defendants decided not to explicitly disclose [it]*." *Fleming*, 264 F.3d at 1265. Presumptions do not satisfy the "strong inference" standard for pleading scienter.

Plaintiffs' other arguments regarding Defendants' subjective beliefs about their opinion statements are internally contradictory. Plaintiffs contend that Defendants should be precluded from "relitigat[ing] the *Wave* Litigation based upon select excerpts" from the case but, in the same breath, argue that CBL "lost every significant ruling in and related to the *Wave* Litigation," thus putting those filings in issue. Opp. at 17; *see Frank*, 547 F.3d at 571. A cursory review of the *Wave* docket shows that Defendants did not "los[e] every significant ruling." For example, the Middle District of Florida granted in part CBL's motion to dismiss (with respect to certain claims for unjust enrichment and good faith and fair dealing) on April 11, 2017, *see Wave* Dkt. 80, and it granted CBL's motion to strike plaintiff's jury demand on August 10, 2018, *id.* Dkt. 153. But the *Wave* case deteriorated rapidly for CBL in a matter of weeks after November 2018. Mem. 3-4. Far from "relitigating" *Wave*, Defendants simply refer to these relevant, indisputable facts to demonstrate, as the *Basic* Court recognized, that materiality assessments can change over time. *See* 485 U.S. at 238. *Cf. In re Oak Tech. Sec. Litig*., No. 96-20552 SW, 1997 WL 448168, at *9 (N.D. Cal. Aug. 1, 1997) ("GAAP … tolerates a range of reasonable treatments, leaving the choice among alternatives to management."). Similarly, the fact that CBL later addressed the

---

[11] Plaintiffs also cite to a prior decision issued by this court, *In re Se. Milk Antitrust Litig*., 2013 WL 2155379 (E.D. Tenn. May 17, 2013) (Greer, J.), in an effort to suggest that the merits of a case can be judged by the size of a settlement. *See* Opp. at 17. But that decision concerned the approval of a settlement, and in it, the Court also observed that litigation is "fraught with risk" and "inherently predictable." 2013 WL 2155379, at *4.

Eleventh Circuit's "death knell" factor in seeking interlocutory review of the class certification order, *see* Opp. at 17, does not shed light on Defendants' prior state of mind at the time the challenged statements were made. Indeed, if anything, it shows that CBL sought to appeal the order precisely because it still believed that certification of a nationwide class was not legally viable, and Plaintiffs have not alleged facts demonstrating otherwise.

Plaintiffs again misconstrue the facts in arguing that CBL disclosed "two other class actions that had been voluntarily dismissed" and suggesting that "[d]isclosing . . . class actions that posed zero chance of loss while concealing. . . the *Wave* Litigation demonstrates Defendants' scienter." Opp. at 17-18. First, Plaintiffs' assertion that CBL only disclosed those cases *after* they were voluntarily dismissed is incorrect. CBL in fact disclosed those cases *before* they were dismissed. *Compare* Ex. 3, Q3 2016 Form 10-Q, at 39 (disclosing that the *French* and *Shebitz* actions were filed in May and July 2016 and that the company "intends to defend itself vigorously") *with* Ex. 4, 2016 Form 10-K, at 45-46 (disclosing that the two derivative actions were voluntarily dismissed in December 2016). Second, Plaintiffs' argument is illustrative of their hindsight bias. How was CBL to know that those cases "posed zero chance of loss" at the time they were disclosed? "[C]orporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1017 (S.D. Ohio 2004) (rejecting fraud-by-hindsight theory of nondisclosure).

Finally, Plaintiffs incorrectly assert that "every case upon which Defendants rely involves a company actually disclosing the loss contingency or litigation at issue with the only dispute being whether they had misrepresented the outcome of that specific event." Opp. at 16. Plaintiffs are wrong. The defendants in *Fleming* did not disclose the litigation at issue until the

day the jury reached a verdict, *see* 264 F.3d at 1254, and that is the case upon which Defendants most heavily rely.  Mem. at 11-13, 25. However, Plaintiffs are correct that the company in *Luna v. Marvell Tech. Grp., Ltd.*, 2016 WL 5930655 (N.D. Cal. Oct. 12, 2016) had disclosed the lawsuit before the jury verdict.  *See* Opp. at 9 n.5.  But the focus in *Marvell* was on defendant Marvell's failure to accrue a reserve for a $1.17 billion verdict (which Marvell appealed). The Court found that plaintiffs had failed to adequately allege a material misrepresentation because (i) "some … appeals undoubtedly succeed," (ii) "if Marvell had prevailed on any of [its] arguments, the amount owed to [plaintiff[ would have changed," and (iii) plaintiff did not explain "why or how defendants should have known in advance that Marvell would lose on these issues [on appeal.]" *Id.* at *5-*6.  The same principles apply here.

### 3. Plaintiffs' Other Scienter Allegations Are Lacking.

Plaintiffs resort to the tired theory that Defendants must have acted with knowledge due to their positions in the Company and that the alleged scheme related to a "core operation."  Opp. at 24-25. However, fraudulent intent "cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009), *abrogated on other grounds by Mattrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27 (2011). Plaintiffs must allege "sufficiently detailed facts regarding the financial reports, how they were used, and their connection to the Defendants," *id.*, which they did not do here. Plaintiffs also contend that knowledge of accounting irregularities relating to a company's core operations can be imputed to a company's officers. Opp. at 25. However, in the Sixth Circuit, accounting irregularities only suffice if they are "extreme 'in your face facts' that 'cry out' scienter." *Konkol*, 590 F.3d at 400.  Plaintiffs have not alleged any well-pled accounting irregularities, much less the magnitude of these alleged accounting irregularities, or that there has ever been a restatement, precluding the Court from inferring scienter on that basis.

20

*Local 295/Local 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bank Bancorp.*, 731 F. Supp. 2d 689, 725 (S.D. Ohio 2010).

Plaintiffs cannot and do not allege facts to show any personal motive of any Defendant. Instead, Plaintiffs' generalized motive allegations are lacking and do not meet the stringent pleading requirements of the PSLRA. Mem. at 22-23. Instead of pleading particularized allegations showing that Defendants had concrete and personal motives to defraud investors, Plaintiffs argue that Defendants were motivated by their compensation packages and a desire to raise money for CBL through bond offerings. Opp. at 24-25. However, Plaintiffs' Opposition ignores the long line of cases establishing that such motives are shared by all corporate executives and are too general and speculative to support a strong inference of scienter. *See* Mem. at 22-23; *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 982 (6th Cir. 2018); *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000); *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 741 (W.D. Ky. 2004). Importantly, Plaintiffs' allegations are notable for what they do not include – namely, allegations of stock sales by Defendants. Mem. at 22. If Defendants were motivated by personal benefit to commit fraud, as Plaintiffs suggest, they would not have retained their own stock as the price declined. *See PR Diamonds*, 364 F.3d at 691 (the "absence of inside sales" weighs against a finding of fraudulent motive).

### 4. Plaintiffs' Theory Of Corporate Scienter Has No Basis in Sixth Circuit Law.

Plaintiffs argue that they can satisfy the required strong inference of scienter as to all Defendants (including the Company) merely by alleging scienter as to Stephas and Sewell. *See* Opp. at 26-27. That is not the law. The standard for corporate scienter set forth by the Sixth Circuit in *Omnicare* and other cases requires an additional analytical step under which the court must consider the corporation's scienter collectively, weighing all Individual Defendants' states of mind and comparing competing, nonculpable inferences. *See Doshi v. General Cable Corp.*,

823 F.3d 1032, 1041 (6th Cir. 2016) ("[O]ur precedents teach that Sandoval's knowledge of theft and accounting errors in Brazil imputes to General Cable, and that we then apply the *Helwig* factors to analyze whether all the facts alleged give rise to a strong inference that General Cable acted with the necessary scienter."). Thus, in *Doshi*, only the executive's "knowledge of theft and accounting errors—not his state of mind—[was] impute[d] to General Cable," and the court went on to apply the *Helwig* factors to find that scienter had not been adequately alleged as to the corporate defendant. 823 F.3d at 1041-44. *See also Omnicare II*, 769 F.3d at 483-84 (imputing an officer's "knowledge of the audit results" to the corporation but assessing scienter for the corporation separately under *Helwig*).

Critically, "*Omnicare* supports imputing a corporate executive's or employee's state of mind to a corporate defendant [only] when such person *makes a public misstatement*." *Doshi*, 823 F.3d at 1041 (emphasis in original); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 686–90 (6th Cir. 2005) (imputing the knowledge but not the state of mind of an officer who was not alleged to have "any role in drafting, reviewing, or approving" the statements at issue and applying the *Helwig* factors to determine the company's scienter). Here, neither Stephas nor Sewell is alleged to have made or reviewed *any* of CBL's public statements. Moreover, as explained above, Plaintiffs' inability to allege the *Helwig* factors compels the conclusion that when "all well-pleaded allegations [are considered] holistically," Plaintiffs have "fail[ed] to produce a strong inference that [CBL] acted recklessly by issuing its public financial statements." *Doshi*, 823 F.3d at 1041.

In a desperate attempt to rescue their scienter allegations, Plaintiffs suggest that the "Scheme required the participation of numerous company employees" such that this court should draw "a strong inference of corporate scienter without being able to name the individuals who

concocted and disseminated the fraud." Opp. at 27 (citing *Teamsters Local 445 Freight Div. v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008)). This suggestion should be rejected. In context, the *Dynex* court made clear that scienter could only be adequately alleged without naming individual corporate agents under extreme circumstances:

> [I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud. Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

531 F.3d at 195-96 (quoting the Seventh Circuit's decision in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)). No such circumstances are alleged here. And even the *Dynex* Court made clear that generally, "the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant." *Id.* at 195.

**D.      Plaintiffs Have Not Pled Loss Causation With Respect To Any Alleged Misrepresentations.**

Plaintiffs also fail to establish loss causation. Mem. at 28-29. First, *Wave* was already publicly known. Mem. at 28-29. Plaintiffs argue that such information must be transmitted to the public with larger intensity and credibility to preclude loss causation. Opp. at 28. Plaintiffs' argument conflates the *existence* of the lawsuit, which was readily available to the market, with *Wave*'s merits. To the extent Plaintiffs' claim is for the failure to disclose the existence of *Wave* sooner, it had already been revealed to the market and incorporated into CBL's stock price. *Luczack v. Nat'l Beverage Corp.*, 400 F. Supp. 3d 1318, 1330-31 (S.D. Fla. 2019).

Second, Plaintiffs have failed to allege loss causation as to the announcement of class certification and the settlement because neither of these could have been disclosed any earlier. Plaintiffs argue they adequately allege loss causation under the "materialization of risk" theory.

Opp. at 29-30. Under such theory, Plaintiffs must allege facts showing "the relationship between the risks allegedly concealed and the risks that subsequently materialized, as well as the close correlation between the alleged revelation or materialization of the risk and the immediate fall in stock price." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 388 (6th Cir. 2016) (internal quotations omitted). The Complaint – which merely alleges that CBL's stock price declined after the announcement of the *Wave* settlement – fails to meet this standard.

**E.     Plaintiffs' Claims Must Be Dismissed As To Certain Individual Defendants.**

Finally, Plaintiffs' claims against Defendants Charles Lebovitz, Chapman, Stephas, and Sewell fail because they have not shown any of these Individual Defendants were "makers" of any of the challenged statements. Mem. at 29-30. Plaintiffs first contend that *Janus* is inapplicable because it was limited to whether third parties can be held liable for statements made by their clients. Opp. at 30. But "*Janus* is not limited to third parties" because it "did not so limit its rule expressly—a task that would have been quite simple—and it is difficult to understand why the Court would have referred to 'the person or entity with ultimate authority' in fashioning its rule if it had intended such a reading." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 639-40 (S.D.N.Y. 2015).

Next, Plaintiffs argue that Chapman and C. Lebovitz were "makers" of the challenged statements because they, along with CBL's entire Board, signed CBL's Forms 10-K. But "participation in the creation of a statement [is] not enough," and instead, an individual must have "ultimate authority over" the statements. *Id.* at 640. These signatures do not establish that Chapman or C. Lebovitz had "ultimate authority" over the contents of these Forms 10-K.[12] Plaintiffs must provide specific facts, beyond these generic and "conclusory" allegations, to

---

[12] Even if the Court accepts Plaintiffs' argument, Chapman and C. Lebovitz only signed the Company's Forms 10-K, not the Company's Forms 10-Q or press releases.

show that Chapman and C. Lebovitz had "ultimate authority" over the challenged statements. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012). In addition, Plaintiffs incorrectly assert that Chapman was a "corporate officer" (Opp. at 30), when he was only a director, as acknowledged by the Complaint (see CC ¶ 19). "Outside directors . . . cannot be assumed to have assisted in preparing, reviewing, or approving [SEC filings] . . . even when an outside director's name or signature appears [on them]." *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 297-98 (S.D. Ohio 2007).

Plaintiffs also argue that Stephas and Sewell can be inferred to have made statements relating to mall management and accounting duties. Opp. at 30. However, "a mere presumption that a person worked on a statement by virtue of his role within the company must also fall short." *Banco Bradesco*, 277 F. Supp. 3d at 640. Plaintiffs must allege facts showing that Stephas and Sewell had "ultimate authority" over these statements. Even assuming Stephas and Sewell were involved in some degree with the underlying contents of these statements (which Plaintiffs have not alleged), such does not show that they had "ultimate authority" over these statements. *See id.*; *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266, at *10 (S.D.N.Y. Mar. 30, 2018) ("[The] allegations do not suggest that [defendant] actually filed those documents or … otherwise possessed ultimate authority over their content.").[13]

### III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Respectfully submitted this 12th day of March, 2020.

---

[13] *Todd v. STAAR Surgical Company* is distinguishable. In that case, which the court characterized as "admittedly a close call," the court concluded that a vice president could be inferred to have made statements concerning FDA regulatory compliance, since he was alleged to have been "consulted and responsible for any statements concerning FDA regulatory compliance" and served as the "point of contact with the FDA." 2016 WL 6699284, at *12 (C.D. Cal. Apr. 12, 2016). No such facts about Stephas or Sewell are alleged here.

25

/s/   B. Warren Pope

B. Warren Pope\*
Georgia Bar No. 583723
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100
wpope@kslaw.com

Gregory C. Cook\*
**BALCH & BINGHAM LLP**
1901 Sixth Avenue, N., Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 226-3426
gcook@balch.com

Scott M. Shaw, Esq.
**EVANS HARRISON HACKETT PLLC**
One Central Plaza, Suite 800
835 Georgia Avenue
Chattanooga, TN 37402
Telephone: (423) 693-2179
Fax: (423) 648-7897
sshaw@ehhlaw.com

\*admitted *pro hac vice*

*Counsel for Defendants*

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 12, 2020, a true and exact copy of the foregoing has been electronically transmitted to the Clerk of Court using the ECF System for filing, which will provide electronic notice of filing to all counsel of record.

By: */s/ B. Warren Pope*
B. Warren Pope
Georgia Bar No. 583723
Admitted *pro hac vice*
