# EXHIBIT 7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

-----------------------------------x

IN RE:  CBL & ASSOCIATES PROPERTIES,

INC. SECURITIES LITIGATION

Consolidated Case No.

1:19-CV-181-JRG-CHS

-----------------------------------x

REMOTE VIDEOTAPED DEPOSITION OF

CHARLES D. HOFFMAN

New York, New York

September 14, 2022

Reported By:

ERIC J. FINZ

Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 2 of 40
PageID #: 3200

September 14, 2022

9:31 a.m.

Videotaped Deposition of CHARLES D. HOFFMAN, taken by Defendant, pursuant to Notice, at 473 west End Avenue, New York, New York, before ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York.

Case 1.19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 3 of 40
PageID #: 3201

A P P E A R A N C E S: (All Via Remote)

ABRAHAM FRUCHTER & TWERSKY, LLP
Attorneys for Plaintiff
        One Penn Plaza
        New York, New York 10119

BY:   JEFFREY S. ABRAHAM, ESQ.
        jabraham@aftlaw.com

KING & SPALDING LLP
Attorneys for Defendants
        1180 Peachtree Street, N.E.
        Atlanta, Georgia 30309

BY:   PETER M. STARR, ESQ.
        pstarr@kslaw.com
        MATTHEW B. ROSENTHAL, ESQ.
        mrosenthal@kslaw.com

ALSO PRESENT:

        JIM BRADY, Videographer

Case 1.19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 4 of 40
PageID #: 3202

CHARLES D. HOFFMAN

THE VIDEOGRAPHER: Good morning. We are going on the record. Today's date is September 14, 2022. The time is 9:31 a.m.

Please note that the microphones are sensitive, may pick up whispering and private conversations. Please mute your phones at this time. Audio and video recording will take place unless all parties agree to go off the record.

This is Media Unit No. 1 of the video recorded deposition of Charles D. Hoffman, in the matter of CBL & Associates Properties, Inc., Securities Litigation, filed in the United States District Court, Eastern District of Tennessee, Chattanooga Division, Case No. 1:19-CV-181-JRG-CHS.

The location of today's deposition is the Hoffman residence, 473 West End Avenue,

Case 1.19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 5 of 40 PageID #: 3203

CHARLES D. HOFFMAN
Apartment 3-B, New York, New York.

My name is Jim Brady. Today's court reporter is Eric Finz. We are both with the firm Veritext Atlanta. I am not a party to any action nor am I financially interested in this outcome.

If there are any objections to proceeding, please state them at the time of your appearance. Counsel and all present will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MR. STARR: Peter Starr, King & Spalding LLP, on behalf of the defendants. And with me is Matt Rosenthal, also of King & Spalding, and also on behalf of the defendants.

MR. ABRAHAM: Jeffrey Abraham of Abraham Fruchter & Twersky LLP, representing Mr. Hoffman.

800.808.4958                                        770.343.9696
Case 1.19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 6 of 40
PageID #: 3204

CHARLES D. HOFFMAN

THE VIDEOGRAPHER:  I ask now
that the court reporter please
swear in the witness.

CHARLES D. HOFFMAN,

having been first duly affirmed by the

Notary Public (Eric J. Finz), was

examined and testified as follows:

EXAMINATION BY

MR. STARR:

Q.    Good morning, Mr. Hoffman.
Have you been deposed before?

A.    Yes.

Q.    How many times?

A.    Three.

Q.    And which lawsuits were those?

A.    Those were a number of
separate lawsuits for clients' daughter's
divorce, many years ago.

Q.    Each of those three
depositions related to that same matter,
the divorce?

A.    No, two were with one client's
daughter, and one was with another
client's daughter.

800.808.4958                                                                770.343.9696

Case 1.19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 7 of 40
PageID #: 3205

Page 27

CHARLES D. HOFFMAN

A.      Not with -- not by name.

Q.      We touched on this already, but you are testifying as a representative of HoffInvestCo today. Correct?

A.      That's true, yes.

Q.      What is HoffInvestCo?

A.      HoffInvestCo is no longer in business. Although my wife and I acceded to all its assets. HoffInvestCo was, at one time, a small partnership that was set up by me to include my three sons as investors with me.

Q.      And when was it dissolved or wound up?

A.      I would say they were -- it was never legally dissolved because it was never legally formed. It was just a separate -- a separate account that we formed. And I did file a 10 -- I filed a form to get an ID number. And it had its own assets for maybe five years or six years. In the mid-aughts, from around 2010 or 2019 or so. 2020.

Case 1.19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 8 of 40
PageID #: 3206

CHARLES D. HOFFMAN

Q.    And that was a separate account that you had with Fidelity?

A.    It was a separate account, but with Fidelity and with transfer privileges back and forth.

Q.    So HoffInvestCo was never registered as an entity with the New York Secretary of State?

A.    No, no.

Q.    It was not organized under the laws of New York?

A.    Well, in theory it was -- it was organized and it would have to be organized under somebody's laws.  So it would have been, but not in an official capacity.

Q.    What kind of entity -- is it an LLC, is it a corporation?

A.    It was a partnership.

Q.    It was a partnership?

A.    It was a partnership.

Q.    Were there any foundational documents that were used to found this partnership?

CHARLES D. HOFFMAN

document accurate?

A.    Yes.

Q.    Is there anything in this certification that you'd like to amend?

A.    No.

Q.    The first paragraph there says, in reference to HoffInvestCo, that HoffInvestCo is, quote, "An entity of which I am the managing member and majority owner."

Do you see that?

A.    Yes.

Q.    What were your responsibilities as the managing member of HoffInvestCo?

A.    To determine and decide what investments to make, what investments to liquidate.

Q.    The other members of HoffInvestCo, those would be your wife and three sons.  Is that correct?

A.    My three sons certainly.  I don't remember if my wife was included.

Q.    Did they appoint you as the

CHARLES D. HOFFMAN

managing member of HoffInvestCo?

A.    I appointed myself.

Q.    Did you have full discretion to make investment decisions?

A.    Yes.

MR. ABRAHAM:  Can we go off the record for a minute.

THE VIDEOGRAPHER:  Go off the record, the time is 10:16.

(Telephone interruption.)

THE VIDEOGRAPHER:  We are back on the record, the time is 10:16.

BY MR. STARR:

Q.    You testified that you had full discretion to make investment decisions on behalf of HoffInvestCo?

A.    Yes.

Q.    Does anyone else?

A.    No.

Q.    No one else provides input with respect to the investment decisions of HoffInvestCo?

A.    No one.

Q.    Is your discretion limited in

Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 11 of 40
PageID #: 3209

Page 46

CHARLES D. HOFFMAN

governance structures?

A. No.

Q. Did HoffInvestCo have any committees?

A. No.

Can I go back to the answer to number one, the first question?

Q. Sure.

A. It had, to the extent that New York State would have legally created such.

Q. You never registered HoffInvestCo with New York State?

A. No.

Q. Correct?

A. No, I didn't.

Q. What process would HoffInvestCo follow to make a corporate decision?

A. I would make the decision.

Q. For instance, how did HoffInvestCo decide to commence this litigation against the defendants?

A. It decided because I was

CHARLES D. HOFFMAN

serve as a lead plaintiff in that case?

A.    I don't remember.

Q.    How about Mrs. Hoffman, did she seek to serve as a lead plaintiff in that case?

A.    If I did, she did solely in her capacity as joint owner of...

Q.    The court did not appoint you as a lead plaintiff in that case; right?

A.    No.

Q.    Why not?

A.    I assume there was somebody else who was more suited for the position.  I think there was some little teachers insurance company.

Q.    Mr. Hoffman, who is Ronald Amsterdam?

A.    Ronald Amsterdam?

Q.    Mm-hmm.

A.    I don't think I recognize the name.

Q.    All right.

Turning to this lawsuit.  What is your role in this case, Mr. Hoffman?

Case 1.19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 13 of 40
PageID #: 3211

CHARLES D. HOFFMAN

trust doesn't exist, then one -- it would make it hard for anybody to consider it.

Q.    So fair to say that you would not invest in a company if you believed that its management had committed fraud?

A.    Unless -- unless there is a -- unless the other facts of the company outweigh it.

Q.    So there are circumstances under which you would invest --

A.    Sure.

Q.    -- in a company that you believe --

A.    Absolutely.

Q.    Let me finish the question.

A.    I'm sorry.

Q.    There are circumstances under which you would invest in a company you believe was run by fraudsters?

A.    Yeah.  Trump Taj.  I'm giving that as a specific example.

Q.    And in that example --

A.    Yes.

Q.    You said that it outweighed --

Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 14 of 40
PageID #: 3212

CHARLES D. HOFFMAN

A.    Yeah.

Q.    Were there positive aspects that outweighed?  Can you explain that some?

A.    Very simply.  Trump Taj -- Trump got involved halfway into a casino in Atlantic City called the Taj.  It had been designed by somebody.  And then he muscled his way into that casino.  And he financed it by heavily leveraged, without putting in any of his own money.  And he sold a whole pile and a half of junior securities.  And there was a senior mortgage on the property.

And then the bubble started coming up that it looked like the company would go under.  And there was a run on the mortgage bonds.  And no matter what sort of, you know, fraud was involved, and there was a lot of fraud going on, whatever the fraud is, the underlying value -- the mortgage bonds were secured with a first lien on the newest, fanciest casino in Atlantic City.

CHARLES D. HOFFMAN

So the fact that some crook was running it was irrelevant once he would be tossed out, because anybody else taking over the thing would have a billion dollar casino with maybe $700 million or 650, I forget the exact number, worth of mortgage bonds -- worth of mortgages underneath. And at the time, those bonds were selling for 22 or 24 cents on the dollar. Which means it would be a billion dollar casino with maybe 180, $200 million of market value of mortgage.

So yeah, the fact that it was run by a fraud, yeah, the best thing to drive down the -- to irrationally drive down the value of the mortgage bonds. And it did. And then they went back up once people realized hey, you know, no matter how incompetent or fraudulent or both, management can be, the mortgage bonds are the mortgage bonds.

Q.    And in that case, however, you said that someone else taking over the

CHARLES D. HOFFMAN

A.    I'm sure I have at some point. But I don't remember it.

Q.    Did you review it before it was filed?

A.    If it was filed by me and on my behalf, then yes, I did review it then.

Q.    Do you see the stamp there at the bottom of the page, the legend says it was filed on July 16, 2019?

A.    Yeah.  At the beginning of the summer of 2019.

Q.    This motion is for appointment of you, HoffInvestCo and Lydia Hoffman, not on behalf of anyone else.  Correct?

A.    I don't know.  I don't understand what you mean by not on behalf of anybody else.  As lead plaintiff, we're on behalf of the entire class.  But as lead plaintiff, no, it was on behalf of myself and my wife and my HoffInvestCo.

Q.    Do you know who Jay Scolnick is?

CHARLES D. HOFFMAN

A.    Jay Scolnick?

Q.    Yes.

A.    Do I know Jay Scolnick?  I think I saw that name on one of the papers here.  But I don't know who or what he is.

Q.    Do you know who Mark Shaner is?

A.    No.

Q.    You never had any contact with either Jay Scolnick or Mark Shaner, to your knowledge?

A.    Not that I --

MR. ABRAHAM:  Objection as to form.

You can answer the question.

A.    Not that I know of.

MR. STARR:  Can we take a quick five, guys?

MR. ABRAHAM:  Sure.

THE VIDEOGRAPHER:  Go off the record, the time is 2:27.

(A recess was taken.)

THE VIDEOGRAPHER:  We'll go

800.808.4958                                                                                                    770.343.9696
Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 18 of 40
PageID #: 3216

Page 189

CHARLES D. HOFFMAN
back on the record, the time is
2:41.

BY MR. STARR:

Q.    Mr. Hoffman, in your capacity
as a lead plaintiff in this case.

A.    Uh-huh.

Q.    Have you done anything to
supervise the prosecution of this case?

A.    I signed -- I reviewed and
signed whatever was given to me to review
and sign.  And I prepared documents as to
the history of my investments in the
company -- in the company.  And other
than that, I discussed the progress of
the case with my attorney.

Q.    Have you ever made any
important decisions with respect to this
litigation?

MR. ABRAHAM:  Objection as to
form.

A.    I'm not -- I'm not sure
whether any decisions I made were
important or not.  So I can't answer
that.

CHARLES D. HOFFMAN

Q.    Do you provide direction to your counsel?

A.    No.

Q.    Do you defer to your counsel's judgment about the case?

A.    Yes.

Q.    Do you know whether there have been any settlement discussions in this case?

A.    I don't know.

Q.    We just saw in Exhibit 10 that you moved for appointment as lead plaintiff in July 2019.  Right?

A.    Yes.

Q.    Do you recall when you were appointed lead plaintiff by the court?

A.    Do I recall when I was appointed?  No, I don't.

Q.    Mr. Hoffman, we discussed previously that you allege in your complaint that the alleged truth was revealed in March 2019.  Correct?

A.    That's what I remember to be, yes.

Page 191

CHARLES D. HOFFMAN

Q.     The settlement, the announcement of the settlement of the Wave case was in March 2019.  Right?

A.     Uh-huh.

Q.     You continued to invest in CBL after that point; did you not?

A.     I may have.  I don't remember.

MR. STARR:  Can we mark this as Exhibit 11.

(Deposition Exhibit 11 for identification, Fidelity investment report for May 2019, production numbers CBL_HOFFMAN 511 through CBL_HOFFMAN 548.)

BY MR. STARR:

Q.     Mr. Hoffman, you've just been given a document that's been marked as Exhibit 11 to your deposition.

A.     Yes.

Q.     What is this document, Mr. Hoffman?

A.     It's a statement for the month of May.

Q.     It's a Fidelity investment

CHARLES D. HOFFMAN

report for May 2019.  Is that right?

A.    Yes.

Q.    I'm going to ask you to turn all the way to page 32.

A.    32.  Uh-huh.

Q.    The information on this page concerns your IRA account.  Right?

A.    Yes.

Q.    The top right-hand corner it says --

A.    Yes, I see.  Yes, yes.

Q.    The first row in that table that's titled "other," do you see the first row that says CBL & Associates Properties, Inc. com, common stock?

A.    Yeah.  Yeah, yeah.

Q.    So that shows a beginning market value of CBL common stock as of May 1, 2019 of $4,534.90.

Do you see that?

A.    Yes.

Q.    And the ending mark is 6,807.

Do you see that?

A.    One second.  Beginning 4,500.

800.808.4958                                                          770.343.9696
Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 22 of 40
PageID #: 3220

CHARLES D. HOFFMAN

Ending?

Q.    Ending market value as of May 31.

A.    Yeah, yeah, yeah.

Q.    That's as of May 31, 2019.

A.    Yes, I see that.

Q.    So that would indicate that you increased your holdings of CBL common stock during the month of May 2019. Right?

A.    I don't know if that would necessarily indicate that at all. I can't see from here that that would do any -- that that could be represented of a change in the market value. So it could be that I didn't necessarily increase my holdings with the market value. I can't tell from there.

Q.    Got it.

Let's go to page 33, please.

A.    Okay. Page 33.

Q.    That page shows securities bought and sold.

A.    All right.

CHARLES D. HOFFMAN

Q.    Right?

Do you see the two rows visible on that page?

A.    Yeah.

Q.    Are both purchases of CBL common stock in the amounts of 1,060 shares and 2,810 shares?

A.    Okay.

Q.    And there are no other transactions in CBL stock in your IRA for that month; are there?

A.    Okay.

Q.    So you increased your holdings --

A.    Okay.  From this --

Q.    -- in the month of May?

A.    From this one, one could see that I did.

Q.    Yes.

MR. STARR:  Mark that one as 12, please.

(Deposition Exhibit 12 for identification, Fidelity investment report for June 2019, production

CHARLES D. HOFFMAN

numbers CBL_HOFFMAN 549 through CBL_HOFFMAN 580.)

BY MR. STARR:

Q.   Mr. Hoffman, you've now been handed a document that's marked as Exhibit 12.

A.   Yes.

Q.   Could you please identify this document for the record?

A.   That looks like the June '19 statement for Charles and Lydia Hoffman.

Q.   Yes.  Could you please go to page 11.

A.   Page 11.

Q.   Yes, sir.

A.   11.  11.  11.

Yes, page 11.

Q.   So under the holdings section there, you see the first row shows your holdings in CBL Series D preferred stock.

A.   Yes.

Q.   It says unavailable for the beginning market value.  Correct?

A.   Yes.

CHARLES D. HOFFMAN

Q.    And that means that you did not own any Series D preferred shares at the start of the month.  Correct?

A.    Okay.

Q.    The next column over indicates that you owned 7,455 shares of Series D preferred at the end of the month. Correct?

A.    Yes.

Q.    And the market value of those shares was 59,600, about?

A.    Yes.

Q.    Skip ahead to the next section there on that same page.  Beneath the section titled "Other."

A.    Yes.

Q.    There is a row for your CBL common stock.  It says unavailable for the beginning market value.

A.    Yes.

Q.    Again, that means you held no CBL common stock --

A.    Yes.

Q.    -- at the beginning of the

Case 1:19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 26 of 40
PageID #: 3224

CHARLES D. HOFFMAN

month?

A.   Yes.

Q.   The next column shows that you owned 10,500 shares of common stock as of June 30.  Correct?

A.   Yes.

Q.   So based on this statement, you increased your holdings of both CBL common stock and CBL Series D preferred --

A.   Yes.

Q.   -- in the month of June 2019?

A.   Yes.

MR. STARR:  Make this Exhibit 13, please.

(Deposition Exhibit 13 for identification, Fidelity investment report for September 2019, production numbers CBL_HOFFMAN 641 through CBL_HOFFMAN 674.)

BY MR. STARR:

Q.   All right.  Mr. Hoffman, you've just been handed a document that's marked as Exhibit 13.

Case 1:19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 27 of 40
PageID #: 3225

CHARLES D. HOFFMAN

A.    Yes.

Q.    Could you please identify that document for the record?

A.    A statement for the month of September.

Q.    September 2019.  Correct?

A.    Yes.

Q.    Let's go to page 26.

A.    26.  26.

Q.    Yes.  When you get there, you'll see this marks the beginning of the section pertaining to your IRA account.  Right?

A.    Okay.

Q.    Sorry, let's go ahead to 28 rather.

A.    Oh, okay.  28.

Q.    28.  So we are still in the IRA account section here.  And page 28 appears to show a number of purchase transactions in the IRA.  Correct?

A.    Yeah.  Yes.  Sorry.

Q.    I'm counting twelve transactions on this page.  Does that

800.808.4958                                                                 770.343.9696
Case 1:19-cv-00181-JRG-CHS   Document 184-7   Filed 10/28/22   Page 28 of 40
PageID #: 3226

                    CHARLES D. HOFFMAN

sound right?

    A.    Yeah.  It looks reasonable.

            MR. STARR:  Do we need to go

off for a moment?

            THE WITNESS:  What?

            MR. STARR:  Do we need to go

off the record?

            MR. ABRAHAM:  Keep going.

            THE WITNESS:  No.

    Q.    All twelve of these

transactions, Mr. Hoffman, on page 28,

they are all purchases of CBL Series D

preferred stock.  Right?

    A.    Okay.

    Q.    If you turn to the next page,

page 29.

    A.    Yeah.

    Q.    There is just one transaction

visible on that page under securities

bought and sold.  And that appears to be

a purchase of CBL common stock, purchase

of 1,050 shares.  Correct?

    A.    On which page?

    Q.    Page 29 of 34.

CHARLES D. HOFFMAN

A.    Okay, yeah.

Q.    Do you see that?

A.    Yeah.

Q.    Okay.  Other than the purchases we just discussed, there were no transactions in CBL stock in your IRA for the month of September 2019.  Is that right?

A.    Okay.

Q.    So at the time that you made these purchases --

A.    Uh-huh.

Q.    -- in September 2019 or May 2019, at that time did you believe that CBL's management team had made misrepresentations to investors?

A.    I knew there were a lot of problems that they were running through.  I knew that they had some problems.  And I didn't -- I didn't, however, know that it would bring the company down.  I knew that they had suffered a massive hit.  But I wasn't convinced yet that the company would go under.

CHARLES D. HOFFMAN

Q.    You can set that document aside now, Mr. Hoffman.

A.    Okay.

MR. STARR:  This will be Exhibit 14, please.

(Deposition Exhibit 14 for identification, Fidelity investment report for November 2019, production numbers CBL_HOFFMAN 709 through CBL_HOFFMAN 742.)

THE WITNESS:  This one?

BY MR. STARR:

Q.    Yes, sir.  That's a document that's been marked as Exhibit 14.

A.    Okay.

Q.    And could you please identify that document?

A.    Exhibit 14 is our statement, November 2019.

Q.    Let's go to page 12, please.

A.    12?

Q.    Yes.

Are you there?

A.    12 of 34.

Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 31 of 40
PageID #: 3229

Page 202

CHARLES D. HOFFMAN

Q.    Yes.  Okay.

Page 12 shows the holdings in the joint account.  Right?

A.    Okay.

Q.    The column -- excuse me, the row there is for CBL common stock?

A.    Yes.

Q.    The only visible row.

A.    Yes.

Q.    Beginning market value as of November 1, 2019, says unavailable.

Do you see that?

A.    Yes.

Q.    Again, that means you didn't own any CBL common stock in that account?

A.    Right.

Q.    At the start of the month.

And then the ending market value in that account for November -- as of November 30, 2019, is listed as $50,400.

A.    Yeah.

Q.    Do you see that?

A.    Yup.

CHARLES D. HOFFMAN

Q.    Which would mean that over the course of November 2019, you purchased over $50,000 worth of CBL common stock in the joint account.  Is that correct?

A.    I'm sorry, start that question again, because I don't think that's -- total cost.

Q.    The question relates to the comparison between the column showing unavailable for beginning market value.

A.    Yeah, that's right.

Q.    And 50,400 for ending market value.  And my question is whether that indicates that you purchased $50,000 worth of CBL common stock in the month of November?

A.    No, it indicates that I purchased 53,000.

Q.    Are you looking at the cost basis?

A.    Yeah.

Q.    Sure.

A.    And it declined slightly subsequent to the purchase.

CHARLES D. HOFFMAN

Q.    Yes.  All right, you can set that aside.

A.    I can?

Q.    Yup.

MR. STARR:  I believe we are on to our very last Fidelity report.  Let's mark this one as 15, please.

(Deposition Exhibit 15 for identification, Fidelity investment report for December 2019, production numbers CBL_HOFFMAN 743 through CBL_HOFFMAN 778.)

BY MR. STARR:

Q.    Mr. Hoffman, you've been handed a document that's marked as Exhibit 15.

A.    Go ahead.

Q.    What is that document, Mr. Hoffman?

A.    What is that document?  It's a document -- it's the December 2019 statement.

Q.    Mr. Hoffman, this was after

800.808.4958                                                    770.343.9696
Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 34 of 40
PageID #: 3232

CHARLES D. HOFFMAN

you were appointed as lead plaintiff in September 2019. Correct?

A. Okay.

Q. This is after you filed the operative complaint in this case in November 2019?

A. Okay.

Q. Right?

A. Yes.

Q. Let's go to page 11, please.

A. 11.

Q. Yes, sir.

A. 11. 11.

Q. Let me know when you get there.

A. I'm there.

Q. You're there, okay.

This is for the joint account; right?

A. Okay.

Q. The first visible row there shows your holdings in CBL preferred Series D. Correct?

A. Okay.

CHARLES D. HOFFMAN

Q.    Beginning -- the beginning column there for beginning market value says unavailable.  Right?

A.    Okay.

Q.    And the next column over for quantity as of December 31, 2019, it says 23,345 shares.  Right?

A.    Yes.

Q.    So that would indicate that you purchased 23,345 shares in December.  Right?

A.    Yes.

Q.    So at the time you made these purchases, you were actively suing CBL and the defendants.  Correct?

A.    Yes.

Q.    Why did you continue to invest in CBL even after you asserted claims against them for fraud?

A.    "Continue" is a strange word. Why did you continue.  I invested again in them because I thought that there was still some life in the preferred.

Q.    Is it unusual for you to

Case 1:19-cv-00181-JRG-CHS    Document 184-7    Filed 10/28/22    Page 36 of 40
PageID #: 3234

Page 207

CHARLES D. HOFFMAN

invest in a company that you are actively suing for fraud?

A.    Is it unusual?  I don't know if there is a usual pattern at all.  I couldn't draw any pattern here.  But it's not inconceivable that I would feel adverse to the company but still invest in its preferred stock if I thought that the stock still -- that the preferred stock still was viable.

Q.    Have you ever purchased shares in a company that you were suing for fraud before?

A.    Have I ever?  No.  But I'm sure there are other people who are rational, or at least who have done that. And there are people who invest in companies where they're suing them for a whole series of reasons.

Q.    When you were purchasing additional shares of CBL stock while also suing the company for fraud, did you ever consider whether that presented a conflict of interest?

CHARLES D. HOFFMAN

don't remember whether in my capacity as a plaintiff here I had any participation in the bankruptcy. I don't remember. I don't know.

Q.  We're just about done here. Before we finish, I have just a couple of questions about discovery in this case.

Are you aware that the defendants in this case have issued discovery demands to the plaintiffs?

A.  Am I aware?

Q.  Yes.

A.  I would assume that's why I'm here.

Q.  Did you search for documents responsive to the defendants' requests?

A.  Yes, I did.

Q.  What did you do to search for responsive documents?

A.  I did a search of the files on my computer. And I did a search within the internal histories of my emails.

Q.  Did you look for any hard copy documents that you would have?

CHARLES D. HOFFMAN

A.    No, because I know that I never created -- create or created hard copy documents.

Q.    And for HoffInvestCo, did you do anything different or additional?

A.    I did the same -- I looked in the same places for -- as for HoffInvestCo as I would -- because any emails that were sent or received on behalf of HoffInvestCo would have been to Charles Hoffman, not to HoffInvestCo.

MR. STARR:  Mark this one as 17, please.

(Deposition Exhibit 17 for identification, email dated December 9, 2018, production numbers CBL_HOFFMAN 1013.)

BY MR. STARR:

Q.    Mr. Hoffman, you've just been handed a document marked as Exhibit 17.

What is this document?

A.    It's an email from Robert Oppenheimer to me, referring to another -- or in response from me to

Page 225

CHARLES D. HOFFMAN

C E R T I F I C A T E

STATE OF NEW YORK      )

                                    : ss.

COUNTY OF NEW YORK   )


        I, ERIC J. FINZ, a Shorthand
Reporter and Notary Public within and for
the State of New York, do hereby certify:
        That CHARLES D. HOFFMAN, the witness
whose deposition is hereinbefore set
forth, was duly sworn by me and that such
deposition is a true record of the
testimony given by the witness.
        I further certify that I am not
related to any of the parties to this
action by blood or marriage, and that I
am in no way interested in the outcome of
this matter.
        IN WITNESS WHEREOF, I have hereunto
set my hand this 15th day of September,
2022.

        _____

        ERIC J. FINZ