# EXHIBIT 26

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

-----------------------------------x

IN RE:  CBL & ASSOCIATES PROPERTIES,

INC. SECURITIES LITIGATION

     Consolidated Case No.

     1:19-CV-181-JRG-CHS

-----------------------------------x

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

MATTHEW D. CAIN

New York, New York

October 4, 2022

Reported By:

ERIC J. FINZ

Case 1:19-cv-00181-JRG-CHS    Document 184-26    Filed 10/28/22    Page 2 of 15
PageID #: 3565

October 4, 2022

9:31 a.m.

     Videotaped Deposition of MATTHEW D. CAIN, taken by Defendant, pursuant to Notice, at Pomerantz LLP, 600 Third Avenue, New York, New York, before ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York.

Case 1:19-cv-00181-JRG-CHS     Document 184-26     Filed 10/28/22     Page 3 of 15
PageID #: 3566

A P P E A R A N C E S:

POMERANTZ LLP
Attorneys for Plaintiffs
      600 Third Avenue
      New York, New York 10016

BY:   MICHAEL WERNKE, ESQ.
      mjwernke@pomlaw.com

ABRAHAM FRUCHTER & TWERSKY, LLP
Attorneys for Plaintiffs
      One Penn Plaza
      New York, New York 10119

BY:   MICHAEL KLEIN, ESQ. (Via Telephone)
      mklein@aftlaw.com

KING & SPALDING LLP
Attorneys for Defendants
      1180 Peachtree Street, N.E.
      Atlanta, Georgia 30309

BY:   WARREN POPE, ESQ.
      wpope@kwlaw.com
      PETER M. STARR, ESQ.
      pstarr@kslaw.com

ALSO PRESENT:

      DEVERELL WRITE, Videographer

MATTHEW D. CAIN - CONFIDENTIAL

(Deposition Exhibit 58 for identification, expert report of Matthew D. Cain, Ph.D.)

THE VIDEOGRAPHER:  We are going on the record at 9:30 a.m. on October 4, 2022.

This is media unit 1 of the video recorded deposition of Matthew D. Cain, taken by counsel for the defendants, in the matter of in re CBL & Associates Properties Securities Litigation. This case is filed in the United States District Court for the Eastern District of Tennessee.

We are here at the offices of Pomerantz, located at 600 Third Avenue, New York, New York.

My name is Deverell Write representing Veritext Legal Solutions.  The court reporter is Eric Finz from Veritext Legal Solutions.

At this time will counsel

800.808.4958                                                        770.343.9696
Case 1.19-cv-00181-JRG-CHS     Document 184-26     Filed 10/28/22     Page 5 of 15
PageID #: 3568

MATTHEW D. CAIN - CONFIDENTIAL

please state appearances.

MR. POPE:  Good morning, Warren Pope for defendants from King & Spalding.  Also with me is Peter Starr from King & Spalding.

MR. WERNKE:  Michael Wernke from Pomerantz LLP on behalf of the lead plaintiffs and the class.  And also joining by phone is Michael Klein of Abraham Fruchter & Twersky, also for plaintiffs in the class.

THE VIDEOGRAPHER:  Court reporter please swear the witness.

MATTHEW D. CAIN,

having been first duly sworn by the

Notary Public (Eric J. Finz), was

examined and testified as follows:

EXAMINATION BY

MR. POPE:

Q.   Good morning.  My name is Warren Pope, I'm an attorney with King & Spalding, I represent the defendants in this case.

MATTHEW D. CAIN - CONFIDENTIAL
to as investor retention due to a large market capitalization on the common, but there is very low volume as to the preferred, you'd still have market efficiency?

A.   Well, I would still evaluate the trading volume of the preferred, and I would consider that in terms of whether that trading volume on a, you know, on the preferred would weigh in favor of or against the efficiency.

But, in other contexts, such as corporate debt, trading volumes tend to be fairly small in terms of number of trades, but the magnitudes of each trade tends to be fairly large.  So again, it's I think important to consider the actual circumstances around any of these factors or variables that we are assessing for purposes of market efficiency.

Q.   With regard to the analysis you did on the preferred stock for your report, you didn't consider any amount of analyst coverage specific to the

MATTHEW D. CAIN - CONFIDENTIAL

preferred; did you?

A.    So in Exhibit 3 I've got the analyst coverage of CBL as a company and I've not broken that out by any of the securities.  Because, as I explained earlier, that analyst coverage is going to enhance the information environment for all of CBL's securities.  But I've not broken it out by common, preferred or debt in terms of any recommendations.

Q.    So sitting here today, do you have any specific recollection that you reviewed an analyst report specific to the preferred stock of CBL?

A.    I don't recall one way or another whether any of the analyst reports talked exclusively about the preferred stock.  So, or talked exclusively about the debt.  Or exclusively about the common stock.  Off the top of my head.

Q.    Sitting here today, do you recall any analyst report that talked about the preferred stock or the debt at

800.808.4958                                                        770.343.9696

Page 165

MATTHEW D. CAIN - CONFIDENTIAL
all?

A.    I do believe that some of them talk about all the securities.  But I don't really recall, or I don't have the analyst reports memorized off the top of my head.

Q.    But you recall specifically reviewing some analyst reports that did talk about the debt and the preferred?

A.    My recollection is that there is some that covered all the securities.  But I, again, don't recall specifically.

Q.    And we can't tell from your report because it doesn't cite any of those analyst reports specifically; does it?

A.    Well, it lists out the firms.  But I don't list all 2,000 analyst reports individually.

Q.    And your report doesn't address whether there are market makers for the preferred.  Correct?

A.    Let me just refresh my memory on that.

Case 1:19-cv-00181-JRG-CHS    Document 184-26    Filed 10/28/22    Page 9 of 15
PageID #: 3572

MATTHEW D. CAIN - CONFIDENTIAL

A.   That's not an analysis that I've done.

Q.   And in paragraph 147 of your report, which is on page 47, you discuss the use of event studies to calculate the amount of artificial inflation in the price of the stock.

A.   Yup.

Q.   And you state as follows: "Event studies measure security price reactions to corrective disclosures which revealed the relevant truth that was concealed by alleged misrepresentations."

Do you remember that?

A.   Yes.

Q.   Okay.  And then you also talk about the value of any confounding information can then be subtracted from the price impact of the corrective disclosures in calculating inflation. Correct?

A.   Yes.

Q.   So doesn't that language suggest that you think the price impact

Case 1:19-cv-00181-JRG-CHS   Document 184-26   Filed 10/28/22   Page 10 of 15
PageID #: 3573

MATTHEW D. CAIN - CONFIDENTIAL
of the misrepresentations that are alleged here can be measured by reference to the corrective disclosures that are alleged here?

A.    Well, I think what that means is that at the stage of conducting a loss causation analysis, we can use event studies around corrective disclosures to quantify the magnitude of alleged misstatements or omissions by measuring the price impact at the back end when the truth is revealed.  And then you can then back cast that to the beginning of a class period.

Q.    But at least at this point in the case, you have not attempted to do so here.  Correct?

A.    That's correct.

Q.    And as a general matter, in order to use the stock price decline associated with a corrective disclosure to measure price impact, you would agree that the corrective disclosure must be related to or result from the

800.808.4958                                                         770.343.9696
Case 1:19-cv-00181-JRG-CHS    Document 184-26    Filed 10/28/22    Page 11 of 15
PageID #: 3574

MATTHEW D. CAIN - CONFIDENTIAL
misstatement that it corrects?

MR. WERNKE:  Object to form.

A.    I think in general, corrective disclosure has to provide information in some way that is tied back to the alleged misstatements or omissions.  I never articulate any particular language or words that a corrective disclosure has to contain, or the source of a corrective disclosure.  It can come from a variety of means.

But in order for it to be corrective, I do agree that it has to provide investors with information that is related in some way to the allegations of a case.

Q.    And if it doesn't relate back to the alleged misrepresentation, then arguably it would not be fair to measure the price decline that occurred following that alleged corrective disclosure?

MR. WERNKE:  Object to form.

A.    Right.  If there is really no information contained in a disclosure

800.808.4958                                                    770.343.9696
Case 1:19-cv-00181-JRG-CHS   Document 184-26   Filed 10/28/22   Page 12 of 15
PageID #: 3575

MATTHEW D. CAIN - CONFIDENTIAL

what I'll call the AdaptHealth Corporation Litigation.  Is that fair?

A.    Yes.

Q.    And was this a report in a 10b case that you offered?

A.    Yes.

Q.    For the plaintiff?

A.    Yes.

Q.    And you can turn to page 37. You'll see section 6, ability to calculate damages on a class-wide basis.

A.    Yeah.

Q.    And I would just ask you to compare that section to the section in the report in this case, which I think is section 7.

A.    Yeah.

Q.    And would you agree with me that those are very similar, if not almost identical?

A.    I think one significant difference in this AdaptHealth report would be paragraph 90, which talks about the AdaptHealth options and Black-Scholes

MATTHEW D. CAIN - CONFIDENTIAL pricing formula that can be used to assess artificial inflation or the evolution of artificial inflation.

But I think the other paragraphs in section 6 of the AdaptHealth report look to be very similar, if not identical, to the paragraphs in section 7 of the CBL report.

But again, as I explained earlier, the question in each of these reports is whether this can be done in a manner that's consistent with lead plaintiffs' theory of liability.  And so that's something that I considered when forming the opinion in section 6 of the AdaptHealth case.

And if you look back at section 3-A on pages 5 through 7 of the AdaptHealth report, those are completely and entirely different from the paragraphs in section 3.1 of the CBL report.

Q.    So the theory of liability was

Page 266

MATTHEW D. CAIN - CONFIDENTIAL

C E R T I F I C A T E

STATE OF NEW YORK )

: ss.

COUNTY OF NEW YORK )

I, ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That MATTHEW D. CAIN, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this October 6, 2022.

_____
ERIC J. FINZ

Case 1:19-cv-00181-JRG-CHS Document 184-26 Filed 10/28/22 Page 15 of 15 PageID #: 3578