**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE CBL & ASSOCIATES PROPERTIES, | ) | Consolidated Case No. |
| INC. SECURITIES LITIGATION | ) | 1:19-CV-181-JRG-CHS |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 2

        A.      PROCEDURAL HISTORY OF THE LITIGATION................................. 2

        B.      SUMMARY OF KEY TERMS OF THE PROPOSED
                SETTLEMENT.......................................................................... 5

                1.      Relief to Class Members and Release of Claims ........................... 5

                2.      Class Notice and Settlement Administration ................................. 5

                3.      Final Motions, Objections, Opt-Outs and the Settlement Fairness
                        Hearing ................................................................................ 6

                4.      Termination of the Settlement........................................................ 7

                5.      No Admission of Liability ................................................................. 7

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 7

        A.      COURTS FAVOR SETTLEMENTS OF COMPLEX CLASS
                ACTIONS ................................................................................ 8

        B.      THE SETTLEMENT IS FAIR, REASONABLE AND
                ADEQUATE............................................................................. 9

        C.      FACTORS CONSIDERED IN GRANTING FINAL APPROVAL
                OF CLASS SETTLEMENTS SUPPORT PRELIMINARY
                APPROVAL .............................................................................. 11

                1.      The Rule 23(e)(2) Factors Support Preliminary Approval ........... 12

                        a.      Plaintiffs and Lead Counsel Adequately
                                Represented the Class ....................................................... 12

                        b.      The Proposed Settlement Was Negotiated at Arm's-
                                Length ........................................................................... 12

                        c.      The Proposed Settlement Is Adequate in Light of
                                the Costs, Risks, and Delay of Trial and Post Trial
                                Appeal ........................................................................... 13

                        d.      The Proposed Method of Distributing Relief is
                                Effective......................................................................... 14

e.    Attorney's Fees and Expenses Are Reasonable ................ 15

f.    Additional Agreements ..................................................... 16

g.    The Settlement Treats Settlement Class Members Equitably .............................................................................. 16

2.    The Sixth Circuit's *UAW* Factors Support Preliminary Approval............................................................................................. 16

a.    The Amount of Discovery Engaged in by the Parties Supports Approval of the Proposed Settlement................ 17

b.    The Likelihood of Success on the Merits Weighs in Favor of Approval of the Proposed Settlement................. 17

a.    The Informed and Reasoned Opinions of Class Counsel and Plaintiffs Weigh in Favor of Approving the Settlement ................................................... 18

b.    Absent Class Members' Reaction is Not Ascertainable Yet............................................................... 18

c.    Public Interest Weighs in Favor of Approving the Settlement....................................................................... 18

D.    THE COURT CAN LIKELY CERTIFY A SETTLEMENT CLASS ............................................................................................................ 19

1.    The Settlement Class Satisfies the Requirements of Rule 23(a) ................................................................................................. 19

a.    Numerosity......................................................................... 20

b.    Commonality...................................................................... 20

c.    Typicality ........................................................................... 21

d.    Adequacy ........................................................................... 22

2.    Rule 23(b)(3) Is Satisfied............................................................. 22

IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ................................................................................... 23

V.    CONCLUSION................................................................................................ 25

Case 1:19-cv-00181-JRG-CHS    Document 213    Filed 04/19/23    Page 3 of 35
PageID #: 4827

# TABLE OF AUTHORITIES

## Cases

*Allen, et al., v. PixarBio Corp., et al.,*
No. 2:17-cv-00496, ECF. No. 135 (D.N.J. Nov. 18, 2019) ...................................................... 25

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 22, 23

*Arbuthnot v. Pierson*,
607 Fed. Appx. 73 (2d Cir. 2015) .......................................................................................... 15

*Baker v. SeaWorld Entm't, Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......................................................................... 25

*Beach v. Healthways Inc.*,
No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) ..................................................... 15

Bovee v. Coopers & Lybrand,
216 F.R.D. 596 (S.D. Ohio 2003) ......................................................................................... 23

*Burges v. Bancorpsouth*, Inc.,
2017 WL 2772122 (M.D. Tenn. June 26, 2017) .................................................................... 21

*Cates v. Cooper Tire & Rubber Co.*,
253 F.R.D. 422 (N.D. Ohio 2008) ......................................................................................... 21

*City of Ann Arbor Employees' Ret. Sys. v. Sonoco Prod. Co.*,
270 F.R.D. 247 (D.S.C. 2010) .............................................................................................. 21

*City of Goodlettsville v. Priceline.com, Inc.*,
267 F.R.D. 523 (M.D. Tenn. 2010) ....................................................................................... 20

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................... 15

*Connecticut Ret. Plans & Tr. Funds v. Amgen, Inc.*,
2009 WL 2633743 (C.D. Cal. Aug. 12, 2009), *aff'd*, 660 F.3d 1170 (9th Cir. 2011),
*aff'd*, 568 U.S. 455 (2013) .................................................................................................... 21

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ............................................................................................... 19

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) ................................................................................................. 20

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................................... 11, 16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .............................................................................................................. 24

*Elliott v. LVNV Funding, LLC*,
2019 WL 4007219 (W.D. Ky. Aug. 23, 2019) ....................................................................... 11

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) .................................................................................................. 8

*Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*,
2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015)..................................................................... 15

Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.,
2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ..................................................................... 23

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003) .................................................................................................. 14

*Graham v. Capital One Bank (USA), N.A.*,
2014 WL 12579809 (C.D. Cal. July 29, 2014) ....................................................................... 25

*Gudimetla v. Ambow Educ. Holding*,
2014 WL 12594458 (C.D. Cal. Dec. 2, 2014) ......................................................................... 11

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)................................................................................................................... 23

In re Accredo Health, Inc., Sec. Litig.,
2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006)...................................................................... 23

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................ 25

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996)............................................................................................. 21, 22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................................. 13

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................................... 9

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................................................ 16

*In re Direct Gen. Corp.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006).................................................................. 21, 23

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990).......................................................................................... 8, 18

*In re Enron Corp. Sec., Derivative, & ERISA Litig.*,
228 F.R.D. 541 (S.D. Tex. 2005) ............................................................................................ 17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................................... 15

*In re ForceField Energy Inc. Sec. Litig.*,
No. 1:15-cv-3020-NRB, ECF. No. 243 (S.D.N.Y. Sept. 26, 2017)......................................... 25

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Penn. 2000)........................................................................................... 15

Case 1:19-cv-00181-JRG-CHS    Document 213    Filed 04/19/23    Page 5 of 35
PageID #: 4829

*In re Jumia Techs., AG Sec. Litig.*,
No. 19-cv-04397-PKC, ECF No. 113 (S.D.N.Y. Oct. 19, 2020)............................................. 25

*In re L.G. Philips LCD Co. Sec. Litig.*,
No. 1:07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011) ..................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................................................... 10

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................................... 10

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 2:15-cv-05146, ECF No. 487 (C.D. Cal. March 9, 2020)................................................... 25

*In re Tangoe, Inc., Sec. Litig.*,
No. 3:17-cv-00146, ECF No. 64 (D. Ct. Nov. 13, 2017)........................................................... 25

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................................ 17, 18

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................................. 20

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ........................................................................................... 12, 16, 24

*Koenig v. USA Hockey, Inc.*,
2012 WL 12926023 (S.D. Ohio Jan. 10, 2012) ........................................................................ 17

*Macy v. GC Servs. Ltd. P'ship*,
2019 WL 6684522 (W.D. Ky. Dec. 6, 2019)............................................................... 7, 9, 11, 24

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................................ 15

*Miracle v. Bullitt Cty.*,
2008 WL 3850477 (W.D. Ky. Aug. 14, 2008) ............................................................................ 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).............................................................................................................. 24, 25

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................................... 19

*Peck v. Air Evac EMS, Inc.*,
2020 WL 354307 (E.D. Ky. Jan. 21, 2020) ............................................................................... 13

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) ..................................................................................................... 18

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009)............................................................................................... 20

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ............................................................................................... 20, 21

iv

*Swigart v. Fifth Third Bank*,
2014 WL 3447947 (S.D. Ohio July 11, 2014) ........................................................... 13

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................................. 15

*Thacker v. Chesapeake Appalachia, L.L.C*.,
695 F. Supp. 2d 521 (E.D. Ky. 2010) ..................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................. 18

*Weinberg v. Insituform Techs.*,
1995 WL 368002 (W.D. Tenn. Apr. 7, 1995) ........................................................... 22

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ............................................................................. 7, 8

*Willis v. Big Lots, Inc.*,
2018 WL 7814725 (S.D. Ohio Nov. 9, 2018)............................................................ 15

*Winslow v. BancorpSouth, Inc*.,
No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) .......................................... 15

## Statutes, Rules & Regulations

15 U.S.C. § 78j(b)............................................................................................. 2

15 U.S.C. § 78t(a) ............................................................................................. 2

15 U.S.C. § 78u-4(a)(7) .................................................................................... 23

28 U.S.C. § 1775............................................................................................. 6

Fed. R. Civ. P. Rule 23 ................................................................................ *passim*

## assiOther Authorities

5 James Wm. Moore, Moore's Federal Practice
§23.83[1], at 23-336.2 to 23-339 (3d ed. 2002)......................................................... 8

Advisory Committee Notes on 2018 Amendments to Fed. R. Civ. P. 23(e) .............................. 11

Beaver *et al*., "Stock Trading Behavior and Damage Estimation in Securities Cases,"
Cornerstone Research working paper, 1993 ............................................................ 10

Cornerstone Research,
*Securities Class Action Settlements: 2021 Review and Analysis* (2022) .................................. 10

Manual for Complex Litigation, 3rd, § 30.41.......................................................... 8

Manual for Complex Litigation, 4th, §13.14 ........................................................... 9

NERA Economic Consulting,
*Recent Trends in Securities Class Action Litigation: 2022 Full Year Review* (2023).............. 10

*Newberg on Class Actions* (*Fourth*) § 11.41 (2002)..................................................... 18

## I. PRELIMINARY STATEMENT

Jay B. Scolnick, Mark Shaner, Charles D. Hoffman, HoffInvestCo, and Ronald Amsterdam submit this memorandum of law in support of their unopposed motion, pursuant to Fed. R. Civ. P. Rule 23(e), for preliminary approval of the Stipulation of Settlement dated April 19, 2023 (the "Stipulation"), which, upon final judicial approval, would resolve this securities fraud class action filed on behalf of all purchasers or acquirers CBL & Associates Properties, Inc.'s ("CBL") securities between July 29, 2014 and March 26, 2019 (the "Class Period").[1]

The Stipulation is the result of extensive arms'-length negotiations among highly experienced counsel, including three mediation sessions with Michelle Yoshida.[2] If the Stipulation is approved, CBL & Associates Properties, Inc. and CBL & Associates Limited Partnership (together, "CBL") Charles B. Lebovitz, Stephen D. Lebovitz, Farzana Khaleel, Larry Chapman, Augustus N. Stephas, and Don Sewell (the "Individual Defendants" and, with CBL, "Defendants") will cause $17,500,000 to be paid to release all Released Plaintiffs' Claims (the "Settlement").

Plaintiffs respectfully submit that because the proposed Settlement is fair, reasonable, and adequate, the Court should enter the accompanying [Proposed] Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) approving the form and method for providing the Settlement Class notice of the Settlement; and (3) scheduling the Settlement Fairness Hearing at which the Court will consider motions (the "Final Motions") for: (1) final judicial approval of the Stipulation and (2) an award of attorneys' fees, reimbursement of expenses, and compensatory awards to Plaintiffs and Mr. Amsterdam.

Plaintiffs estimate that the proposed Settlement provides the Settlement Class approximately 10.7% of estimated potentially recoverable damages—an objectively excellent

---

[1] Undefined capitalized terms are defined in the contemporaneously filed Stipulation.

[2] http://www.phillipsadr.com/bios/michelle-yoshida/.

result when compared to historical statistics in class action settlements, and better still while recognizing material impediments to achieving *and collecting* potentially recoverable damages. Accordingly, the Settlement easily falls within the range of approvable settlements and the Court should preliminarily approve the Settlement so that Notice will be disseminated to the Class.

## II. SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. PROCEDURAL HISTORY OF THE LITIGATION

This is a federal securities class action brought on behalf of all persons and entities that purchased or otherwise acquired CBL Securities during the Class Period. Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), by failing to disclose that CBL's revenue was inflated by a scheme to defraud tenants (the "Overcharge Scheme") and, after CBL was sued for orchestrating the Overcharge Scheme, Defendants repeatedly ignored the *Wave* Litigation in SEC filings and then described the case as meritless soon before settling it for $90 million without admitting liability. Plaintiffs allege upon disclosure of the truth about Overcharge Scheme and *Wave* Litigation, the Class was damaged. For their part, Defendants deny liability and deny that the Class was damaged.

On May 17, 2019, *Paskowitz v. CBL & Associates Properties, Inc. et al*, Docket No. 1:19-cv-00149 (E.D. Tenn.), was filed. That was followed by the filing of *Williams v. CBL & Associates Properties, Inc. et al*, Docket No. 1:19-cv-00181 (E.D. Tenn.), and *Merelles v. CBL & Associates Properties, Inc. et al*, Docket No. 1:19-cv-00193 (E.D. Tenn.).

On September 10, 2019, after a heavily contested lead plaintiff battle including a motion to take discovery, the Court appointed Plaintiffs (except for Mr. Amsterdam) as lead plaintiffs and

2

Lead Counsel as lead counsel. Dkt No. 69.[3] After the *Paskowitz* Action was voluntarily dismissed, the *Williams* and <u>Merelles</u> actions were consolidated.

On September 27, 2019, Plaintiffs moved to intervene in the *Wave* Litigation for the limited purpose of moving to unseal documents maintained under seal. *See Wave* Dkt No. 313.

On November 5, 2019, Plaintiffs filed the operative complaint (the "CAC"), lengthening the Class Period and adding both Note purchaser claims and defendants. Dkt No. 80. On November 15, 2019, Plaintiffs moved to lift the PSLRA's discovery stay to compel CBL to produce all sealed docket entries in the *Wave* Litigation. Plaintiffs' motion for limited discovery was denied by Magistrate Judge Steger after full briefing and oral argument. *See* Dkt No. 90.

On December 20, 2019, Defendants moved to dismiss the CAC. Dkt No. 93. Plaintiffs opposed the motion to dismiss on February 6, 2020 (Dkt No. 101), and Defendants filed a reply in support of their motion on March 12, 2020. Dkt No. 104.

On May 26, 2020, the *Wave* Court allowed Plaintiffs to intervene and directed CBL and Plaintiffs to meet and confer regarding unsealing portions of the record. *See Wave* Dkt Nos. 314, 316, 347, 349. Negotiations were unsuccessful and Plaintiffs renewed their motion to unseal, which was fully briefed on October 6, 2020. *Wave* Dkt Nos. 350-57.

On or just before October 9, 2020, the Parties informed the Court that they intended to mediate in December and requested the Court reserve a ruling on Defendants' motion to dismiss. Dkt No. 118. The Court honored the Parties' request to maintain the *status quo*. *Id.*

On November 1, 2020, CBL filed a Bankruptcy petition. *See In re CBL & Assoc. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex.). Suggestions of bankruptcy caused this Action and

---

[3] Citations taking the form "Dkt No. ___" refer to the docket in this Action (1:19-CV-181-JRG-CHS), and citations taking the form "*Wave* Dkt No." refer to docket entries in *Wave Length Hair Salons of Florida, Inc. v. CBL & Associates, Inc.*, Docket No. 2:16-cv-00206 (M.D. Fla.).

the *Wave* Litigation to be stayed. *Wave* Dkt Nos. 358, 361; Dkt Nos. 119-20. The bankruptcy stay in this Action was lifted on November 1, 2021. *See* Dkt Nos. 121-136. During the stay, the Parties' first mediation was unsuccessful. *See* Dkt No. 122. On September 1, 2021, before CBL emerged from Bankruptcy, the Parties again mediated. After the Bankruptcy stay ended, the Parties supplemented the briefing on Defendants' motion to dismiss. *See* Dkt Nos. 137-144.

On May 3, 2022, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing claims against CBL as a result of the Bankruptcy discharge and injunction, but allowed the claims against the remaining Individual Defendants to proceed. *See* Dkt No. 145. Defendants moved for clarification of the Court's scienter ruling (Dkt No. 147, 151), which the Court granted as to the clarification, but denied reconsideration of its refusal to dismiss any claims against the Individual Defendants. Dkt No. 152.

Merits discovery began after Defendants' motion to dismiss was denied in part. Plaintiffs received and reviewed (1) 969,842 pages from CBL in response to a subpoena, largely relating to the *Wave* Litigation and a SEC investigation, and (2) 2,839 pages produced by the Individual Defendants, representing substantial completion of document production. Plaintiffs also subpoenaed: several underwriters of the Notes, CBL's counsel in the *Wave* Litigation, the mediators of the *Wave* Litigation, FINRA, CBL's auditor, and Valquest (CBL's utilities billing consultant).

The Parties also engaged in Class discovery after Plaintiffs moved to certify the Class. *See* Dkt Nos. 164-66. Plaintiffs produced thousands of pages of discovery, answered interrogatories, and were deposed. Plaintiffs and the Individual Defendants also retained market efficiency experts and deposed each other's experts. The motion for class certification was fully briefed but not decided before the Settlement was reached. *See* Dkt Nos. 199, 203.

4

On January 31, 2023, the Parties unsuccessfully mediated again. However, a mediator's proposal sparked further negotiations, and, after initially advising the Court that the mediation was unsuccessful (Dkt No. 208), on February 22, 2023, the Parties agreed to a settlement in principle and entered into a term sheet. Since that time, the Parties have negotiated the Stipulation's terms.

### B. SUMMARY OF KEY TERMS OF THE PROPOSED SETTLEMENT

#### 1. Relief to Class Members and Release of Claims

Defendants agreed to settle the Action for $17.5 million, as described more fully in the Stipulation, in return for which all claims that have been, or could have been asserted in the CAC against "Defendants' Releasees" will be dismissed, barred and released. The Settlement Fund will be deposited in an escrow account and backed by the full faith and credit of the United States Treasury. If the Settlement becomes effective, no funds will revert to Defendants. If the Settlement terminates, Defendants will pay only notice costs already paid or incurred.

#### 2. Class Notice and Settlement Administration

After receiving several competitive bids, Lead Counsel selected Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a well-known and experienced in the administration of securities fraud class action settlements, to administer the notices and process claims for the Settlement.[4]

Within 30 days of Preliminary Approval (the "Notice Date"), Epiq will mail a Postcard Notice, substantially in the form set forth in Exhibit A-1 to the Stipulation, to each potential Settlement Class Member identified by records maintained by CBL, including institutional investors, and brokerage firms that maintain custodial accounts, summarizing key aspects of the Settlement and directing potential Settlement Class Members to the Notice published on the settlement website. The Notice describes, in plain English: the Settlement's terms, the

---

[4] *See* https://www.epiqglobal.com/en-us/services/class-action-mass-tort/class-action-administration/claims-administration.

5

considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair, reasonable, and adequate, the Plan of Allocation, attorneys' fees award and expense reimbursement that may be sought, and proposed compensatory awards. The Notice also includes details about the Settlement Fairness Hearing, objecting to the Final Motions, opting out of the Settlement Class, and claims filing procedures.

A Summary Notice, which is the most cost-effective backstop to the Postcard Notice, will also be published to the Internet within 30 days of Preliminary Approval. As another backstop, Epiq will post the Notice, Claims Form, Stipulation, and other documents to a dedicated website.

### 3. Final Motions, Objections, Opt-Outs and the Settlement Fairness Hearing

If this Motion is granted, the Court will hold a Settlement Fairness Hearing to consider the Final Motions. The Parties respectfully request that hearing be scheduled at least 100 days after the Court grants preliminary approval to allow: mailing to be completed; Settlement Class Members to have ample time to consider whether to object or opt-out; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; and, for the Parties to respond to any objections.

If this Motion is granted, three weeks before the Settlement Fairness Hearing, Lead Counsel will submit the Final Motions. Those papers, detailing why the Settlement should be approved and Lead Counsel's efforts on behalf of the Settlement Class, will be posted on the website maintained by Epiq and identified in the Notice.

If this Motion is granted, any Settlement Class Member objecting to any aspect of the Final Motions must send copies of their objections to the Court and designated counsel for the Parties 21 days before the Settlement Fairness Hearing. Any Settlement Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or

review of the Stipulation.[5] Any Settlement Class Member who wishes to opt-out must do so by written request to the Parties and Epiq (and not the Court), accompanied by CBL securities transaction documentation, received no later than 21 days prior to the Settlement Fairness Hearing.

No less than a week prior to the Settlement Fairness Hearing, Lead Counsel anticipate submitting reply papers in support of the Final Motions.

### 4. Termination of the Settlement

Defendants may withdraw from the Settlement if Settlement Class Members representing a negotiated amount of CBL Securities elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be disclosed unless Defendants exercise their right of withdrawal. If the Settlement does not become final due to any reason, the Parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 5. No Admission of Liability

By entering into the Stipulation, Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Fed. R. Civ. 23(e) requires judicial approval to settle class claims. The procedure for approving a class settlement includes three steps: the court must preliminarily approve a settlement; class members then are given notice of a settlement; and, the court holds a hearing to decide whether to approve a settlement. *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *8-10 (W.D. Ky. Dec. 6, 2019).

Preliminary approval is a prerequisite for notifying class members, who then may decide whether to object to a settlement. "The preliminary approval stage of the litigation requires the

---

[5] To ensure the legitimacy and thwart "professional objectors", Settlement Class Members must evidence their standing and submit to this Court's jurisdiction for possible deposition.

court to determine whether the settlement is preliminarily fair, reasonable, and adequate, but does not require the court to review the merits of the case." *Miracle v. Bullitt Cty.*, 2008 WL 3850477, at *5 (W.D. Ky. Aug. 14, 2008). Thus, unless "preliminary evaluation of the proposed settlement" reveals "grounds to doubt its fairness or other obvious deficiencies" preliminary approval should be granted; class members should be notified, and a final determination should be made at a fairness hearing. *See* Manual for Complex Litigation, 3rd, § 30.41.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990) (citing cases). After preliminary approval is granted, a class-wide settlement is presumptively reasonable and objectors must overcome a heavy burden to prove otherwise. *Williams*, 720 F.2d at 921.

The Parties seek preliminary approval of the Settlement so that notice may be sent to the Settlement Class and the Settlement Fairness Hearing may be scheduled. The final determination of whether the proposed Settlement is fair, reasonable and adequate will be made on a more extensive record after Settlement Class Members receive the notice and an opportunity to object to the Final Motions. *See* 5 James Wm. Moore, Moore's Federal Practice §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002). The Final Motions will comprehensively explain the risks of continuing prosecuting the Action and the benefits of Settlement to the Court and the Settlement Class.

### A.    COURTS FAVOR SETTLEMENTS OF COMPLEX CLASS ACTIONS

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially complex class actions. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Class settlements are in the public interest "because they are 'notoriously difficult and unpredictable'

and settlement conserves judicial resources." *Macy*, 2019 WL 6684522, at *7 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

### B. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

In determining whether preliminary approval is warranted, the issues before the Court are whether the Settlement: (1) is in the range of what might be found fair, reasonable, and adequate, and (2) does not disclose grounds to doubt its fairness or other obvious deficiencies, such that notice should be given to class members and a fairness hearing should be scheduled. *See* Rule 23(e)(1)(B)(i); Manual for Complex Litigation, 4th, §13.14 at 173.

Here, the proposed Settlement easily satisfies the standard for preliminary approval as it provides an immediate and substantial recovery of $17,500,000 in cash for the Settlement Class's benefit. Given the complexities of this Action and the substantial risks of continued litigation, including class certification, summary judgment, trial, and inevitable appeals, the Settlement represents an outstanding result that eliminates the risk of no recovery were the Action to proceed to conclusion on the merits.

Estimating aggregate damages here is challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs engaged a consultant to estimate the potentially recoverable damages assuming they could prove all aspects of liability, and recover the full amount of the alleged inflation for all Settlement Class Members, including all Notes.[6] Plaintiffs' consultant estimates recoverable damages to be approximately $164 million,[7] assuming

---

[6] The Parties dispute whether and to what extent any putative class could include Noteholders, whether Plaintiffs could assert claims on behalf of Noteholders, and whether any Noteholders' claims survived the Bankruptcy.

[7] This model uses a proportional 80/20 Multi-Trader Model, which posits two active traders with different holdings and propensities to trade. The "80/20" split is between sets of (a) "slow" traders holding 80% of shares available but trading 20% of the volume and (b) "fast" traders holding 20% of shares available but trading 80% of the volume. This model has been advocated by Cornerstone

Plaintiffs: prove that the Overcharge Scheme was material to CBL's revenues throughout the Class Period and win on all disputed points. In comparison to this best-case scenario, the Settlement represents 10.7% of the potential recovery, assuming collectability, which became uncertain after CBL's bankruptcy-related dismissal from this Action.

Despite these hurdles, the percentage of recovery far outstrips historical averages, yielding an excellent result for Class members. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 had resulted in a recovery of 5.5%-6.2% of estimated losses); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis* at 6 (2022)[8] (from 2010 to 2018 the median settlement as a percentage of "simplified tiered damages" was 7.4% and 4.9% for cases with between $75 million and $149 million and between $150 million and $250 million, respectively); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full Year Review* at 35 (2023)[9] (the median of settlement value for cases filed and settled from December 2011 to December 2022 alleging losses of $100 million to $199 million was 2.9% of "NERA-Defined Investor Losses by Level of Investor Losses").

Furthermore, when evaluating the Settlement by examining recovery per damaged share as outlined in the Notice, the estimated average recovery based upon Plaintiffs' estimate is: $0.08 per potentially damaged shares of Common Stock; $0.09 and $0.06 per potentially damaged shares of

---

Research, an economic consulting firm frequently engaged by defendants in securities class action litigation. *See* Beaver *et al.*, "Stock Trading Behavior and Damage Estimation in Securities Cases," Cornerstone Research working paper, 1993.

[8] *Available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

[9] *Available at* https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

Series D and Series E Preferred Stock, respectively, and $3.41, $2.58, and $3.37 per potentially damaged 2023 Senior Notes, 2024 Senior Notes, and 2026 Senior Notes, respectively. This is an excellent recovery weighing heavily in favor of settlement approval. *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (finding a recovery of $0.11 per damaged share representing "9.6 percent of the estimated per-share recovery at trial" "falls squarely within the settlement amounts approved in" analogous cases); *Gudimetla v. Ambow Educ. Holding*, 2014 WL 12594458, at *6-7 (C.D. Cal. Dec. 2, 2014) (preliminarily approving a recovery of $0.06 per share originally purchased for $10.00).

## C. FACTORS CONSIDERED IN GRANTING FINAL APPROVAL OF CLASS SETTLEMENTS SUPPORT PRELIMINARY APPROVAL

Rule 23(e)(2) was amended in 2018 effectively incorporating many of the factors long considered in this Circuit in evaluating the reasonableness of proposed settlements. Since the Sixth Circuit has not examined the amended Rule 23(e)(2) in detail, district courts routinely consider both sets of factors. *See, e.g.*, *Macy*, 2019 WL 6684522, at *1-2; *Elliott v. LVNV Funding, LLC*, 2019 WL 4007219, at *7-10 (W.D. Ky. Aug. 23, 2019); *see also* Advisory Committee Notes on 2018 Amendments to Fed. R. Civ. P. 23(e) (the factors are not intended to "displace" prior caselaw but "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Rule 23(e)(2) provides as follows (line breaks omitted):

(2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, longstanding Sixth Circuit factors for evaluating fairness include:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").

As discussed below, the proposed $17,500,000 Settlement easily satisfies the relevant Rule 23(e)(2) factors and Sixth Circuit caselaw, warranting sending notice to the Settlement Class.

### 1.  The Rule 23(e)(2) Factors Support Preliminary Approval

#### a.  Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel vigorously litigated this Action on behalf of the Settlement Class for almost four years, across three jurisdictions, and reviewed almost one million pages of discovery. Plaintiffs and Lead Counsel successfully defeated Defendants' motion to dismiss and fully briefed a motion for class certification. Their efforts are also evidenced by the excellent recovery achieved for the Settlement Class.

#### b.  The Proposed Settlement Was Negotiated at Arm's-Length

This Court has observed the Parties battling over every aspect of this case, with Defendants represented by highly-capable, experienced lawyers who have zealously represented them throughout. Defendants dispute that Plaintiffs' claims are meritorious and that damages could approach $164 million. The Parties have well-developed understandings, informed by voluminous discovery, of the strengths and weaknesses of all respective claims and defenses. Indeed, Plaintiffs carefully considered and evaluated all factors, including the legal authorities and evidence, the

12

likelihood of prevailing on their claims, the risk, expense and duration of litigation (including collectability), and delays that any appeal could cause.

Given the foregoing, the consensual resolution of this Action required not only using an experienced mediator, but three mediation sessions and hours of additional telephonic mediation. The process is compelling evidence that the proposed Settlement is not collusive. *See Peck v. Air Evac EMS, Inc.*, 2020 WL 354307, at \*5 (E.D. Ky. Jan. 21, 2020) (emphasizing "negotiations with the assistance of an experienced mediator"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at \*2 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.").

### c. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal

In assessing the proposed Settlement, the Court should balance the benefits of an immediate, certain recovery against the significant cost, risk, and delay of proceeding with this Action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This case is a prime example of the fact that securities class actions present numerous hurdles to proving liability that are difficult for plaintiffs to meet. Absent settlement, each element of each claim would continue to be contested by Defendants through trial and appeal. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006) (noting "[t]he difficulty of establishing liability is a common risk of securities litigation"). Even assuming Plaintiffs prevailed at trial, an appeal would doubtlessly follow, likely taking years to complete regardless of the outcome. Accordingly, this factor weighs strongly in favor of preliminarily approving the Settlement.

CBL's bankruptcy further complicated the Settlement Class's prospects. Without the ability to prosecute CBL, proving scienter became materially harder. In addition, collectability was

introduced as a complication because the Individual Defendants' resources are much less than those of CBL. After insurance was further depleted by trial preparation and trial, the Class's recourse would most likely have been limited to the Individual Defendants' personal assets and remaining insurance funds. It was highly doubtful that the Individual Defendants could have satisfied an approximately $200 million judgment, assuming one could have obtained, making the maximum recoverable damages here somewhat illusory and artificially lowering the real percentage of recovery.

In addition, the Individual Defendants asserted an affirmative defense that they acted in good faith (Dkt No. 148, Seventh Defense), and it appeared that Plaintiffs would have had to move to compel discovery that would otherwise be privileged. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Absent piercing all applicable privileges, which was uncertain at best, Plaintiffs could have had a very difficult time proving the Individual Defendants did not act in good faith, which could have ended the Settlement Class's claims.

Although Plaintiffs and Lead Counsel believe that the claims asserted against the Individual Defendants are meritorious, the Individual Defendants' defenses posed material risks, making recovery uncertain. From the outset, Lead Counsel and Plaintiffs appreciated the unique and significant risks, as well as delays inherent in this Action. Thus, the certainty of a $17,500,000.00 recovery now weighs heavily in favor of preliminary approval of the Settlement.

### d. The Proposed Method of Distributing Relief is Effective

As further demonstrated below, the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) is highly effective. Plaintiffs' notice plan includes direct mail of the Notice and Proof of Claim form to Settlement Class members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice over *PR Newswire and* a case-specific website established during the Notice of Pendency phase of the Action that will be updated with

14

settlement-related documents soon after they are filed with the Court. Settlement Class Members will provide and certify their transaction data, which will be used to compute and apportion recognized losses based upon an objective formula.

### e. Attorney's Fees and Expenses Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intends to seek and the timing of payment. As stated in the Notice, Lead Counsel intends to request fees not to exceed 30% of the Settlement Fund to be paid at the time the Court makes its award. The request is consistent with the fees awarded in the Sixth Circuit for analogous settlements.[10] Indeed, courts regularly awarded fees of 30% or more where a settlement was reached much earlier in the litigation, such as where a settlement was reached before a decision on the motion to dismiss was issued, and where no discovery was taken as a result of the PSLRA's discovery stay.[11]

Class Counsel will also seek reimbursement of litigation expenses, charges, and costs, plus interest thereon estimated not to exceed $1,000,000, and will demonstrate that those expenses were reasonable and necessary in prosecuting this case.

---

[10] *See, e.g.*, *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (awarding 30% on $23.6 million); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) (awarding 30% of $29.25 million); *Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (awarding 29% of $65 million); *Willis v. Big Lots, Inc.*, 2018 WL 7814725, at *1 (S.D. Ohio Nov. 9, 2018) (awarding 28% of $38 million); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million).

[11] *See In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million settlement, where settlement was reached while motion to dismiss was pending); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 171-72, 197 (E.D. Penn. 2000) (awarding 30% of $111 million settlement where settlement was reached before motion to dismiss was filed); *Taft v. Ackermans*, 2007 WL 414493, at *9-11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement reached prior to ruling on motion to dismiss); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (awarding 33.3% of a $11.5 million settlement reached prior to ruling on motion to dismiss).

Class Counsel will also request up to $40,000 per Plaintiff and Mr. Amsterdam prosecuting the litigation, including producing documents, answering interrogatories, and being deposed.

### f. Additional Agreements

With respect to Rule 23(e)(2)(C)(iv), a confidential rider to the Stipulation establishes that Defendants may terminate or modify the Settlement if Settlement Class Members who collectively purchased a specific number of shares during the Class Period opt-out of the Settlement. *See* Stip. ¶ 32. This type of agreement is standard in securities class action settlements and does not make the Settlement unfair. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### g. The Settlement Treats Settlement Class Members Equitably

Although the Court need not approve the Plan of Allocation now, the Plan of Allocation does not grant preferential treatment to any Settlement Class Member, including Plaintiffs. *See* Rule 23(e)(2)(D). The Plan of Allocation, as described in the Notice (Ex. A-1 to Stipulation), has a rational basis and was formulated based on Plaintiffs' theory of liability, demonstrating its fairness and reliability. *See Zynga*, 2016 WL 537946, at *14-15. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of their Recognized Loss depending on their unique transaction data, which comports with allocation plans that have been approved in other securities class actions. *See id.* at *15 (collecting cases).

### 2. The Sixth Circuit's *UAW* Factors Support Preliminary Approval

The *UAW* factors also weigh in favor of preliminary approval. *UAW*'s first two factors, potential collusion and the risk and complexity of litigation, are addressed in Sections III.C.1.b-c.

### a. The Amount of Discovery Engaged in by the Parties Supports Approval of the Proposed Settlement

"The advanced stage of the proceedings and the substantial amount of concluded discovery in this case, means that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). Here, document production and Class discovery are substantially complete. *See* Section II.A, *supra.* The Parties also fully vetted the strengths and weaknesses of this Action during three mediations. Accordingly, Lead Counsel settled this Action on terms highly favorable to the Settlement Class without the risk, uncertainty, delay, and expense of further litigation. *See In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### b. The Likelihood of Success on the Merits Weighs in Favor of Approval of the Proposed Settlement

Plaintiffs' discussion showing that the Settlement was adequate under Rule 23(e)(2) satisfies this factor. *See* Section III.C.1, *supra.* Moreover, at trial, many determinative issues would be subject to expert testimony, with each side retaining highly qualified experts, and uncertainty as to which expert's testimony the finder of fact would accept. *See Koenig v. USA Hockey, Inc.*, 2012 WL 12926023, at \*2 (S.D. Ohio Jan. 10, 2012) (explaining how "[a]cceptance of expert testimony is always far from certain" and settlement "avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."). Indeed, in a recent securities fraud trial, after plaintiff was granted summary judgment on falsity and scienter, the jury quickly found for Elon Musk after deliberating for two hours.[12]

---

[12] *See* https://www.wsj.com/articles/elon-musk-found-not-liable-in-trial-over-tweets-proposing-to-take-tesla-private-11675464951.

### a. The Informed and Reasoned Opinions of Class Counsel and Plaintiffs Weigh in Favor of Approving the Settlement

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). "The Court heeds the recommendation of such experienced, professional, and competent Counsel." *Telectronics*, 137 F. Supp. 2d at 1015. Here, the Settlement is endorsed by informed Plaintiffs' and their experienced and informed counsel.

### b. Absent Class Members' Reaction is Not Ascertainable Yet

Plaintiffs have actively participated throughout the prosecution of the case and were actively involved in the decision to enter into settlement negotiations and the Stipulation. Notice regarding the proposed Settlement has not been distributed to potential Settlement Class Members yet. Absent Settlement Class Members' reactions will be ascertained through the Notice program, and information about its reaction will be before the Court during the Settlement Fairness Hearing.

### c. Public Interest Weighs in Favor of Approving the Settlement

The law favors settlement, particularly in class actions. *Newberg on Class Actions* (*Fourth*) § 11.41 (2002); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (recognizing "the strong judicial policy in favor of settlements, particularly in the class action context"" encouraged by the courts and favored by public policy.") (citations and internal quotation marks omitted); *see also* Section III.A, *supra*. The proposed Settlement serves the public interest by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *Dun & Bradstreet*, 130 F.R.D. at 372.

18

While there is always a chance of a greater recovery, there was also potential for the Settlement Class to recover nothing, less, or receive an uncollectible judgment. The Individual Defendants produced evidence in discovery challenging every element of the Settlement Class's claims and demonstrating that they had good faith processes in place to evaluate whether to disclose the *Wave* Litigation. What a finder of fact would have determined is unknown, and any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained.'" 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).

Without a doubt, based on the relevant factors discussed above, the Court should permit notice of the terms of a the Settlement to be sent to the Settlement Class and schedule a hearing, pursuant to Rule 23(e), to consider Settlement Class Members' views regarding the fairness of the Settlement, the Plan of Allocation, and all other aspects of the Final Motions.

### D.    THE COURT CAN LIKELY CERTIFY A SETTLEMENT CLASS

#### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Class certification is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members would be "impracticable." There is "no strict numerical test[.]" *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Courts find that forty class members may satisfy numerosity. *See City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010).

"[I]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (collecting cases). CBL Common Stock trades publicly on the New York Stock Exchange. Even ignoring other CBL Securities, during the Class Period, shares of the Common Stock outstanding exceeded 170 million and the average weekly trading volume was 13.9 million shares. Although the exact number of Settlement Class members is not known yet, the amount of CBL Securities traded and held demonstrates that the proposed Settlement Class is so numerous that joinder of all members is impracticable, and the numerosity element is satisfied.

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that "[t]he claims of the potential class members [] be factually identical." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009). Commonality is satisfied by "a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Here, common questions of law and fact include: (i) whether the Individual Defendants' statements were materially false and misleading; (ii) whether the underlying misrepresentations and omissions were made with scienter; (iii) whether the prices of CBL's securities were artificially inflated during the Class Period; and (iv) whether the Individual Defendants' misrepresentations

20

and omissions caused Settlement Class members to suffer economic losses. The alleged misstatements were made to the Settlement Class as a whole, and allegedly injured Settlement Class members in the same way. In comparable situations, courts have consistently found the commonality requirement to have been satisfied. *See, e.g., Burges v. Bancorpsouth*, Inc., 2017 WL 2772122, at *3 (M.D. Tenn. June 26, 2017) (finding that "[i]f [Defendants'] misstatements and omissions violated federal law, they violated federal law as to all potential class members . . . [and] answering those questions will generate common, class-wide answers concerning liability.").

### c. Typicality

Rule 23(a)(3) requires the claims of a class representative be typical of the claims of a class. "The requirement of typicality is not onerous. If there is a strong similarity of legal theories, the requirement is met, even if there are factual distinctions among named and absent class members." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). A proposed class representative's claims are typical if they arise "from the same … practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *In re Direct Gen. Corp.,* 2006 WL 2265472, at *3 (M.D. Tenn. Aug. 8, 2006). Typicality exists if a "sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Gen. Motors Corp.*, 133 F.3d at 399.

Plaintiffs and all putative Settlement Class members purchased CBL Securities during the Class Period. Plaintiffs' claims, like those of all Settlement Class members, derive from the same legal theories and public disclosures. Accordingly, as Plaintiffs' claims are typical of those of the Settlement Class. *See Connecticut Ret. Plans & Tr. Funds v. Amgen, Inc.*, 2009 WL 2633743, at *5 (C.D. Cal. Aug. 12, 2009), *aff'd*, 660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013); *City of Ann Arbor Employees' Ret. Sys. v. Sonoco Prod. Co.*, 270 F.R.D. 247, 251 (D.S.C. 2010).

21

### d. Adequacy

Rule 23(a)(4) requires that: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083. The first of these requirements overlaps with the commonality and typicality prerequisites, ensuring that putative class representatives have interests co-extensive with the interests of the unnamed class members. *See Weinberg v. Insituform Techs.*, 1995 WL 368002, at *5 (W.D. Tenn. Apr. 7, 1995). The second factor assures that the representatives' incentive to pursue the action aligns with that of the class members, *see In re Am. Med. Sys.*, 75 F.3d at 1083, or that the class representative does not have any conflict of interests with "the class they seek to represent." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted).

Here, Plaintiffs "possess[es] the same interest and suffer[ed] the same injury as the class members," *id.* at 625-26, and no actual or potential conflicts exist. Since their appointment, Plaintiffs have each taken their roles and obligations to the Settlement Class seriously and have acted to protect the interests of the Settlement Class. Plaintiffs have also engaged qualified, experienced and capable attorneys to represent the Settlement Class. Lead Counsel are highly experienced in complex class litigation, especially securities fraud actions. Through counsel, Plaintiffs have investigated and filed the CAC, successfully opposed and argued a motion to dismiss, pursued discovery and fully briefed their motion for class certification and sat for depositions.

### 2. Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding

all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (internal quotations and citations omitted). Certification of the Settlement Class for settlement serves these purposes.

The predominance and superiority requirements are readily satisfied. Common questions predominate over questions affecting only individual Settlement Class Members. *See Amchem*, 521 U.S. at 625 (the predominance test is "readily met" in securities fraud class actions). A class action is also clearly superior to other available methods for resolution of the Settlement Class Members' claims. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.11 (1981) (class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost").[13]

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

Rule 23(e)(1) provides that once the parties provide a court with sufficient information that it will approve the proposed settlement, the court should direct notice be provided in a reasonable manner to the class. The inquiry involves not only the substance of the compromise but also "the effectiveness of ... the method of processing class member Claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). A notice must also satisfy the requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). "[N]otice should be 'reasonably calculated, under all the circumstances, to apprise interested

---

[13] See also *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281, at *39 (M.D. Tenn. Mar. 29, 2012); *In re Accredo Health, Inc., Sec. Litig.*, 2006 WL 1716910, at *11 (W.D. Tenn. Apr. 19, 2006), quoting *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003) ("[i]t is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions."); *Direct Gen.*, 2006 WL 2265472, at *7 (agreeing "that class actions are particularly appropriate means for resolving securities fraud litigation").

parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)); *see also Macy,* 2019 WL 6684522, at *7 (same).

The proposed long-form Internet Notice to the Settlement Class easily satisfies these requirements. The Notice is written in simple language and includes: (i) basic information about the lawsuit and the definition of the Settlement Class; (ii) a description of the benefits provided by the Settlement; (iii) an explanation that claims against Defendants that could have been litigated in the Action will be released if the Settlement Class Member does not opt out and the Settlement is approved; (iv) the names and contact information for Lead Counsel; (v) an explanation of how Settlement Class Members can obtain the Settlement benefits; (vi) an explanation of how Settlement Class Members can exercise opt-out of or object to the Settlement; (vii) information regarding Lead Counsel's application for attorneys' fees and expenses, specifically that they will seek no more than 30% of the Settlement Fund in attorneys' fees and no more than $1,000,000 in litigation expenses; (viii) the Settlement Fairness Hearing date; (ix) an explanation of how to submit a notice of appearance for the Settlement Fairness Hearing; and (x) the Settlement website and a toll-free number where additional information can be obtained.

Additionally, the proposed Notice dissemination program satisfies due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (finding notice program to be the "best notice practicable under the circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."). As outlined in the proposed Preliminary Approval Order, the Parties propose that Epiq[14] will mail the Postcard Notice (Exhibit 1 to the Preliminary Approval

---

[14] Lead Plaintiffs request that the Court approve retention of Epiq, a nationally recognized notice and claims administration firm with extensive relevant experience, as the Claims Administrator.

Order) to all Settlement Class Members who can be identified with reasonable effort, including through CBL's transfer records. Epiq will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. After entry of the proposed Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Internet Notice and Claim Form (Exhibits 2-3 to the Preliminary Approval Order) will be posted on a website maintained by Epiq and the Summary Notice will be transmitted over *PR Newswire*.

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Courts regularly approve a similar mailed post card directing class members to a more detailed online notice. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).[15]

Accordingly, Plaintiffs respectfully submit that the proposed Postcard Notice, Internet Notice and Summary Notice, and the related procedures, are appropriate and should be approved.

## V. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order preliminarily approving the Settlement and setting deadlines for the mailing and publication of the Notices, the filing of the Final Motions, the filing of Settlement Class Member objections and opt-out notices, as well as a date for the Settlement Fairness Hearing.

---

[15] *See also In re Jumia Techs., AG Sec. Litig.,* No. 19-cv-04397-PKC, ECF No. 113 (S.D.N.Y. Oct. 19, 2020); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at \*2-3 (S.D. Cal. Feb. 19, 2020); *Graham v. Capital One Bank (USA), N.A.*, 2014 WL 12579809, at \*2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, No. 1:15-cv-3020-NRB, ECF. No. 243 (S.D.N.Y. Sept. 26, 2017); *Allen, et al., v. PixarBio Corp., et al.,* No. 2:17-cv-00496, ECF. No. 135 (D.N.J. Nov. 18, 2019); *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146, ECF No. 487 (C.D. Cal. March 9, 2020); *In re Tangoe, Inc., Sec. Litig.*, No. 3:17-cv-00146, ECF No. 64 (D. Ct. Nov. 13, 2017).

Dated: April 19, 2023

Respectfully Submitted,

/s/ *Sarah Johnson*
Al Holifield (BPR# 015494)
Sarah R. Johnson (BPR# 030781)
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
aholifield@holifieldlaw.com
sjohnson@holifieldlaw.com

John W. Chandler, Jr.
**THE HAMILTON FIRM**
2401 Broad Street, Suite 102
Chattanooga, TN 37408
Tel: (423) 634-0871
Fax: (423) 634-0874
jwc@thehamiltonfirm.com

**Co-Liaison Counsel for Plaintiffs**

Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
**ABRAHAM, FRUCHTER &**
   **TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftlaw.com
mklein@aftlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
Michael J. Wernke (admitted *pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

**Proposed Class Counsel**

26

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

**Additional Counsel for Jay Scolnick**

**KASKELA LAW LLC**
D. Seamus Kaskela
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Tel: (484) 258-1585
skaskela@kaskelalaw.com

**Additional Counsel for Mark Shaner**

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2023 I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

*By: Sarah Johnson*
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
sjohnson@holifieldlaw.com

*Co-Liaison Counsel for Plaintiffs*

28