**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

---------------------------------------------------------------------

|   |   |   |
|---|---|---|
| IN RE CBL & ASSOCIATES PROPERTIES, INC. SECURITIES LITIGATION | ) ) ) ) | Consolidated Case No. 1:19-CV-181-JRG-CHS |

---------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION**
<u>**SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**</u>

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................2

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .........................6

      A.    THE APPLICABLE LEGAL FACTORS SUPPORT FINAL APPROVAL .........6

      B.    THE PROPOSED SETTLEMENT SATISFIES RULE 23(E)(2).........................8

            1.    Plaintiffs and Lead Counsel Adequately Represented the Class ...............8

            2.    The Proposed Settlement Was Negotiated at Arm's-Length.....................8

            3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and
                  Delay of Trial and Post Trial Appeal .........................................................9

            4.    The Proposed Method of Distributing Relief is Effective ........................11

            5.    Attorney's Fees and Expenses Are Reasonable ......................................11

            6.    Additional Agreements............................................................................13

            7.    The Settlement Treats Class Members Equitably ....................................13

      C.    THE PROPOSED SETTLEMENT SATISFIES THE *UAW* FACTORS .............13

            1.    The Risk of Fraud or Collusion................................................................13

            2.    The Complexity, Expense and Likely Duration of Litigation .................13

            3.    The Amount of Discovery Engaged in by the Parties ..............................15

            4.    The Likelihood of Success on the Merits .................................................15

            5.    The Informed and Reasoned Opinions of Class Counsel and Plaintiffs....16

            6.    The Reaction of Absent Class Members ..................................................16

            7.    The Public Interest...................................................................................17

IV.   THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND
      REASONABLE AND SHOULD BE APPROVED........................................................18

V.    THE NOTICE OF SETTLEMENT SATISFIED RULE 23 ...........................................20

VI.   CONCLUSION ..........................................................................................................22

# Table of Authorities

## Cases

*Arbuthnot v. Pierson*,
   607 Fed. Appx. 73 (2d Cir. 2015) ............................................................................11

*Beach v. Healthways Inc.*,
   No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) ....................................11

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ..................................................................16

*City of Providence v. Aéropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................................................11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................20

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ..........................................................................13, 19

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) .................................................................................6

*Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*,
   2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015)....................................................11

*Gascho v. Global Fitness Holdings, LLC*,
   2014 WL 1350509 (S.D. Ohio July 16, 2014).........................................................7

*Gascho v. Global Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ...................................................................................7

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
   332 F.3d 976 (6th Cir. 2003) .................................................................................10

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................18

*In re Advanced Battery Techs. Secs. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................9

*In re Auto. Parts Antitrust Litig.*,
   2018 WL 7108016 (E.D. Mich. Nov. 6, 2018)........................................................7

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ......................................................12

*In re Chicken Antitrust Litig.*,
   810 F.2d 1017 (11th Cir. 1987) .............................................................................18

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ........................................................14

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .........................................................................13

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) ..........................................................................17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................................11

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Penn. 2000) .........................................................................12

*In re IMAX Secs. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................18

*In re L.G. Philips LCD Co. Sec. Litig.*,
No. 1:07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011) ..................................12

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .....................................................18

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ......................................................13

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)..............................................14, 16

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001)..........................................................14, 16

*In re Zynga Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................11

*In re: Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)...............................................7, 21

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) .................................................................................7

*Koenig v. USA Hockey, Inc.*,
2012 WL 12926023 (S.D. Ohio Jan. 10, 2012) .....................................................15

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000). .........................................................................7

*Macy v. GC Servs. Ltd. P'ship*,
2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) ...........................................................6

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................12

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944, at *13 (M.D. Tenn. Aug. 11, 1999).......................................21

*Marro v. New York State Tchrs.' Ret. Sys.*,
   2017 WL 6398014 (6th Cir. 2017) .......................................................................14

*Motter v. O'Brien*,
   2014 WL 12892732 (S.D. Ohio June 12, 2014) ....................................................21

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) .........................................................................13

*New York State Tchrs.' Ret. Sys. v. GMC*,
   315 F.R.D. 226 (E.D. Mich. 2016) ......................................................................14

*Noto v. 22nd Century Grp., Inc.*,
   2023 WL 4303462, at *3 (W.D.N.Y. June 15, 2023), report and recommendation
   adopted, 2023 WL 4303739 (W.D.N.Y. June 30, 2023) ......................................21

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................................17

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ........................................................................14

*Peck v. Air Evac EMS, Inc.*,
   2020 WL 354307 (E.D. Ky. Jan. 21, 2020) ........................................................7, 9

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) ...............................................................................16

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
   346 F. Supp. 3d 389 (S.D.N.Y. 2018) ...................................................................9

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................................18

*Swigart v. Fifth Third Bank*,
   2014 WL 3447947 (S.D. Ohio July 11, 2014) ........................................................9

*Taft v. Ackermans*,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .........................................................12

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010) ...................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .............................................................................17, 20

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993) .....................................................................18

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992) ...........................................................................7

*Willis v. Big Lots, Inc.*,
   2018 WL 7814725 (S.D. Ohio Nov. 9, 2018) .......................................................11

*Winslow v. BancorpSouth, Inc.*,
   No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) .....................................11

## <u>Statutes, Rules & Regulations</u>

15 U.S.C. § 78j(b) .................................................................................................2

15 U.S.C. § 78t(a) .................................................................................................2

15 U.S.C. §78u-4(a)(7) .......................................................................................20

15 U.S.C. §78u-4(f)(7) ........................................................................................20

Fed. R. Civ. P. Rule 23 ................................................................................*passim*

## <u>Other Authorities</u>

Beaver *et al*., "Stock Trading Behavior and Damage Estimation in Securities Cases,"
  Cornerstone Research working paper, 1993 ...................................................8

*Newberg on Class Actions* (*Fourth*) § 11.41 (2002) ....................................17

Jay B. Scolnick, Mark Shaner, Charles D. Hoffman, HoffInvestCo, and Ronald Amsterdam (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Fed. R. Civ. P. Rule 23(e), for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I. PRELIMINARY STATEMENT

Plaintiffs and their counsel obtained a $17.5 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of Released Plaintiffs' Claims. There is no reason in the Record to revisit the Court's conclusion, in granting Plaintiffs' Preliminary Approval Motion, that that the Settlement is fair, reasonable, and adequate. As described more fully below and in contemporaneous filings, the Settlement is an excellent result that provides a significant and certain recovery for the Class that, weighed against the numerous risks presented by continued litigation, easily satisfies the standards for final judicial approval at this time.

Indeed, Plaintiffs' decision to enter the Settlement was well-informed by zealous and extensive litigation spanning three jurisdictions and almost four years. Litigation included comprehensive discovery efforts and three arm's-length settlement negotiations supervised by an experienced mediator.[2] While Plaintiffs believe that Released Plaintiffs' Claims are meritorious and that the Class would prevail at trial, Plaintiffs also recognize that had the Action continued, the Class faced substantial risks to obtaining a recovery for the Class, let alone a recovery greater than that afforded by the Settlement, and faced further material risks to collecting what Plaintiffs believe could be a full recovery if they hit the proverbial "home run" at trial.

---

[1]     Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 19, 2023 (Dkt. No. 214). Also, unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

[2]     http://www.phillipsadr.com/bios/michelle-yoshida/.

In light of these considerations, Plaintiffs and Class Counsel believe that the Settlement provides a very favorable result for the Class; is eminently fair, reasonable, adequate; and, easily satisfies the standards of approval under Rule 23 and governing Sixth Circuit caselaw. The reaction of the Class thus far also supports the Settlement. As discussed below, Settlement Class Members ("Class Members") were notified of the Settlement in accordance with the Preliminary Approval Order (Dkt. No. 215) and, to date, no Class Member has object to or opted out of the Settlement. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was explained in the Notice sent to Class Members after being prepared in consultation with Plaintiffs' damages expert. The Plan of Allocation ultimately governs how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objection has been filed to this straightforward and prorated method of allocation, and it is hard to imagine a colorable objection to it could exist.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

This is a federal securities class action brought on behalf of all purchasers and acquirers CBL Securities between July 29, 2014 and March 26, 2019. Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), by failing to disclose that CBL's revenue was inflated by a scheme to defraud tenants (the "Overcharge Scheme") and that, after CBL was sued for orchestrating the Overcharge Scheme, Defendants repeatedly omitted the *Wave* Litigation from SEC filings and then described the litigation against the company as immaterial and arising in the ordinary course of business. Months before the end of the Class Period, Defendants described the *Wave* Litigation as meritless soon before settling it for $90 million. Plaintiffs allege upon disclosure of the truth about Overcharge Scheme and *Wave* Litigation, the Class was damaged. For their part, Defendants deny both liability and damages.

On May 17, 2019, *Paskowitz v. CBL & Associates Properties, Inc., et al*, Docket No. 1:19-cv-00149 (E.D. Tenn.), was filed, followed by the filings of *Williams v. CBL & Associates Properties, Inc., et al*, Docket No. 1:19-cv-00181 (E.D. Tenn.), and *Merelles v. CBL & Associates Properties, Inc., et al*, Docket No. 1:19-cv-00193 (E.D. Tenn.).

On September 10, 2019, after a heavily contested lead plaintiff battle including a motion to take discovery, the Court appointed Plaintiffs (except for Mr. Amsterdam) as lead plaintiffs and Lead Counsel as lead counsel. Dkt. No. 69.[3] After the *Paskowitz* Action was voluntarily dismissed, the *Williams* and *Merelles* actions were consolidated.

On September 27, 2019, Plaintiffs moved to intervene in the *Wave* Litigation for the limited purpose of moving to unseal portions of the record. *See Wave* Dkt. No. 313.

On November 5, 2019, Plaintiffs filed the operative CAC, lengthening the Class Period and adding both Note purchaser claims and defendants. Dkt. No. 80. On November 15, 2019, Plaintiffs moved to partially lift the PSLRA's discovery stay to compel CBL to produce all sealed filings in the *Wave* Litigation. Plaintiffs' discovery motion was denied by Magistrate Judge Steger after full briefing and oral argument. *See* Dkt. No. 90.

On December 20, 2019, Defendants moved to dismiss the CAC. Dkt. No. 93. Plaintiffs opposed the motion to dismiss on February 6, 2020 (Dkt. No. 101), and Defendants replied in support of their motion on March 12, 2020. Dkt. No. 104.

On May 26, 2020, the *Wave* Court allowed Plaintiffs to intervene and directed CBL and Plaintiffs to meet and confer regarding unsealing portions of the record. *See Wave* Dkt. Nos. 314,

---

[3]     Citations taking the form "Dkt. No. __" refer to the docket in this Action (1:19-CV-181-JRG-CHS); citations taking the form "*Wave* Dkt. No." refer to docket entries in *Wave Length Hair Salons of Florida, Inc. v. CBL & Associates, Inc.*, Docket No. 2:16-cv-00206 (M.D. Fla.); and; citations taking the form "BK Dkt. No." refer to docket entries in *In re CBL & Associates Properties, Inc., et al.*, Case No. 20-35226 (Bankr. S.D. Tex.).

316, 347, 349. After unsuccessful negotiations, Plaintiffs renewed their motion to unseal, which was fully briefed on October 6, 2020. *Wave* Dkt. Nos. 350-57.

On or just before October 9, 2020, the Parties requested the Court reserve a ruling on Defendants' motion to dismiss and informed the Court that they intended to mediate in December. Dkt. No. 118. The Court honored the Parties' request to maintain the *status quo*. *Id.*

On November 1, 2020, CBL filed a Bankruptcy petition. *See* BK Dkt. No. 1. Suggestions of bankruptcy caused this Action and the *Wave* Litigation to be stayed. Dkt. Nos. 119-20. 136; *Wave* Dkt. Nos. 358, 361. Despite the stay, the Parties' mediated in December, but that mediation was unsuccessful. *See* Dkt. No. 122. In the Bankruptcy, debtors attempted to limit the Class's claims against the Individual Defendants by, *inter alia*, requiring Class members to return a release opt out form to preserve certain third-party claims. *See* BK Dkt. Nos. 372, 1074, 1111, 1133. Plaintiffs and their counsel retained bankruptcy counsel and protected the Class's claims. *Id.*

On September 1, 2021, before CBL emerged from Bankruptcy, the Parties again unsuccessfully mediated. The bankruptcy stay was lifted on November 1, 2021, after which the Parties supplemented the briefing on Defendants' motion to dismiss. *See* Dkt. Nos. 121, 137-144.

On May 3, 2022, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing claims against CBL because of a Bankruptcy discharge but allowing all claims against the Individual Defendants to proceed. *See* Dkt. No. 145. Defendants moved for clarification of the Court's *scienter* ruling (Dkt. No. 147, 151), which the Court granted as to the clarification, but denied as to reconsideration of dismissal. Dkt. No. 152.

Merits discovery began after the Individual Defendants' motion to dismiss was denied. Plaintiffs received and reviewed (1) 969,842 pages from CBL in response to a subpoena, largely relating to the *Wave* Litigation and a SEC investigation, and (2) 2,839 pages produced by the

Individual Defendants, representing substantial completion of Defendants' document production. Plaintiffs also subpoenaed: the Notes' underwriters; CBL's counsel in, and the mediators of, the *Wave* Litigation; FINRA; CBL's auditor, and; CBL's utilities billing consultant.

After Plaintiffs moved to certify the Class, the Parties also engaged in Class discovery, which included deposing competing market efficiency experts. *See* Dkt. Nos. 164-66, 184, 199, 203. Plaintiffs themselves produced thousands of pages of documents, answered interrogatories, and gave depositions. The fully briefed class certification motion was *sub judice* when the Settlement was reached.

Defendants moved to strike Mr. Amsterdam as a Class representative. *See* Dkt. No. 170. That fully briefed motion was *sub judice* when Settlement was reached. *See* Dkt. Nos. 173-75.

On January 31, 2023, the Parties again unsuccessfully mediated. However, a mediator's proposal sparked further negotiations, and, after initially advising the Court that the mediation was unsuccessful (Dkt. No. 208), on February 22, 2023, the Parties agreed entered into a term sheet consistent with the Settlement.

On April 19, 2023, the Parties executed the Stipulation and Plaintiffs moved for preliminary approval of the Settlement. *See* Dkt. Nos. 212-14. On April 24, 2023, the Court issued its Preliminary Approval Order concluding, among other things, that "the Parties have shown the Court that it will likely be able to approve the proposed Settlement as being fair, reasonable, and adequate to the Settlement Class (the "Class") under Federal Rule of Civil Procedure 23(e)(2), subject to further consideration at the Settlement Fairness Hearing[,]" and that the proposed Notice "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended[ (the "PSLRA")], and all other applicable law and rules."

*See* Dkt. No. 215 at 3-4, 6-7. In addition, the Preliminary Approval Order certified the Class for Settlement purposes. *Id.* at 2-3.

All conditions of the Preliminary Approval Order are met. Defendants issued the CAFA Notice (Dkt. No. 216) and Plaintiffs caused the Notice to be issued to Class Members. *See* Declaration of Susanna Webb Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion (the "Epiq Declaration") (the "Epiq Declaration"), attached as Exhibit 1 to the contemporaneous Joint Declaration of Michael J. Wernke and Michael J. Klein (the "Joint Declaration"), ¶¶2-7. Class Members have corresponded with the Claims Administrator by phone and email and visited the settlement website. *Id.* at ¶¶8-11. None has objected to the Settlement and one request for exclusion was received, without trading data. *Id.* ¶12 & Ex. D

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.   THE APPLICABLE LEGAL FACTORS SUPPORT FINAL APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions such as this Action. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Class settlements are in the public interest "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019).cbl.

Rule 23(e)(2) sets forth the factors a court should consider in determining whether a class action settlement is fair, adequate, and reasonable, providing as follows (line breaks omitted):

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, longstanding Sixth Circuit factors for evaluating fairness include:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016) (quoting *UAW*).

These factors are not applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). Given the significant overlap among relevant factors, courts routinely consider Rule 23(e)(2) and the *UAW* factors together. *See Peck v. Air Evac EMS, Inc*., 2020 WL 354307, at *6 (E.D. Ky. Jan. 21, 2020) (quoting *In re Auto. Parts Antitrust Litig*., 2018 WL 7108016, at *4 (E.D. Mich. Nov. 6, 2018)). In assessing a settlement, the court should not "decide whether one side is right or even whether one side has the better of these arguments.... The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *16 (S.D. Ohio July 16, 2014). Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after years of litigation and rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable. *In re: Skelaxin (Metaxalone) Antitrust Litig*., MDL No. 2343, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014); *Kogan v. AIMCO Fox Chase, L.P*., 193 F.R.D. 496, 501 (E.D. Mich. 2000).

### B.   THE PROPOSED SETTLEMENT SATISFIES RULE 23(E)(2)

#### 1.   Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel vigorously litigated this Action for almost four years, across three jurisdictions, and reviewed almost one million pages of discovery. Plaintiffs and Lead Counsel successfully defeated Defendants' motion to dismiss and fully briefed a motion for class certification. Plaintiffs and Lead Counsel's efforts are also evidenced by the excellent recovery achieved. As a result, the Court has already found, for purposes of the proposed Settlement, that "Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class." Dkt. No. 215 at ¶2.d.

#### 2.   The Proposed Settlement Was Negotiated at Arm's-Length

This Court has observed the Parties battling over every aspect of this case, with Defendants represented by highly-capable, experienced lawyers from King & Spalding LLP, Balch & Bingham LLP, and Evans Harrison Hackett PLLC, who have zealously represented Defendants throughout. Defendants dispute that Plaintiffs' claims are meritorious and that damages could approach $164 million even if liability could be established.[4]

The Parties' disputes are informed by voluminous discovery and have well-developed understandings of the strengths and weaknesses of all claims and defenses. Indeed, Plaintiffs and their experienced counsel carefully considered and evaluated all relevant factors, including legal

---

[4]      Plaintiffs engaged a consultant to estimate the potentially recoverable damages assuming they could prove all aspects of liability, and recover the full amount of the alleged inflation for all Class Members, including all Notes. Plaintiffs' consultant calculated potentially recoverable damages using a proportional 80/20 Multi-Trader Model, which posits two active traders with different holdings and propensities to trade. The "80/20" split is between sets of (a) "slow" traders holding 80% of shares available but trading 20% of the volume and (b) "fast" traders holding 20% of shares available but trading 80% of the volume. This model has been advocated by Cornerstone Research, an economic consulting firm frequently engaged by defendants in securities class action litigation. *See* Beaver *et al.*, "Stock Trading Behavior and Damage Estimation in Securities Cases," Cornerstone Research working paper, 1993.

8

authorities and evidence, the likelihood of prevailing on their claims, the risk, expense the and duration of litigation (including collectability), and delays that a invertible appeal would cause.

Given these obstacles, the consensual resolution of this Action required not only using an experienced mediator, but three mediation sessions and many hours of additional telephonic mediation. The process is further compelling evidence that the proposed Settlement is arms'-length. *See Peck v. Air Evac EMS, Inc.*, 2020 WL 354307, at *5 (E.D. Ky. Jan. 21, 2020) (emphasizing "negotiations with the assistance of an experienced mediator"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.").

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal

In assessing the proposed Settlement, the Court should balance the benefits of an immediate, certain recovery against the significant cost, risk, and delay of proceeding with this Action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This case is a prime example of the fact that securities class actions present numerous hurdles to proving liability that are difficult for plaintiffs to meet. Absent settlement, each element of each claim would continue to be contested by Defendants through trial and appeal. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting "[t]he difficulty of establishing liability is a common risk of securities litigation"). Even assuming Plaintiffs prevailed at trial, an appeal would doubtlessly follow, likely taking years to complete regardless of the outcome. Accordingly, this factor weighs strongly in favor of preliminarily approving the Settlement.

9

CBL's bankruptcy further complicated the Class's prospects. Without the ability to prosecute CBL, proving scienter became materially harder because imputing scienter to a corporate entity is easier than proving the scienter of individuals. *See, e.g., Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 409 (S.D.N.Y. 2018) ("there is no requirement that the same individual who made an alleged misstatement on behalf of a corporation personally possessed the required scienter."). In addition, the Bankruptcy introduced collectability as a complication because the Individual Defendants' financial resources are dwarfed by those of CBL. After insurance were further depleted by trial preparation and trial, the Class's recourse would most likely have been limited to the Individual Defendants' personal assets and remaining insurance coverage. It is highly doubtful that the Individual Defendants could satisfy a $164 million judgment, assuming one were obtained, making the maximum recoverable damages here somewhat illusory and artificially lowering the real percentage of recovery because an uncollectible judgment is worthless.

The Individual Defendants also asserted an affirmative defense that they acted in good faith (Dkt. No. 148, Seventh Defense), and it appeared that Plaintiffs would have had to move to compel discovery that would otherwise be privileged to challenge that affirmative defense. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Absent piercing all applicable privileges, which was an uncertain proposition at best, Plaintiffs could have had a very difficult time proving the Individual Defendants did not act in good faith, which would have been fatal to the Class's claims.

Although Plaintiffs and Lead Counsel believe that the claims asserted against the Individual Defendants are meritorious, the Individual Defendants' defenses posed material risks, making recovery uncertain in fact and amount. From the outset, Lead Counsel and Plaintiffs

appreciated the unique and significant risks, as well as delays inherent in this Action. Thus, the certainty of a $17,500,000.00 recovery now weighs heavily in favor of approval of the Settlement.

### 4. The Proposed Method of Distributing Relief is Effective

The Court has already reviewed and approved the form and contents of the Notice and Claim Form. Dkt. No. 215 at 6-10. By requiring Class Members to provide and certify their transaction data, which will be used to compute and apportion recognized losses objectively, the Settlement will distribute the same prorated amount of losses to all Class Members without unduly burdening any Class Member. Importantly, all Class Members are treated reasonably and equitably based upon their purchasing CBL Securities before corrective disclosures involving the Overcharge Scheme or the *Wave* Litigation and holding those same CBL Securities through a corrective disclosure.

The Plan of Allocation does not grant preferential treatment to any Class Member. Rule 23(e)(2)(D). As described in the Notice (Dkt. No. 215 at 25-31/72) it has a rational basis and was formulated by Class Counsel and its damages consultant to reflect Plaintiffs' theory of liability ensuring its fairness and reliability. *See In re Zynga Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015). Under the proposed Plan of Allocation, each Authorized Claimant will receive its *pro rata* share of their Recognized Loss depending on its transactions and objective criteria set out in the Plan of Allocation. This neutral Plan of Allocation is similar to other plans that have been approved in other securities class actions. *See, e.g., id.* (collecting cases).

### 5. Attorney's Fees and Expenses Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intends to seek and the timing of payment. As stated in the Notice, Lead Counsel intended to request fees not to exceed 30% of the Settlement Fund to be paid at the time the Court makes its award. The request of ***20%***

is well below fees awarded in the Sixth Circuit for analogous settlements.[5] Indeed, courts regularly awarded fees of 30% or more where a settlement was reached much earlier in the litigation, such as where a settlement was reached before a decision on the motion to dismiss was issued, and where no discovery was taken as a result of the PSLRA's discovery stay.[6] Plaintiffs' counsel would have moved for, and should have received, a materially larger fee but for a fee agreement between certain Co-Lead Plaintiffs and their counsel.

Class Counsel also notified Class Members that it would seek reimbursement of litigation expenses, charges, and costs, plus interest thereon estimated not to exceed $1,000,000, and would demonstrate that those expenses were reasonable and necessary in prosecuting this case. Class Counsel is seeking expenses of $789,986.47. Those expenses were reasonable and necessary in prosecuting this case, and are fair and reasonable.

Class Counsel will also request up to $40,000 per Plaintiff and Mr. Amsterdam prosecuting the litigation, including producing documents, answering interrogatories, and being deposed.

---

[5] *See, e.g.*, *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (awarding 30% on $23.6 million); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) (awarding 30% of $29.25 million); *Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (awarding 29% of $65 million); *Willis v. Big Lots, Inc.*, 2018 WL 7814725, at *1 (S.D. Ohio Nov. 9, 2018) (awarding 28% of $38 million); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million).

[6] *See In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million settlement, where settlement was reached while motion to dismiss was pending); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 171-72, 197 (E.D. Penn. 2000) (awarding 30% of $111 million settlement where settlement was reached before motion to dismiss was filed); *Taft v. Ackermans*, 2007 WL 414493, at *9-11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement reached prior to ruling on motion to dismiss); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (awarding 33.3% of a $11.5 million settlement reached prior to ruling on motion to dismiss).

### 6. Additional Agreements

With respect to Rule 23(e)(2)(C)(iv), a confidential rider to the Stipulation establishes that Defendants may terminate or modify the Settlement if Class Members who collectively purchased a specific number of shares during the Class Period opt-out of the Settlement. *See* Stipulation ¶ 32. This type of agreement is standard in securities class action settlements and does not make the Settlement unfair. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement). Indeed, the amount of opt-outs remains confidential to prevent any Class Members from leveraging such information for their own benefit and to the detriment of the Class.

### 7. The Settlement Treats Class Members Equitably

As described in Point III.B.4, *supra*, and Point IV, *infra*, the Settlement treats Class Members equitably relative to each other, considering only the timing of their purchase or acquisition of CBL Securities during the Class Period and any subsequent sales of those shares, by providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Losses.

## C. THE PROPOSED SETTLEMENT SATISFIES THE *UAW* FACTORS

### 1. The Risk of Fraud or Collusion

Three is no risk of fraud or collusion because the Settlement was negotiated at arms'-length. *See* Section III.B.III.B.2, *supra*.

### 2. The Complexity, Expense and Likely Duration of Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec.,*

*Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Most class actions are "inherently complex" and "[s]ettlement avoids the costs, delays, and multitude of other problems associated with them." *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "[s]ecurities class actions are often difficult and ... uncertain." *See, e.g.*, *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

This Action indisputably involves complex issues relating to falsity, scienter, causation, and damages. Each of those issues required the consideration of complex issues and voluminous evidence, often entailing the opinions of experts who would have provided conflicting reports and deposition testimony. The complexity of these issues made victory at summary judgment or trial far from assured. This Settlement thus avoids the risks of unfavorable rulings at summary judgment or with respect to experts, a lengthy and uncertain trial, and the certain appeal by the non-prevailing party.[7] "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *See New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017).

---

[7] *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

### 3. The Amount of Discovery Engaged in by the Parties

This factor ensures "that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). Here, substantial merits discovery was completed, including Plaintiffs' review of almost one million pages of documentary discovery. *See* p. 8, *supra*. In addition, the Parties participated in three mediation sessions with Michelle Yoshida where the strengths and weaknesses of the claims asserted were vetted in detail. Accordingly, the Parties had a well-developed understanding of all factual and legal strengths and weaknesses of the claims and defenses presented.

### 4. The Likelihood of Success on the Merits

Plaintiffs' discussion showing that the Settlement was adequate under Rule 23(e)(2) satisfies this factor. *See* Section III.B.3, *supra*. Moreover, at trial, many determinative issues would be subject to conflicting expert testimony, with each side retaining highly qualified and well-credentialed experts creating uncertainty as to which expert's testimony the finder of fact would accept. *See Koenig v. USA Hockey, Inc.*, 2012 WL 12926023, at *2 (S.D. Ohio Jan. 10, 2012) (explaining how "[a]cceptance of expert testimony is always far from certain" and settlement "avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."). Indeed, in a recent securities fraud trial, after plaintiff was granted summary judgment on falsity and scienter, the jury found for Elon Musk after deliberating for only two hours.[8]

---

[8] *See* https://www.wsj.com/articles/elon-musk-found-not-liable-in-trial-over-tweets-proposing-to-take-tesla-private-11675464951.

### 5. The Informed and Reasoned Opinions of Class Counsel and Plaintiffs

Although Plaintiffs and Class Counsel believe that Released Plaintiffs' Claims are meritorious, Defendants' liability and damages arguments made the fact and amount of recovery uncertain. From the outset, Class Counsel and Plaintiffs appreciated the unique and significant risks as well as delays inherent in this Action. Thus, the certainty of a $17,500,000.00 recovery now weighs heavily in favor of approval of the proposed Settlement.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). "The Court heeds the recommendation of such experienced, professional, and competent Counsel." *Telectronics*, 137 F. Supp. 2d at 1015. Here, the Settlement is endorsed by informed Plaintiffs' and their experienced and informed counsel, as shown by the contemporaneously filed declarations of Plaintiffs and Co-Lead Counsel.

### 6. The Reaction of Absent Class Members

To further support approval of a settlement, courts also look to the reaction of the class to the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013). This is unusual because "'[a] certain number of ... objections are to be expected in a class action.'" *Thacker*, 695 F. Supp. 2d at 533.

In this case, as explained in the Epiq Declaration (at ¶¶6-7), "1,066 Notice Packets and 22,849 Notice Postcards have been disseminated to potential Settlement Class Members and their

nominees by USPS First-Class mail" *and* the Summary Notice was published over the PR Newswire. In addition, the Notice, Proof of Claim and Release form, the Stipulation, and the Preliminary Approval Order were posted on a case specific website established by the Claims Administrator. While the deadline for filing objections – July 31, 2023 – is less one week away, to date no Class Member has objected to the Settlement or the Plan of Allocation, and no Class Member has opted out of the Settlement.[9]

### 7. The Public Interest

The law favors settlement, particularly in class actions. *Newberg on Class Actions* (*Fourth*) § 11.41 (2002); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (recognizing "the strong judicial policy in favor of settlements, particularly in the class action context encouraged by the courts and favored by public policy."); *see also* Section **Error! Reference source not found.**, *supra*. The proposed Settlement serves the public interest by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

While there is always a chance of a greater recovery unless a claim is tried to verdict, there was also potential for the Class to recover nothing, less, or receive an uncollectible judgment after further expenses are incurred. Here, that chance was real. The Individual Defendants produced evidence in discovery challenging every element of the Class's claims and demonstrating that they had good faith processes in place to evaluate whether to disclose the *Wave* Litigation. What a finder of fact would have determined is unknown, and compromise necessarily involves

---

[9] Plaintiffs and Co-Lead Counsel will respond to any objection to the Settlement at least one week before the Settlement Fairness Hearing as provided for in the Preliminary Approval Order (at ¶ 25).

concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). As the noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained.'" 559 F.2d 1326, 1330 (5th Cir. 1977). Public policy is served by the Settlement. *See also* Section III.A, *supra*.

## IV. THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Notice contains the Plan of Allocation of settlement proceeds, detailing how the settlement proceeds will be divided among claiming Class Members. A trial court has broad discretion in approving a plan of allocation. *See Sullivan v. DB Invs., Inc*., 667 F.3d 273, 328 (3d Cir. 2011); *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987). The applicable test is simply whether the proposed plan, like the settlement itself, is fair, reasonable, and adequate. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *10 (E.D. Mich. Dec. 13, 2011); *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) ("To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims.").

Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable. *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *10. Thus, pro-rata distributions have "frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) (collecting cases).

In evaluating plans of allocation, courts also look to the opinion of counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court ... affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds); *Aéropostale, Inc*., 2014 WL 1883494, at *10 ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'"). The proposed Plan of Allocation, developed by Class Counsel in consultation with Plaintiffs' damages consultant, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms. A recognized-loss amount will be calculated for each purchase or acquisition of CBL Securities during the Settlement Class Period (the "Class Period") listed on the Claim Form and for which adequate documentation is provided. The calculation of recognized-loss amounts is based on the difference between the amount of estimated alleged artificial inflation in CBL Securities on the purchase date and the amount of estimated alleged artificial inflation on the sale date. The sum of the recognized-loss amounts for all of a claimant's purchases of CBL Securities is the Claimant's recognized claim ("Recognized Claim"), and the Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims, as described in the Notice.

Plaintiffs and Class Counsel submit that the Plan of Allocation fairly and rationally allocates the Net Settlement Fund based upon the losses Class Members suffered on losses through transactions in CBL Securities attributable to disclosure of the Overcharge Scheme and the settlement of the *Wave* Litigation. Moreover, the Plan of Allocation is set forth in the Notice and

no objection to the Plan has been received from any Class Members.[10] Accordingly, the Plan of Allocation should be granted final approval for the purpose of administering the Settlement.

## V.     THE NOTICE OF SETTLEMENT SATISFIED RULE 23

Under Rule 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Fidel*, 534 F.3d at 513. Generally, "[f]or any class certified under Rule 23(b)(3) … the court must direct that class members be given the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Notice of the proposed Settlement to the Class Members satisfied Rules 23(c)(2) and 23(e), as well as requirements under the PSLRA and the Due Process Clause of the Constitution. Due Process and Rule 23(c)(2) direct that the notice be "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Rule 23(e) directs "notice in a reasonable manner." Rule 23(e)(1); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 114 (under Rule 23(e), notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §78u-4(a)(7), including the following: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description

---

[10]     Plaintiffs and Co-Lead Counsel will respond to any objection to the Plan of Allocation at least one week before the Settlement Fairness Hearing as provided for in the Preliminary Approval Order (at ¶ 25).

of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Class Counsel, administrative costs, and awards to Plaintiffs; (vii) the rights of Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name, and (xi) the binding effect of a judgment on Class Members. *See* Preliminary Approval Order.

The Notice program was carried out by Court-approved Claims Administrator Epiq, a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Class Counsel. In accordance with the Preliminary Approval Order, Epiq disseminated 22,849 copies of the Postcard Notice beginning on May 24, 2023. *See* Epiq Declaration at ¶¶2-6. The names and addresses of Class Members were obtained from listings provided to Epiq by CBL and Epiq's proprietary database of names of the most common banks, brokerage firms, nominees, and known third-party filers. *Id.* Additional Postcard Notices were mailed after Epiq received notice of potential Class Members from nominees and brokers. *Id.*. Epiq also arranged for the Summary Notice to be published electronically on *PR Newswire* on May 29, 2023. *Id.* at ¶7; *see also* https://prn.to/3NLsHhX. In addition, Epiq established and continues to maintain a toll-free telephone number for Class Members to call and obtain information, as well as a website, www.CBLsecuritieslitigation.com, providing, among other things, copies of the Stipulation and related documents, and the date for the Court's Settlement Fairness Hearing. Epiq Declaration at ¶¶8-11.

Postcard Notices to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and posted on the internet, is often approved as "the best notice … practicable under the circumstances." Rule 23(c)(2)(B); *see In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014); *Noto v. 22nd Century Grp., Inc.*, 2023 WL 4303462, at *3 (W.D.N.Y. June 15, 2023), report and recommendation adopted, 2023 WL 4303739 (W.D.N.Y. June 30, 2023); *Manners v. Am. Gen. Life Ins. Co*., No. 3-98-0266, 1999 WL 33581944, at *13 (M.D. Tenn. Aug. 11, 1999) (finding individual notice mailed to class members combined with summary publication constituted "'the best practicable notice'"); *In re: Skelaxin*, 2014 WL 11669877, at *3 (same); *Motter v. O'Brien*, 2014 WL 12892732, at *3 (S.D. Ohio June 12, 2014) (similar notice plan "is the best notice [plan] practicable . . . and fully complies with applicable law").

There is no reason for the Court to revisit its conclusion that this "is the best notice practicable under the circumstances" and "constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of" their rights. Preliminary Approval Order at ¶7. Accordingly, the notice program constitutes the best notice practicable under the circumstances and satisfies Rule 23 and the PSLRA.

## VI.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: July 24, 2023

Respectfully Submitted,

/s/ *Sarah R. Johnson*
Al Holifield (BPR# 015494)
Sarah R. Johnson (BPR# 030781)
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
aholifield@holifieldlaw.com
sjohnson@holifieldlaw.com

John W. Chandler, Jr.
**THE HAMILTON FIRM**
2401 Broad Street, Suite 102
Chattanooga, TN 37408
Tel: (423) 634-0871
Fax: (423) 634-0874
jwc@thehamiltonfirm.com

**Co-Liaison Counsel for Plaintiffs**

Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
**ABRAHAM, FRUCHTER &
    TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftlaw.com
mklein@aftlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
Michael J. Wernke (admitted *pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

**Class Counsel**

**BRONSTEIN, GEWIRTZ &
   GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

**Additional Counsel for Jay Scolnick**

**KASKELA LAW LLC**
D. Seamus Kaskela
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Tel: (484) 258-1585
skaskela@kaskelalaw.com

**Additional Counsel for Mark Shaner**

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023 I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: /s/ Sarah R. Johnson
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
sjohnson@holifieldlaw.com

*Co-Liaison Counsel for Plaintiffs*