**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

|  |  |
|---|---|
| IN RE CBL & ASSOCIATES PROPERTIES, INC. SECURITIES LITIGATION | ) Consolidated Case No. ) 1:19-CV-181-JRG-CHS ) |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND**

# TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................... 1

II.     CLAIMS ADMINISTRATION......................................................................... 2

III.    THE COURT SHOULD APPROVE ACCEPTANCE OF UNTIMELY BUT
        OTHERWISE ELIGIBLE CLAIMS ................................................................ 3

IV.     THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND
        AND THOSE ADMINISTERING THE SETTLEMENT.................................... 6

V.      DISTRIBUTION OF THE NET SETTLEMENT FUND ................................... 6

VI.     THE CLAIMS ADMINISTRATOR'S FEES AND EXPENSES ...................... 8

VII.    CONCLUSION............................................................................................... 8

Lead Plaintiffs Jay B. Scolnick, Mark Shaner, Charles D. Hoffman, and HoffInvestCo ("Lead Plaintiffs"), through their counsel, respectfully submit this memorandum of law in support of their motion for entry of the Proposed Order Granting Authorization to Distribute the Net Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action").[1] The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") is set forth in the accompanying Declaration of Susanna Webb in Support of Lead Plaintiffs' Motion for Authorization to Distribute Net Settlement Fund (the "Webb Declaration"), which is being submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator").

If entered by the Court, the Distribution Order will, among other things, (1) approve Epiq's recommendations accepting and rejecting Claims submitted in the Action; (2) direct the distribution of the Net Settlement Fund to Authorized Claimants; and, (3) approve Epiq's fees and expenses estimated to be incurred in connection with the distribution.

## I. BACKGROUND

The Stipulation entered into by the Parties set forth the terms of the Settlement in this Action referenced in the Court's August 23, 2023, Judgment Approving Class Action Settlement (Dkt. No. 229, the "Judgment"), which represents a complete resolution of this Action. Pursuant to the terms of the Settlement, a cash payment of $17,500,000 was deposited in escrow for the benefit of the Settlement Class.

In accordance with the Preliminary Approval Order, Epiq mailed the Postcard Notice and the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and

---

[1]  Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 19, 2023 (Dkt. No. 214) or the Webb Declaration. Also, unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

Final Approval Hearing (the "long-form Notice") and the Proof of Claim and Release Form, (the "Claim Form") (together with the Notice, the "Notice Packet") to potential Settlement Class Members and their brokers and other nominees. Webb Declaration ¶2. Epiq also created and maintained a toll-free helpline for inquiries during the course of the administration; created and maintained a settlement website and posted case-specific documents on it; caused the Summary Notice to be published; provided, upon request, additional copies of the Notice Packet to brokers, nominees, and potential Class Members; and received and processed Proofs of Claim. *Id.*

To date, Epiq has mailed 1,066 Notice Packets and 22,849 Notice Postcards. Webb Decl. ¶5. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form such that it would be received or postmarked no later than August 14, 2023, together with adequate supporting documentation for the transactions and holdings reported therein. *Id.* ¶7. Through November 30, 2023, Epiq received and processed 30,567 Claims. *Id.*

Claim Forms have now been processed following the Plan of Allocation that was explained in the Notice. Dkt. No. 214 at p.66 of 113. The Judgment found that the Plan of Allocation is a fair and reasonable method of allocating the Net Settlement Fund among Class Members. Judgment ¶20. Accordingly, Plaintiffs respectfully ask the Court to enter the Distribution Order.

## II.    CLAIMS ADMINISTRATION

Through November 30, 2023, Epiq received 30,567 Claim Forms, all of which have been fully processed in accordance with the Court-approved Plan of Allocation. Webb Declaration at ¶¶7, 10. Of the 1,933 paper and online claims received as of November 30, 2023, 1,035, or approximately 54% of them, were incomplete or had one or more defects or conditions of ineligibility. *Id.* ¶21. Of the 28,634 electronic claims received, 22,831 were deficient or ineligible. Epiq used the following process to inform Electronic Claim filers that their electronic submissions

2

were deficient. *Id.* ¶24. Deficiency Notices were sent to claimants describing the defects in claims and how to resolve those defects, and the responses received were carefully reviewed and processed. *Id.* ¶¶22-25.

The claims administration process is now complete. Epiq has determined that out of the 30,567 claims postmarked through November 30, 2023, 6,701 are acceptable in whole, 710 are acceptable in part, and that 23,156 should be wholly rejected because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation. *Id.* ¶37 & Ex. D. Claimants whose claims were rejected in whole or in part were advised of how to contest Epiq's administrative determinations. *Id.* ¶26. Thirty-eight members of the Settlement Class requested such an administrative determination, and thirty-six of those requests were resolved or retracted. *Id.* ¶27. The two outstanding requests for Court review concern claimants that liquidated their CBL stock positions before the first alleged corrective disclosure on March 1, 2019, severing any causal connection between the loss they seek to recover and Defendants' alleged violations of federal securities laws. *Id.* ¶¶28-30; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

Plaintiffs respectfully request that the Court approve the Claims Administrator's recommendation to accept the timely and valid claims set forth in Exhibit D-1 to the Webb Declaration, accept the late filed, accepted claims, set forth in Exhibit D-2 to the Webb Declaration, and reject the rejected claims set forth in Exhibit D-3 to the Webb Declaration.

## III. THE COURT SHOULD APPROVE ACCEPTANCE OF UNTIMELY BUT OTHERWISE ELIGIBLE CLAIMS

It is well settled that a district court has discretion to allow late claims to a settlement fund. *See Lemus v. H & R Block Enters., LLC*, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013) (citing *In re Valdez*, 289 Fed. App'x 204, 206 (9th Cir. 2008)) ("We review the district court's

3

disallowance of a late claim to a settlement fund for abuse of discretion."); *see also In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) ("The scope of appellate review of the district court's disallowance of a late claim is narrow.").  Multiple circuits hold that the Court maintains an inherent equitable power to "allow late-filed proofs of claim and late-cured proofs of claim." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *cf. Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1993) (recognizing that "the district court has discretion to extend a class member's time to opt out" of a class settlement).  The Manual for Complex Litigation also recommends that "[t]he court … allow adequate time for late claims before any refund or other disposition of settlement funds occurs and might consider ordering a reserve for late claims." MCL 4th §21.662 (2004) (footnote omitted). Courts regularly permit late-filed claims for "excusable neglect" or "good cause." *See Silber*, 18 F.3d at 1455 & n.4; *Gypsum*, 565 F.2d at 1128; *see also Valdez*, 289 Fed. App'x at 206 (noting that district court permitted late-filed claims by claimants with "plausible excuses for not filing timely"). The excusable neglect analysis involves equitable consideration, and the Court may consider factors including the danger of prejudice, the length of time delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.  *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *accord* 4 Newberg and Rubenstein on Class Actions § 12:23 (6th ed.).

Here, 110 of the Proofs of Claim recommended for approval and distribution were postmarked or received after the August 14, 2023, submission deadline, but were otherwise valid in whole or in part. Webb Declaration ¶31. The total recognized loss amount for these untimely filed, but otherwise valid claims, is $694,871.55.  Webb Decl. Ex. D-2. No Proof of Claim was

4

rejected by Epiq solely because it was received after the submission deadline and the Proofs of Claim have not caused significant delay in the processing or distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant or Defendant. Webb Declaration ¶31. Indeed, when the equities are balanced, it would be unfair to prevent an otherwise valid Proof of Claim from recovering from the Net Settlement Fund solely because it was submitted after the cut-off date but while claims were still being processed. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2009 WL 803382, at \*6 (E.D.N.Y. March 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement"). Therefore, Plaintiffs respectfully request that the Court approve the 110 untimely but otherwise valid claims listed in Exhibit D-2 of the Webb Declaration.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a cut-off date for claims. *See In re TASER Int'l, Inc. Sec. Litig.*, 2009 WL 10707825, at \*2 (D. Ariz. July 15, 2009) ("[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" (quoting *In re Gypsum Antitrust Cases*, 565 F.2d at 1127 (quoting Reports of the Conference for District Court Judges, 63 F.R.D. 231, 262 (1973)). Accordingly, it is respectfully requested that the distribution order provide that no claim form received after November 30, 2023 or adjusted after January 19, 2024 be eligible for payment. Webb Declaration ¶32.

For the foregoing reasons, as well as those set forth in the Webb Declaration, it is respectfully requested that the Court approve Epiq's administrative determinations accepting and rejecting claims.

## IV. THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND AND THOSE ADMINISTERING THE SETTLEMENT

It is also respectfully requested that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxations of the Net Settlement Fund, including Plaintiffs, Lead Counsel, additional counsel, Plaintiffs' damages expert, and Epiq (collectively, "Released Persons"), be released and discharged from any and all claims arising out of such involvement, and all Class Members be barred from making any further claim against the Net Settlement Fund or the Released Persons beyond the amount allocated to them. See Stipulation ¶27.

## V. DISTRIBUTION OF THE NET SETTLEMENT FUND

The Claims Administrator has now finished processing all claims. Plaintiffs request that the Court approve Epiq's administrative recommendations to accept the claims listed on Exhibits D-1 and D-2 of the Webb Declaration, and to reject the claims listed on Exhibit D-3 of the Webb Declaration.

Upon the issuance of the Court's order authorizing distribution, Epiq will distribute 95% of the available balance of the Net Settlement Fund to Authorized Claimants, maintaining a 5% reserve of the Net Settlement Fund (the "Reserve") in order to address any tax liability and claims administration-related contingencies that may arise. Webb Declaration ¶44.a.iii. Each Authorized Claimant's pro rata share of the Net Settlement Fund in accordance with the Plan of Allocation. *Id.* at ¶44.a.iii. No distribution will be made on a claim where the distribution amount is less than $20.00. Id. ¶44.a.ii. The Net Settlement Fund will be allocated among the authorized claimants mentioned in the paragraph above whose prorated payment is $20.00 or greater and any prorated amounts of less than $20.00 will be included in the pool distributed to those whose prorated

6

payments are $10.00 or greater. *Id.* To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Plaintiffs propose that all the distribution checks bear the notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id.* ¶44.a.iii.

If there is any balance remaining in the Net Settlement Fund after six months, and after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, Lead Counsel recommends that, if economically feasible, such remainder be allocated in a re-distribution, after payment of any unpaid fees and expenses incurred in administering the Settlements, including for such redistribution, to Authorized Claimants who cashed their checks from the initial distribution, and who would receive at least $20.00 from such re-distribution. *Id.* at ¶44(b).

If any balance still remains in the Net Settlement Fund after such re-distribution which is not cost-effective to reallocate, the remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be donated to the Institute for Law and Economic Policy, an appropriate 501(c)(3) non-profit organization selected by Lead Counsel.[2]

The contemporaneously filed proposed order contemplates the Court maintaining jurisdiction over the distribution of the Net Settlement Fund in case any disputes arise during this process.

---

[2] The Institute for Law and Economic Policy is "a public policy research and educational foundation whose mission is to preserve, study, and enhance investor and consumer access to the civil justice system." *See* https://www.ilep.org/.

## VI. THE CLAIMS ADMINISTRATOR'S FEES AND EXPENSES

Epiq was responsible for mailing Class Notices, maintaining a website and Claimant call hotline, processing claims, and preparing tax returns for the Settlement Fund, and is responsible for distributing the Net Settlement Fund to accepted Claimants. Epiq's total fees and expenses for this matter through this date are $288,157.91. Webb Declaration ¶43. These fees and expenses fall within Epiq's initial estimate of expenses and will be returned to the Net Settlement Fund if not actually incurred. *Id.* If any re-distribution of the Net Settlement Fund is required, Epiq may incur additional fees and expenses. *Id.* ¶44.c.i.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Distribution Order submitted herewith.

Dated: February 27, 2024

Respectfully Submitted,

/s/ *Sarah R. Johnson*
Al Holifield (BPR# 015494)
Sarah R. Johnson (BPR# 030781)
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
aholifield@holifieldlaw.com
sjohnson@holifieldlaw.com

John W. Chandler, Jr.
**THE HAMILTON FIRM**
2401 Broad Street, Suite 102
Chattanooga, TN 37408
Tel: (423) 634-0871
Fax: (423) 634-0874
jwc@thehamiltonfirm.com

**Co-Liaison Counsel for Plaintiffs**

8

Jeffrey S. Abraham (admitted *pro hac vice*)
Michael J. Klein (admitted *pro hac vice*)
**ABRAHAM, FRUCHTER &**
 **TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655
jabraham@aftlaw.com
mklein@aftlaw.com

Jeremy A. Lieberman (admitted *pro hac vice*)
Michael J. Wernke (admitted *pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

**Proposed Class Counsel**

**BRONSTEIN, GEWIRTZ &**
 **GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

**Additional Counsel for Jay Scolnick**

**KASKELA LAW LLC**
D. Seamus Kaskela
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Tel: (484) 258-1585
skaskela@kaskelalaw.com

**Additional Counsel for Mark Shaner**

9

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 27, 2024, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

<u>*By: Sarah R. Johnson*</u>
**HOLIFIELD & JANICH, PLLC**
11907 Kingston Pike Suite 201
Knoxville, Tennessee 37934
Tel: (865) 566-0115
Fax: (865) 566-0119
sjohnson@holifieldlaw.com

*Co-Liaison Counsel for Plaintiffs*

10